IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **Jeffrey Walter** | § | |
| **An individual,** | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **Civil Action No. 09-3939** |
| | § | |
| **Ville de Paris (The City of Paris),** | § | |
| **A Municipal Commune of France,** | § | |
| **Defendant** | § | |

## COMPLAINT UNDER 15 USC 1114(2)(d)(iv)-(v) AND FOR DECLARATORY RELIEF UNDER THE LANHAM ACT, TORTIOUS INTERFERENCE WITH CONTRACT AND ECONOMIC ADVANTAGE, AND CONVERSION

Plaintiff Jeffrey Walter files this Original Complaint against Defendant Ville de Paris (The City of Paris) and in support thereof would show the following:

## I.   NATURE OF THE CASE

1.     This case is brought pursuant to 15 U.S.C. § 1114(2)(D)(iv)-(v) and for declaratory relief pursuant to 28 U.S.C. § 2201 to establish that Plaintiff's registration and use of the internet domain name <parvi.org> (the "Domain Name") is not unlawful under the Anticybersquatting Consumer Protection Act (15 U.S.C. § 1125(d)("ACPA") or otherwise under the Lanham Act (15 U.S.C. § 1051, *et seq.*), (1) to prevent the transfer of the Domain Name to Defendant, which was ordered in an administrative panel decision issued April 7, 2009, under the Uniform Domain Name Dispute Policy ("UDRP") in a proceeding captioned: *Ville*

103120.1

*de Paris v. Jeff Walter*, WIPO Case No. D2009-1278. (Nov. 19, 2009), (2) to establish the UDRP process undertaken, and the resulting decision of the panel, in the above administrative proceeding was in violation of Plaintiff's contractual rights; (3) and to recover attorneys' fees, costs and damages as set forth herein.

## II.   JURISDICTION AND VENUE

2.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this cause arises under 15 U.S.C. § 1114 in that Plaintiff is the registrant of a domain name that has been suspended, disabled, or transferred under a policy provided by the registrar thereof relating to alleged conflict with a trade or service mark claimed by Defendant.

3.   This Court has personal jurisdiction over Defendant because Defendant expressly and voluntarily agreed to submit to the jurisdiction of this Court when it initiated an administrative proceeding pursuant to the UDRP concerning the Domain Name. Specifically, Defendant voluntarily and expressly agreed in its UDRP complaint (the "UDRP Complaint") to submit to the jurisdiction of the registrar in connection with any legal action in any way related to the UDRP proceeding.  The address listed for the registrar, GKG.Net Inc. is PO BOX 1450, Bryan, TX 77806.

4.   In preparing and filing the Complaint in the above UDRP Proceeding, Complainant specifically admitted:

103120.1

## VIII.  **Mutual Jurisdiction**
(Rules, para. 3(b)(xiii))

[14.] In accordance with Paragraph 3(b)(xiii) of the Rules, the Complainant will submit, with respect to any challenges that may be made by the Respondent to a decision by the Administrative Panel to transfer the domain name that is the subject of this Complaint, to the jurisdiction of the courts at the location of the principal office of the concerned registrar.

5.    Defendant has directed activity into this judicial district with the intent to deprive Plaintiff of rights under a contract having a situs in this judicial district.

6.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2).

## III.    PARTIES

7.    Plaintiff Jeffrey Walter is an individual residing in Fremont California.

8.    At the time the UDRP Complaint was filed, the Domain Name was registered by Plaintiff with GKG.Net Inc., a domain name registrar having its principal offices in the State of Texas, County of Brazos.

9.    The terms of the registration agreement pursuant to which the Domain Name was registered specifies that the laws of the State of Texas apply as to the interpretation of the registration agreement and any dispute arising in connection therewith.

103120.1

10.     The terms of the registration agreement pursuant to which the Domain Name was registered a clause relative to jurisdiction and venue that specifies in Section 7 thereof that jurisdiction and venue over disputes relative to the Domain Name shall be "the United States District Court for the Southern District of Texas, or if there is no jurisdiction in such court, then in a state court in Brazos County, Texas."

11.     On information and belief, Defendant Ville de Paris (the City of Paris, France) is represented by government officials who maintain an office for business at 4 Place de l'Hotel de Ville, Paris, France.  Defendant will be asked to accept service of the Complaint so no issuance of a citation is requested at this time.

## IV.    FACTS

12.     Plaintiff is a computer network systems professional residing in California.  In his spare time, Plaintiff develops open source software and assists others in developing internet websites.  Plaintiff has registered and maintained internet domain names for his avocational interests such as SeanAndMaryCampbell.com and ClubBeyondAnsbach for a Christian youth ministry run by friends Sean and Mary Campbell in Ansbach, Germany; TheWalterFamily.com, to provide email services within his family; HELunch.com to provide a lunch ordering system at the workplace of his employer, Hurricane Electric; and for other hobbies and avocational interests.

103120.1

13.   In 2006, Plaintiff was considering building an online social networking website for use by Plaintiff and his acquaintances and set about selecting a name for it.

14.   To select a name, Plaintiff obtained a machine-generated Latin translation of an inspirational phrase of a science fiction character named "Oma de Sala" from the MGM "Stargate" franchise:

> The universe is vast and we are so small. There is only one thing we can ever truly control, whether we are good or evil.

15.   The translation received by the Respondent from an online service called the "Quintus' Latin Translation Service" read as follows:

> "Universum ingens est et nos tam parvi sumus. Est una sola res quam umquam vere regere possumus, utrum boni simus an mali."

16.   Investigating this translation further, Plaintiff formed the reasonable belief that the word "parvi" is the Latin masculine plural form of the word "small", which Plaintiff selected as encapsulating his inspirational quote in a single word.

17.   On or about June 1, 2006, Plaintiff entered into a registration contract with GoDaddy.com of Scottsdale, Arizona for the purpose of having the internet domain name PARVI.ORG entered into the .com registry and maintained by the registry for the benefit of Plaintiff.

18.   In September 2006, Defendant wrote to Plaintiff claiming it owned trademark registrations in France for goods or services allegedly provided within

the municipality of Paris, France.   The claimed French trademark registrations were for compound and figurative representations of "PARVI PARIS VILLE NUMERIQUE" and "PARVI".   Upon information and belief, the French trademark registration for "PARVI" specifies the following goods and services: "*Communication par terminaux* d'ordinateurs (Internet)", and is believed to relate to alleged operation of a municipal internet access program in the city of Paris, France.  Defendant demanded Plaintiff transfer the Domain Name to Defendant.

19.   Prior to such correspondence, Plaintiff had never known of the Plaintiff's claims in its alleged French trademark registrations.  Plaintiff has never been to France, conducts no business in France and does not speak French.

20.   On information and belief, Defendant does not engage in commerce in the United States in connection with any goods or services under its claimed "PARVI VILLE NUMERIQUE" or "PARVI" marks.

21.   On information and belief, Defendant's services, if any, under the claimed marks are entirely provided within the municipality of Paris, France.

22.   In response to Defendant's communication, Plaintiff informed Defendant he does not conduct any activities in France and that he planned to provide a social networking service in the United States.

23.   In November 2007, Defendant replied it "has understood the registration of you [sic] domain name 'parvi.org' was accomplished with no

intention of causing any confusion." Defendant proposed that Plaintiff should place a disclaimer on any website used with the Domain Name. Plaintiff proposed mutual disclaimers on respective websites, and the Defendant did not respond further.

24.  Prior to registering the Domain Name, Plaintiff had obtained a Sun COBALT Server, which is a discontinued product of Sun Microsystems, Inc. As a hobby project, Plaintiff began developing open source system software for use in maintaining operation of Sun COBALT servers.

25.  In mid-2007 Plaintiff determined that other online social networking services were duplicative of his planned use for the Domain Name, and rather than create his intended small-scale personal social networking site, Plaintiff decided to use the Domain Name for a website to publish his Sun COBALT server open source software, to provide instructions for its use, to provide a mechanism for commentary and improvement of the software, and to discuss and provide access to other hobby projects of the Plaintiff.

26.  Plaintiff reasonably believed that the domain name "Parvi.org" was well suited for his open-source software project because it was intended to be limited (small) in scope and the .org domain name extension fit nicely with his desire to make his original software available without charge.

27.    At all times in operating his website at Parvi.org, the site has remained small in size and limited in scope.

28.    At all times in operating his website at Parvi.org, the Plaintiff has made his software, instructions, and commentary available for free at the website corresponding to the Domain Name since mid-2007.

29.    In mid-2008, Plaintiff decided to transfer registration of the Domain Name from GoDaddy to the management of internet domain name registrar GKG.Net of Bryan, Texas.   Plaintiff arranged for the transfer of registration services and entered into a contract with GKG.Net for the continued registration of the Domain Name.   The Plaintiff transferred the domain name to registrar GKG.Net Inc. because the new registrar offered support for an advanced internet protocol Plaintiff desired to use.

30.    The domain registration contract ("Contract") between GKG.Net Inc. and Plaintiff for the registration of the Domain Name provides:

**6. Adjudication of Disputes**

In the event of adjudication of disputes concerning or arising from use of services contracted to you, you shall submit, without prejudice to other potentially applicable jurisdictions, to the jurisdiction of the courts (1) of the location of GKG, and (2) of the location of your domicile.

**7. Controlling Law and Venue**

Except as otherwise set forth in Section 6 above, or in the Dispute Policy with respect to disputes, this Agreement, your rights and

obligations and all actions contemplated by this Agreement shall be governed by the laws of the United States of America and the State of Texas, as if the Agreement was a contract wholly entered into and wholly performed within the State of Texas. Except as otherwise set forth in Section 6 above, or in the Dispute Policy with respect to domain disputes, any action to enforce this Agreement or any matter relating to your use of the GKG site shall be brought exclusively in the United States District Court for the Southern District of Texas, or if there is no jurisdiction in such court, then in a state court in Brazos County, Texas."

31.    The Contract incorporates as a "Dispute Policy" the UDRP, under which a third party may request transfer of rights under said contract to such party on the basis of a claim of trade or service mark rights.

32.    As a result of the incorporation, the UDRP becomes a part of the registration agreement to which Plaintiff is a party.

33.    Plaintiff is without freedom to negotiate the registration agreement and/or to modify or eliminate any aspect of the UDRP as a part of the registration agreement.

34.    If plaintiff, or anyone else for that matter, desires a domain name, they must agree to the terms of the registration agreement which in all instances incorporate the UDRP.

35.    The UDRP is a mandatory administrative proceeding, which provides in pertinent part:

"k.    **Availability of Court Proceedings**.  The mandatory administrative proceeding requirements set forth in Paragraph 4 shall not prevent either you or the complainant from submitting the dispute

to a court of competent jurisdiction for independent resolution before such mandatory administrative proceeding is commenced or after such proceeding is concluded. If an Administrative Panel decides that your domain name registration should be canceled or transferred, we will wait ten (10) business days (as observed in the location of our principal office) after we are informed by the applicable Provider of the Administrative Panel's decision before implementing that decision. We will then implement the decision unless we have received from you during that ten (10) business day period official documentation (such as a copy of a complaint, file-stamped by the clerk of the court) that you have commenced a lawsuit against the complainant in a jurisdiction to which the complainant has submitted under Paragraph 3(b)(xiii) of the Rules of Procedure. (In general, that jurisdiction is either the location of our principal office or of your address as shown in our Whois database. See Paragraphs 1 and 3(b)(xiii) of the Rules of Procedure for details.) If we receive such documentation within the ten (10) business day period, we will not implement the Administrative Panel's decision, and we will take no further action, until we receive (i) evidence satisfactory to us of a resolution between the parties; (ii) evidence satisfactory to us that your lawsuit has been dismissed or withdrawn; or (iii) a copy of an order from such court dismissing your lawsuit or ordering that you do not have the right to continue to use your domain name."

36.     In July 2009, Defendant again wrote to Plaintiff in apparent ignorance of its prior correspondence again demanding transfer of the Domain Name. Plaintiff replied by stating again that the Domain Name was being used for open source software developed by the Plaintiff, and that Plaintiff was not conducting any activity in France, that Plaintiff was not violating French law, and that Defendant had no apparent rights in the United States.

## V. THE UDRP PROCEEDING

37.    On or about September 25, 2009, Defendant issued a UDRP Complaint challenging Plaintiff's registration of the Domain Name. In the UDRP Complaint, Defendant admitted to the jurisdiction of this court as quoted above.

38.    Defendant did not present any evidence in the UDRP proceeding that Plaintiff registered the Domain Name with any right of the Defendant in mind or that Plaintiff had a bad faith intent to profit from Defendant's claimed rights in France.

39.    Defendant did not present any evidence in the UDRP proceeding that Plaintiff has used the Domain Name in a manner intended to profit from Defendant's trademark.

40.    Defendant did not present any evidence in the UDRP proceeding that Plaintiff had ever promoted goods and services related to Defendant or that Plaintiff had ever intended to confuse consumers seeking Defendant.

41.    Defendant did not present any evidence in the UDRP proceeding of actual consumer confusion.

42.    Defendant did not present any evidence in the UDRP proceeding that Plaintiff had attempted to sell the Domain Name to Defendant.

43.    Despite its prior admission that Plaintiff had not registered the Domain Name with the intention to cause confusion, Defendant falsely alleged

Plaintiff had registered and used the Domain Name in bad faith, premised on Defendant's alleged trade or service marks in France.

44.    Despite the figurative and compound marks appearing in Defendant's French trademark registrations, Defendant falsely alleged the Domain Name was identical or confusingly similar to such figurative and compound designations.

45.    On November 19, 2009, a UDRP Panelist appointed by the World Intellectual Property Organization issued a decision directing that the registration of the Domain Name be transferred to Defendant.

46.    In its decision, the UDRP Panelist disregarded evidence of Plaintiff s good faith registration and use of the Domain Name and, despite the absence of any evidence supporting a finding of bad faith on the part of Plaintiff.

47.    In its decision, the UDRP Panel disregarded the terms of the UDRP, incorporated into Plaintiff's domain registration contract, which required the Defendant to show the domain name was "registered **and** used in bad faith". Instead, at the Defendant's urging, the UDRP Panelist was induced to misinterpret the UDRP as requiring a showing the domain name to be "registered **or** used in bad faith."

48.    Prior to the UDRP decision the Panelist selected by WIPO had declared an intention to re-interpret the UDRP as not requiring a claimant to demonstrate that a domain name was "registered **and** used in bad faith" but to

define such requirement as requiring a claimant to show that a domain name was "registered **or** used in bad faith".

49.  Accordingly, despite the Defendant's prior admission that the Domain Name was not registered with an intent to confuse consumers, the Panelist ordered transfer of the domain name on the basis of alleged post-registration "bad faith" activity which was not in evidence, for the purpose of furthering the Panelist's proposed re-interpretation of the UDRP to embrace "bad faith registration **or** use."

## VI.   FIRST CAUSE OF ACTION
## REVERSE DOMAIN HI-JACKING UNDER
## 15 U.S.C. § 1114(2)(D)(IV)-(V)

50.  Plaintiff incorporates the allegations contained in paragraphs 1 through 49 herein.

51.  Plaintiff's Domain Name has been locked beyond Plaintiff's full enjoyment of the benefits of registration thereof in consequence of false statements made by Defendant under a dispute policy (the UDRP) followed by the domain registrar GKG.Net Inc.  The Domain Name has been ordered transferred, and would be transferred to Defendant but for this Action.

52.  Plaintiff has provided Defendant with notice of this Action.

53.  Plaintiff has incurred costs, including, without limitation, attorneys' fees and court costs, in seeking to prevent transfer of the Domain Name.

103120.1

## VII.   SECOND CAUSE OF ACTION
## DECLARATORY RELTEF
## 28 .S.C. § 2201 NON VIOLATION OF LANHAM ACT

54.   Plaintiff incorporates the allegations set forth in paragraphs 1 through 53 above.

55.   Plaintiff has not sought to profit in any manner from registration and use of the Domain Name, and has not intended to profit in bad faith from any trade or service mark.

56.   On information and belief, Defendant does not engage in interstate commerce in the United States of America in connection with the manufacture, sale, or transportation of any goods or services denominated as originating with "PARVI VILLE NUMERIQUE", "PARVI", or any colorable variation thereof.

57.   Defendant does not employ "PARVI" as a trade or service mark under the Lanham Act.

58.   Defendant does not own a registration of "PARVI" as a trade or service mark under the Lanham Act.

59.   Defendant's claimed marks are not famous under the Federal Anti-Dilution Act, 15 U.S.C. § 1125.

60.   Plaintiff has conducted no activities outside of the United States concerning the domain name.

103120.1

61. Plaintiff reasonably believes its registration and use of the Domain Name was and is lawful under the Lanham Act.

62. There is an actual controversy with respect to whether the Defendant is entitled to transfer of the Domain Name based on Defendant's rights under the Lanham Act.

63. In the absence of a declaration from the Court, GKG.Net, Inc. will transfer the Domain Name to the control of Defendant, and Plaintiff will suffer immediate and irreparable harm.

64. Plaintiff's registration and use of the Domain Name does not, and is not likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of Plaintiff with Defendant, or as to the origin, sponsorship, or approval of Plaintiff's goods, services, or commercial activities by Defendant.

65. Plaintiff's registration and use of the Domain Name do not misrepresent the nature, characteristics, qualities, or geographic origin of Plaintiff's or Defendant's goods, services, or commercial activities.

## VIII. THIRD CAUSE OF ACTION
## TORTIOUS INTERFERENCE

66. Plaintiff incorporates the allegations set forth in paragraphs 1 through 65 above.

103120.1

67.     Having admitted Plaintiff's domain registration was made without intent to confuse, Defendant alleged otherwise in its UDRP Complaint for the purpose of depriving the Plaintiff of its rights under the domain registration contract.

68.     Defendant's misrepresentations in the UDRP Complaint were made for the purpose of inducing a mis-application of the dispute policy of Plaintiff's domain registration contract, to cause breach thereof in that the UDRP was mis-interpreted and mis-applied in the course of the UDRP Proceeding thereby causing a breach of Plaintiff's domain registration contract.

69.     When registering the Domain Name, Plaintiff was forced to agree to a specific registration agreement that incorporated by reference the UDRP as written.

70.     Had Plaintiff sought the registration services of any other registrar, the registration agreement may differ but the UDRP would still be incorporated within the registration agreement forming a part of the contract.

71.     The registration agreement, at least to the extent it incorporates by reference the UDRP is a contract of adhesion.

72.     The UDRP was created and written in 1999.  The language of the UDRP has not been modified.

73.     The declared intention of the UDRP was to address those disputes involving a narrow class of disputes in which the domain name registration clearly

constituted cyber squatting.  The UDRP was created according to guidelines of the "THE MANAGEMENT OF INTERNET NAMES AND ADDRESSES: INTELLECTUAL PROPERTY ISSUES", Final Report of the WIPO Internet Domain Name Process April 30, 1999, issued by the World Intellectual Property Organization ("WIPO Final Report").

74.    The WIPO Final Report included the following caveat regarding the intent and operation of the UDRP:

> 34. It is further recognized that the goal of this WIPO Process is not to create new rights of intellectual property, nor to accord greater protection to intellectual property in cyberspace than that which exists elsewhere. Rather, the goal is to give proper and adequate expression to the existing, multilaterally agreed standards of intellectual property protection in the context of the new, multijurisdictional and vitally important medium of the Internet and the DNS that is responsible for directing traffic on the Internet
>
> 25. The WIPO Process seeks to find procedures that will avoid the unwitting diminution or frustration of agreed policies and rules for intellectual property protection.
>
> 35. Conversely, it is not intended that the means of according proper and adequate protection to agreed standards of intellectual property should result in a diminution in, or otherwise adversely affect, the enjoyment of other agreed rights, such as the rights guaranteed in the Universal Declaration of Human Rights."

75.    Notwithstanding the original narrow intent of the UDRP, it has been the subject of expansion undertaken as a result of continued panel decisions in which panelists impose conflicting personal views of the UDRP.

76.     As alleged above, to prevail in a UDRP involving a .org domain name, UDRP §4(a) specifies that the complainant must allege and prove the following:

> (i) the domain name is identical or confusingly similar to a trademark or service mark in which the complainant has rights; and

> (ii) the domain name registrant has no rights or legitimate interests in respect of the domain name; and

> (iii) the domain name has been registered and is being used in bad faith.

77.     UDRP §4(c) provides the following explanation as to how a domain name registrant may establish that it has "rights or legitimate interests in respect of the domain name." UDRP §4(c) states as follows:

> "c. How to Demonstrate Your Rights to and Legitimate Interests in the Domain Name in Responding to a Complaint. When you receive a complaint, you should refer to Paragraph 5 of the Rules of Procedure in determining how your response should be prepared. Any of the following circumstances, in particular but without limitation, if found by the Panel to be proved based on its evaluation of all evidence presented, shall demonstrate your rights or legitimate interests to the domain name for purposes of Paragraph 4(a)(ii):

> (i) before any notice to you of the dispute, your use of, or demonstrable preparations to use, the domain name or a name corresponding to the domain name in connection with a bona fide offering of goods or services; or

> (ii) you (as an individual, business, or other organization) have been commonly known by the domain name, even if you have acquired no trademark or service mark rights; or

(iii) you are making a legitimate noncommercial or fair use of the domain name, without intent for commercial gain to misleadingly divert consumers or to tarnish the trademark or service mark at issue.

UDRP §4(b) states as follows:

b. Evidence of Registration and Use in Bad Faith. For the purposes of Paragraph 4(a)(iii), the following circumstances, in particular but without limitation, if found by the Panel to be present, shall be evidence of the registration and use of a domain name in bad faith:

(i) circumstances indicating that you have registered or you have acquired the domain name primarily for the purpose of selling, renting, or otherwise transferring the domain name registration to the complainant who is the owner of the trademark or service mark or to a competitor of that complainant, for valuable consideration in excess of your
documented out-of-pocket costs directly related to the domain name; or

(ii) you have registered the domain name in order to prevent the owner of the trademark or service mark from reflecting the mark in a corresponding domain name, provided that you have engaged in a pattern of such conduct; or

(iii) you have registered the domain name primarily for the purpose of disrupting the business of a competitor; or

(iv) by using the domain name, you have intentionally attempted to attract, for commercial gain, Internet users to your web site or other on-line location, by creating a likelihood of confusion with the complainant's mark as to the source, sponsorship, affiliation, or endorsement of your web site or location or of a product or service on your web site or location.

78.     In the UDRP proceeding at issue, at Defendant's, the panelist disregarded UDRP §4(b) so as to deny that Plaintiff held a "right or legitimate interest" in the Domain Name as a result of Plaintiff's use.

79.     In the UDRP proceeding at issue, the panelist stated the following:

The fundamental question that arises for determination can be stated simply: does the absence of bad faith intent by the respondent at the time of acquisition of the disputed domain name inevitably preclude the complainant from succeeding under the Policy, even though the respondent has subsequently used the domain name in bad faith? In this Panel's view, the answer to that question is provided by the express terms of the Policy itself, and that answer is "no".

The panelist further stated:

the Policy expressly recognizes that the Paragraph 4(a)(iii) requirement of bad faith can, in certain circumstances, be satisfied where the respondent has used the domain name in bad faith, even though the respondent may not have been acting in bad faith at the time of acquisition of the domain name.

The Panelist further stated:

The Policy itself expressly recognizes that, where the disputed domain name is identical or confusingly similar to the complainant's trademark and the respondent has no rights or legitimate interests in the domain name, in certain circumstances bad faith use of a domain name *alone* is sufficient to entitle the complainant to a remedy. The Policy describes, in Paragraph 4(b)(iv), one instance of such circumstances. Other instances of such circumstances may be found by a panel, on consideration of all the facts before it.

80.     A plain reading of the UDRP does not support such findings or conclusions as stated by the panelist in the UDRP proceeding involving the Domain Name.

81.     Improper application of the UDRP, as precipitated by the Defendant, to provide for remedies in factual situations not provided for in the UDRP exposes the Plaintiff, and indeed any domain name registration to which the UDRP applies, to a continuing uncertainty as to its contractual rights and obligations under the relevant registration agreement.

82.     Improper application of the UDRP to provide for remedies in factual situations not provided for in the UDRP subjects the Plaintiff, and indeed any domain name registration to which the UDRP applies, to a continuing unilateral amendment of the provisions of the relevant registration agreement by a person/entity who is not a party to such registration agreement.

83.     Contracts are to be interpreted according to the plain meaning of the terms thereof.  Absent legally recognized exceptions, contracts are to be interpreted using the language contained therein.

84.     Defendant's representations in the UDRP were made for the purpose of inducing a mis-application of the terms of Plaintiff's registration contract, resulting in breach of the contract.

### IX.   FOURTH CAUSE OF ACTION
### CONVERSION

85.     Plaintiff incorporates the allegations set forth in paragraphs 1 through 84 above.

86.    Plaintiff owns a valuable property right in possession of the Domain Name.

87.    By invoking the UDRP, Defendant has assertion of dominion over the Domain Name and has impaired Plaintiff's possession and control of the Domain Name.

88.    Defendant continues to willfully exert dominion over the Domain Name.

89.    Absent a declaration of this court, Defendant will continue to exert dominion over the Domain Name and wrest all rights in the Domain Name from Plaintiff for Defendant's use thereof.

WHEREFORE, plaintiff respectfully requests judgment against defendant as follows:

A.    Declaration by the Court, that Defendant has no trademark rights that are subject to protection in the United States.

B.    Declaration by the Court that, pursuant to 15 U.S.C. § 1114(2)(D)(iv)-(v), plaintiff is entitled to registration, ownership and use of the domain name PARVI.ORG.

C.    Declaration by the Court that, pursuant to 28 U.S.C. § 2201, Plaintiff's registration of the Domain Name is lawful and does not infringe on any trade or service mark right the Defendant may claim in the United States;

D.   A Judgment that Defendant has attempted unlawfully to interfere with Plaintiff's rights and expectations under its domain name registration contract and has induced a breach thereof by making false statements resulting in mis-application of the dispute policy embodied therein;

E.   Declaration by the Court that the UDRP decision was an improper interpretation of the contractual rights of Plaintiff under its registration agreement;

F.   Declaration by the Court that as a matter of contract between the domain name registrant and the domain name registrar, the UDRP requires that a complainant therein prove that the registrant both registered the domain name in bad faith and subsequently used the domain name in bad faith;

G.   Declaration by the Court that the UDRP does not recognize that, where the disputed domain name is identical or confusingly similar to the complainant's trademark and the respondent has no rights or legitimate interests in the domain name, in certain circumstances bad faith use of a domain name *alone* is sufficient to entitle the complainant to a remedy under the UDRP;

H.   Damages according to proof at trial but in an amount not less than $100,000.00;

I.   Punitive damages according to proof at trial;

103120.1

J.      Cost and expenses, including costs under 15 U.S.C. § 1114(2)(D)(iv)-(v)

and reasonable attorneys fees; and

K.      For such other and further relief as this Court deems just and proper.

Respectfully submitted on this 8th day of December 2009:

By:_____/s/___Travis S. Crabtree
Travis S. Crabtree
State Bar No. 24015192
Federal I.D. No. 28105
1300 Post Oak Boulevard
Suite 2000
Houston, Texas 77056
(713) 986-7000
(713) 986-7100 (Fax)
tcrabtree@lrmlaw.com

ATTORNEY-IN-CHARGE FOR
PLAINTIFF JEFFREY WALTER

Of Counsel:

John Berryhill, Ph.d.
John Berryhill LLC
4 West Front St.
Media, PA  19063
(610) 565-5601
john@johnberryhill.com
Pennsylvania Bar ID No. 83,911
*Pro Hac Vice Status Pending*

Paul R. Keating
173 Balmes 2/2
08006 Barcelona, Spain
Tel. +34 93 368 0247
paul@law.es
California Bar ID No. 111661
*Pro Hac Vice Status Pending*

103120.1