REPUBLIQUE FRANÇAISE

MINISTERE DE L'INTERIEUR DE L'OUTRE-MER
ET DES COLLECTIVITES LOCALES

DIRECTION GENERALE DE LA POLICE NATIONALE

COMMISSARIAT DE POLICE

P.V. : 2010/010321/

# PROCES VERBAL

L'an deux mille dix,
le vingt octobre à quatorze heures

Nous, **Thierry BOCQUET**
        BRIGADIER DE POLICE
        en fonction GROUPE "DELEGATIONS JUDICIAIRES"

Agent de Police Judiciaire en résidence PARIS
---Etant au service,---
---Poursuivant l'enquête en cours sous sa forme de droit.---
---Vu les Articles 75 et suivants du Code de Procédure Pénale,--
---Avons mandé et constatons que se présente la personne ci-
dessous  qui nous déclare:---
---**SUR SON IDENTITE:**---
---Je me nomme KRAUSS Christophe.--
---Je suis né le 22/03/1968 à Fontainebleau (77).---
---De Françis et de Françoise RIGAULT.---
---Je suis de nationalité Française.---
---Je suis employé par la Ville de Paris, sise 4 Place de
l'Hotel de Ville 75004 Paris.-----
---J'exerce la profession de Chef de Bureau de la Propriété
Intellectuelle.---
---Tél:01-42-76-66-61.----
---**SUR LES FAITS:**---
---Je prends acte du motif de ma convocation dans vos locaux.---
---Je prends acte que vous me remettez un acte judiciaire venant
des Etats-Unis.---
---Je vous en donne décharge.---
---Il s'agit d'une citation à comparaître dans une action civile
N°09-3939.---
---Il s'agit d'une plainte de M. Jeffrey WALTER contre la Ville
de Paris.---
---Je n'ai rien d'autre à ajouter."---
---Aprés lecture faite, persiste et signe avec nous le présent.-
      M. KRAUSS Christophe                         L'APJ

**AFFAIRE :**

Contre/VILLE DE PARIS

REMISE D'UN ACTE
ETRANGER

**OBJET :**

AUDITION DE
REMISE DE L'ACTE

CLOTURE ET TRANSMISSION



---De même suite.---
---Disons clore et transmettre la présente procédure en l'état à
Monsieur le Procureur de la République prés le Parquet de Paris
Section A2, Bureau 388.---
---Dont procés verbal de clôture et de transmission.---
                                                  L'APJ



DESTINATAIRE

TRIBUNAL DE GRANDE
INSTANCE DE PARIS
PARQUET DE PARIS
SECTION A2
BUREAU 388

RESERVE AU PARQUET

REPUBLIQUE FRANCAISE
MINISTERE DE L'INTERIEUR DE L'OUTRE-MER
ET DES COLLECTIVITES LOCALES
DIRECTION GENERALE DE LA POLICE NATIONALE

COMMISSARIAT DE POLICE

P.V. : 2010/010321/

# PROCES VERBAL

L'an deux mille dix,
le vingt octobre

Nous, **Thierry BOCQUET**
BRIGADIER DE POLICE
en fonction GROUPE "DELEGATIONS JUDICIAIRES"

Agent de Police Judiciaire en résidence PARIS

---Etant au service---
---Agissant conformément aux instructions reçues de Madame
Valérie GOETZ, Commissaire Divisionnaire chargée du 1er
Arrondissement de Paris,---
---**Vu celles de Monsieur le Procureur de la République près le
Tribunal de Grande Instance de Paris,Section A2, Bureau 388
contenues dans son soit transmis nous demandant de remettre à
LA VILLE DE PARIS, sise 4 Place de l'Hotel de Ville 75004 Paris
l'acte étranger venant des Etats-Unis ACTION CIVILE N°09-3939.--**
---Vu le dossier communiqué,---
---Disons que les divers actes de la procédure seront
placés à la suite du présent qui en constitue la saisine---

**AFFAIRE :**

contre/VILLE DE PARIS

REMISE D'UN ACTE ETRANGER

**OBJET :**

EXECUTIONS D'INSTRUCTION
PIECE    PARQUET
EN DATE DU 09/08/2010

SAISINE
ATTACHE VILLE DE PARIS
SERVICE JURIDIQUE

---De même suite,---
---Prenons attache avec la Mairie de Paris au 01-42-76-40-40,---
---Aprés avoir décliné notre fonction et le motif de notre appel
nous sommes mis en relation avec le Service Juridique "DROIT
PRIVE" (tél:01-42-76-51-24).---
---Il nous est répondu qu'une personne de leur service se
vinedra prendre en mains propes le dossier communiqué par le
Tribunal d'Instance des Etats-Unis.---
---Dont acte.---

VU ET TRANSMIS
Le  21/01/
Le Commissaire Divisionnaire
Chef de Service
Mme Valérie GOETZ





**IMPORTANT**

*Veuillez agrafer cette fiche en première page de procédure après exécution, pour classement informatique au*
*Unité du Courrier DSPAP*

*Merci*

N° ........................... Date _9 18 10_

**Nature de l'affaire** _G_ ...........................

**Objet  Enq  Aud  Autres** ...........................

**Provenance** _75_  **Service** _A2_

**Service saisi** _O1°_  **IMAT :** ...........................

**Victime   Mise en cause   Témoin   Personne   Sté**

........... _VILLE DE PARIS_ ...........

........... COURRIER ...........

D.S.P.

_2010 10321_

Arri.......

Dépar....  **N° enregistrement**   X

**DSPAP**

Courrier N°

_10104 1756._

**PARQUET DU TRIBUNAL
DE GRANDE INSTANCE DE PARIS
SECTION A2
BUREAU 388
SERVICE DES ACTES JUDICIAIRES
75055 PARIS**

SOIT TRANSMIS

à Monsieur le DIRECTEUR
De la Police Urbaine de Proximité
Commandant de Section de Gendarmerie
à        **PUP**

**tél : 01 44 32 56 34**

## AUX FINS DEMANDEES

Et en ayant l'honneur de le prier de bien vouloir :

- procéder à l'audition

- s'il s'agit de la remise d'un acte ou d'une notification, établir un récépissé détaillé

- si l'exécution se trouve retardée pour un motif quelconque, établir une note d'attente précisant les références et les motifs du retard

- me tenir informé en cas de difficultés

- me faire retour de vos diligences.

- bien vouloir mentionner le nom et l'adresse de l'autorité requérante.

Paris, le  **9 / 8 / 2010**

P/ Le Procureur de la République,

**REQUEST**

**FOR SERVICE ABROAD OF JUDICIAL OR EXTRA JUDICIAL DOCUMENTS**

*DEMANDE*

*AUX FINS DE SIGNIFICATION OU DE NOTIFICATION A L'ETRANGER*

*D'UN ACTE JUDICIARE OU EXTRAJUDICIAIRE*

Convention on the service abroad of judicial and extrajudicial documents in civil or
commercial matters, signed at The Hague, November 15, 1965

*Convention relative à la signification et à la notification des actes judiciaires ou extrajudiciaires en matierè civile
ou commerciale, signée à La Hage, le 15 Novembre 1965.*

| Identity and address of the applicant | Address of receiving authority |
|---|---|
| *Indentité et adresse du requérant* | *Adrese de l'autorité destinataire* |
| **L. Celeste Ingalls \*\*** | **Ministère de la Justice** |
| **Crowe Foreign Services** | **Direction des Affaires Civiles et du Sceau** |
| **1020 SW Taylor Street, Suite 240** | **Bureau de l'entraide civile et commerciale** |
| **Portland, Oregon 97205,** | **internationale (D3)** |
| **USA** | **13, Place Vendôme** |
| **Email: Lci@foreignservices.com** | **75042 PARIS Cedex 01** |
| **Facsimile No. 1-503-222-3950** | **France** |
| | **tel.: +33 (1) 44 77 64 52 fax: +33 (1) 44 77 61 22** |

The undersigned applicant has the honour to transmit - in duplicate - the documents listed below and, in conformity with article 5 of the
above-mentioned Convention, requests prompt service of one copy thereof on the addressee, i.e.,
   (identity and address)

*Le requérant soussigné a l'honneur de faire parvenir - en double exemplaire - a l'autorité destinataire les documents ci-dessous énumérés
en la priant conformément à l'article 5 de la Convention précitée, d'en faire remettre sans retard un exemplaire au destinataire, savior:
(identité et adresse)*

> Le    16 ... 2010
> à la 2ème Section

**Ville de Paris**
Aux bons soins de : Ministère des Affaires
Étrangères
37, Quai d'Orsay
F - 75351 PARIS

> REÇU LE
> 0 6 AVR. 2010
> D3

☒  (a)  in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention.\*
   *a)  selon les formes légales (article 5, alinéa premier, lettre a).*

☐  (b)  in accordance with the following particular method (sub-paragraph (b) of the first paragraph of article 5)\*:
   *b)  selon la forme particulière suivante (article 5, alinéa premier, lettre b):*

☐  (c)  by delivery to the addressee, if he accepts it voluntarily (second paragraph of article 5)\*.
   *c)  le cas échéant, par remise simple (article 5, alinéa 2).*

The authority is requested to return or to have returned to the applicant a copy of the documents - and of the annexes\* - with a certificate as
provided on the reverse side.

*Cette autorité est priée de renvoyer ou de faire renvoyer au requérant un exemplaire de l'acte - et de ses annexes - avec l'attestation figurant
au verso.*

List of documents

*Enumération des pièces*

Executed "Summary" (2 pages)
\*\*\* Notice of Suit
\*\*\* Summons in a Civil Action
\*\*\* Complaint Under 15 USC 1114(2)(d)(iv)-(v)

Done at Portland, Oregon, USA, the *18th* day of *Mar*, 2010.

*Fait à Portland, Oregon, USA, le...*

**Signature and/or stamp.**

*Signature et/ou cachet*



> OFFICIAL SEAL
> L. CELESTE INGALLS
> NOTARY PUBLIC-OREGON
> COMMISSION NO. 446064
> MY COMMISSION EXPIRES FEBRUARY 05, 2014

L. Celeste Ingalls

\* Delete if inappropriate
*Rayer les mentions inutiles*

\*\*    **Authorized applicant pursuant to Rule 4(c)(2) of the Federal Rules
      of Civil Procedure, Public Law 97-462**

\*\*\*    **With French translation**

# CERTIFICATE
## *ATTESTATION*

The undersigned authority has the honour to certify, in conformity with article 6 of the Convention,

*L'autorité soussignée a l'honneur d'attester conformément à l'article 6 de ladite Convention,*

1) that the document has been served*

*1. que la demande a été exécutée*

   —the (date)

   —*le (date)* _____

   —at (place, street, number)

   —*à (localité, rue numéro)* _____
_____

   —in one of the following methods authorised by article 5—

   —*dans une des formes suivantes prévues à l'article 5:*

     ☐ (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention*

     *a) selon les formes légales (article 5, alinéa premier, lettre a)*

     ☐ (b) in accordance with the following particular method*:

     *b) selon la forme particulière suivante :* _____
_____

     ☐ (c) by delivery to the addressee, who accepted it voluntarily.*

     *c) par remise simple*

   The documents referred to in the request have been delivered to:

   *Les documents mentionnés dans la demande ont été remis à:*

     —(identity and description of person)

     —*(identité et qualité de la personne)* _____
_____

     —relationship to the addressee (family, business or other):

     —*liens de parenté, de subordination ou autres, avec le destinataire de l'acte:*_____
_____

2) that the document has not been served, by reason of the following facts*:

*2. que la demande n'a pas été exécutée, en raison des faits suivants:*

_____
_____
_____

In conformity with the second paragraph of article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement.*

*Conformément à l'article 12, alinéa 2, de ladite Convention, le requérant est prié de payer ou de rembourser les frais dont le détail figure au mémoire ci-joint.*

Annexes

*Annexes*

Documents returned:

*Pièces renvoyées:*

_____
_____
_____

In appropriate cases, documents establishing the service:

*Le cas échéant, les documents justificatifs de l'exécution:*

_____
_____
_____

Done at _____ , the

*Fait à* _____ *, le* _____

Signature and/or stamp.

*Signature et/ou cachet.*

_____

2

*Delete if inappropriate.

*Rayer les mentions inutiles.*

# SUMMARY OF THE DOCUMENT TO BE SERVED
*ELEMENTS ESSENTIELS DE L'ACTE*

### Convention on the service abroad of judicial and extrajudicial documents in civil or commercial matters, signed at The Hague, November 15, 1965

*Convention relative à la signification et à la notification à l'étranger des actes judiciaires et extrajudiciares en matière civile ou commerciale, signée à La Hage, le 15 Novembre 1965.*

**(article 5, fourth paragraph)**
*(article 5, alinéa 4)*

**Name and address of the requesting authority:**      **L. Celeste Ingalls**
*Nom et adresse de l'autorité requérante:*      **Crowe Foreign Services**
     **1020 SW Taylor Street, Suite 240**
     **Portland, Oregon 97205**

**Particulars of the parties*:**      **Jeffrey Walter**.................................................................................................... **PLAINTIFF**
*Indentité des parties:*      **Ville de Paris** ..................................................................................................**DEFENDANT**

## JUDICIAL DOCUMENT**
*ACTE JUDICIAIRE*

**Nature and purpose of the document:**
*Nature et objet de l'acte:*      **To give notice to the defendant, Ville de Paris, of the institution against it of a claim for civil damages and to summon it to answer the claim.**

**Nature and purpose of the proceedings, and, where appropriate, the amount in dispute:**
*Nature et objet de l' instance, le cas échéant, le montant du litige:*

**Civil claim for declaratory judgment. Plaintiff's claim includes, but is not limited to, allegations that defendant committed reverse domain hi-jacking, tortuous interference, and conversion. Plaintiff seeks judgment including, but not limited to, declaration that defendant has no trademark protection in the United States, declaration that plaintiff is entitled to registration and ownership of the domain name in question, costs of suit, attorneys fees, and such other and further relief as the court deems just and proper.**

**Date and place for entering appearance**:**      **N/A**
*Date et lieu de la comparution:*

**Court which has given judgment**:**      **N/A**
*Juridiction qui a rendu la décision:*

**Date of judgment**:**      **N/A**
*Date de la décision:*

**Time limits stated in the document**:**
*Indication des délias figurant dans l'acte:*      **Defendant is required to serve an ANSWER upon Plaintiff's attorney and file same ANSWER with the Court within twenty-one (21) days after receipt of the Summons in a Civil Action and other documents herein.**

## EXTRAJUDICIAL DOCUMENT*
*ACTE EXTRAJUDICIAIRE*

**Nature and purpose of the document:**      **N/A**
*Nature et objet de l'acte:*

**Time limits stated in the document**:**      **N/A**
*Indication des délias figurant dans l'acte:*

\* If appropriate, identity and address of the person interested in the transmission of the document.
   *S'il y a lieu, identité et adresse de la personne intéressée à la transmission de l'acte.*

\*\* Delete if inappropriate.
   *Rayer les mentions inutiles.*

**SUMMARY OF THE DOCUMENT TO BE SERVED**
**PAGE 2 OF 2**

*Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters,*
*signed at The Hague, the 15th of November 1965*
*(Article 5, fourth paragraph)*

Identite et adresse du destinataire / *Identity **and address** of the* **addressee** / --:

| |
|---|
| **Ville de Paris**<br>**Aux bons soins de : Ministère des Affaires**<br>**Étrangères**<br>**37, Quai d'Orsay**<br>**F - 75351 PARIS** |

**IMPORTANT**

*LE DOCUMENT CI-JOINT EST DE NATURE JURIDIQUE ET PEUT AFFECTER VOS DROITS ET OBLIGATIONS. LES «ELEMENTS ESSENTIELS DE L'ACTE» VOUS DONNENT QUELQUES INFORMATIONS SUR SA NATURE ET SON OBJET IL EST TOUTEFOIS INDISPENSABLE DE LIRE ATTENTIVEMENT LE TEXTE MEME DU DOCUMENT IL PEUT ETRE NECESSAIRE DE DEMANDER UN AVIS JURIDIQUE*

*SI VOS RESSOURCES SO NT INSUFFISANTES, RENSEIGNEZ-VOUS SUR LA POSSIBILITE D'OBTENIR L'ASSISTANCE JUDICIAIRE ET LA CONSULTATION JURIDIQUE SOIT DANS VOTRE PAYS SOIT DANS LE PAYS D'ORIGINE DU DOCUMENT*

*LES DEMAN DES DE RENSEIGNEMENTS SUR LES POSSIBILITES D'OBTENIR L'ASSISTANCE JUDICIAIRE OU lA CONSULTATION JURIDIQUE DANS lE PAYS D'ORIGINE PEUVENT ETRE ADRESSEES A:*

Texas Access to Justice Foundation
P.O. Box 12886
Austin, Texas 78711-2886

**IMPORTANT**

*THE ENCLOSED DOCUMENT IS OF A LEGAL NATURE AND MAY AFFECT YOUR RIGHTS AND OBLIGATIONS. THE 'SUMMARY OF THE DOCUMENT TO BE SERVED' WILL GIVE YOU SOME INFORMATION ABOUT ITS NATURE AND PURPOSE YOU SHOULD HOWEVER READ THE DOCUMENT ITSELF CAREFULL Y IT MAY BE NECESSARY TO SEEK LEGAL ADVICE*

*IF YOUR FINANCIAL RESOURCES ARE INSUFFICIENT YOU SHOULD SEEK INFORMATION ON THE POSSIBILITY OF OBTAINING LEGAL AID OR ADVICE EITHER IN THE COUNTRY WHERE YOU LIVE OR IN THE COUNTRY WHERE THE DOCUMENT WAS ISSUED.*

*ENQUIRIES ABOUT THE AVAILABILITY OF LEGAL AID OR ADVICE IN THE COUNTRY WHERE THE DOCUMENT WAS ISSUED MAY BE DIRECTED TO:*

Texas Access to Justice Foundation
P.O. Box 12886
Austin, Texas 78711-2886

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### (Alexandria Division)

| | | |
|---|---|---|
| Jeffrey Walter. | ) | |
| | ) | Case No. 09-3939 |
| Plaintiff | ) | |
| | ) | |
| V. | ) | |
| | ) | |
| Ville de Paris | ) | |
| | ) | |
| Defendant. | ) | |

<u>NOTICE OF SUIT</u>

FOREIGN STATE ENTITY TO BE SERVED:    Ville de Paris
c/o Ministry of Foreign Affairs
37, Quai d'Orsay
F - 75351 PARIS
Tel.: 33 1 43 17 53 53

DOCUMENTS TO BE SERVED:    Summons, Complaint, Amended Complaint, &
Civil Cover Sheet in the above captioned case, with
French translations thereof

NATURE OF ACTION:    Plaintiff's allegations include, but are not limited to,
claims that defendant has alleged plaintiff is
infringing upon defendant's rights to the name
PARVI in plaintiff's domain name of PARVI.ORG
and that defendant has engaged in actions within the
U.S. with the intent to deprive plaintiff of its rights
under plaintiff's domain name registration contract.
Plaintiff seeks judgment including, but not limited
to, a declaration by the court that the plaintiff's
registration, ownership and use of the domain name
PARVI.ORG is lawful and proper and does not
infringe upon the defendant's trademark, if any, for
damages in an amount in excess of $75,000.00, with
the exact amount to be determined at trial, interest,
cost and fees of this action, and such other and
further relief as the court deems just and proper.

JURISDICTION:

Pursuant to the protocol of the FOREIGN SOVEREIGN IMMUNITIES ACT OF 1976 (Title 28 United States Code)[1], France shall not be immune from the jurisdiction of this court as defined by Sec. 1605(a)(2) of Title 28, United States Code.

RESPONSE REQUIREMENTS:

In accordance with Sec. 1608(d) of Title 28, United States Code, defendant, Ville de Paris, is required to file a response with the court, and serve a copy of your response upon the plaintiff's counsel, within 60 days after receipt of the enclosed Summons and additional documents named above.  Failure to respond within 60 days can result in a default judgment for the remedies sought and a request for execution to satisfy the judgment.

---

[1] Copy of Foreign Sovereign Immunities Act (Pub. L. 94-583, 90 Stat. 2891, 28 U.S.C. Sec. 1330, 1332(a), 1391(f) and 1601-1611) attached

# FOREIGN SOVEREIGN IMMUNITIES ACT
## TITLE 28 UNITED STATES CODE
## Sec. 1330, 1332(a), 1391(f) and 1601-1611
## and
## SHORT TITLE OF 1976 AMENDMENTS Pub. L. 94-583,

## TITLE 28

**Sec. 1330**. Actions against foreign states

•(a) The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 of this title or under any applicable international agreement.

•(b) Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) where service has been made under section 1608 of this title.

•(c) For purposes of subsection (b), an appearance by a foreign state does not confer personal jurisdiction with respect to any claim for relief not arising out of any transaction or occurrence enumerated in sections 1605-1607 of this title.  -SOURCE-  (Added Pub. L. 94-583, Sec. 2(a), Oct. 21, 1976, 90 Stat. 2891.) EFFECTIVE DATE  Section effective 90 days after Oct. 21, 1976, see section 8 of Pub. L. 94-583, set out as a note under section 1602 of this title.

**Sec. 1332.** - Diversity of citizenship; amount in controversy; costs

•(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between -

    •(1) citizens of different States;

    •(2) citizens of a State and citizens or subjects of a foreign state;

    •(3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

    •(4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

For the purposes of this section, section 1335, and section 1441, an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled.

•(b) Except when express provision therefor is otherwise made in a statute of the United States, where the plaintiff who files the case originally in the Federal courts is finally adjudged to be entitled to recover less than the sum or value of $75,000, computed without regard to any setoff or counterclaim to which the defendant may be adjudged to be entitled, and exclusive of interest and costs, the district court may deny costs to the plaintiff and, in addition, may impose costs on the plaintiff.

•(c) For the purposes of this section and section <u>1441</u> of this title -

•(1) a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business, except that in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business; and

•(2) the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent, and the legal representative of an infant or incompetent shall be deemed to be a citizen only of the same State as the infant or incompetent.

•(d) The word "States", as used in this section, includes the Territories, the District of Columbia, and the Commonwealth of Puerto Rico

## Sec. 1391. Venue generally

•(f) A civil action against a foreign state as defined in section 1603(a) of this title may be brought –

•(1) in any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;

•(2) in any judicial district in which the vessel or cargo of a foreign state is situated, if the claim is asserted under section 1605(b) of this title;

•(3) in any judicial district in which the agency or instrumentality is licensed to do business or is doing business, if the action is brought against an agency or instrumentality of a foreign state as defined in section 1603(b) of this title; or

•(4) in the United States District Court for the District of Columbia if the action is brought against a foreign state or political subdivision thereof.

## Section 1602. Findings and declaration of purpose

The Congress finds that the determination by United States courts of the claims of foreign states to immunity from the jurisdiction of such courts would serve the interests of justice and would protect the rights of both foreign states and litigants in United States courts. Under international law, states are not immune from the jurisdiction of foreign courts insofar as their commercial activities are concerned, and their commercial property may be levied upon for the satisfaction of judgments rendered against them in connection with their commercial activities.  Claims of foreign states to immunity should henceforth be decided by courts of the United States and of the States in conformity with the principles set forth in this chapter.

**Sec. 1603.** Definitions

For purposes of this chapter -

•(a) A "foreign state", except as used in section 1608 of this title, includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).

•(b) An "agency or instrumentality of a foreign state" means any entity -
>•(1) which is a separate legal person, corporate or otherwise, and
>•(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
>>•(3) which is neither a citizen of a State of the United States as defined in section 1332 (c) and (d) of this title, nor created under the laws of any third country.

•(c) The "United States" includes all territory and waters, continental or insular, subject to the jurisdiction of the United States.

•(d) A "commercial activity" means either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose.

•(e) A "commercial activity carried on in the United States by a foreign state" means commercial activity carried on by such state and having substantial contact with the United States.

**Section 1604.** Immunity of a foreign state from jurisdiction

Subject to existing international agreements to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter.

**Sec. 1605.** General exceptions to the jurisdictional immunity of a foreign state

•(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case -
>•(1) in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver;
>•(2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the

Foreign Sovereign Immunities Act                                      Page 3 of 11

territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States;

•(3) in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States;

•(4) in which rights in property in the United States acquired by succession or gift or rights in immovable property situated in the United States are in issue;

•(5) not otherwise encompassed in paragraph (2) above, in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment; except this paragraph shall not apply to –

•(A) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused, or

•(B) any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights;

•(6) in which the action is brought, either to enforce an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration all or any differences which have arisen or which may arise between the parties with respect to a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration under the laws of the United States, or to confirm an award made pursuant to such an agreement to arbitrate, if

•(A) the arbitration takes place or is intended to take place in the United States,

•(B) the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards,

• (C) the underlying claim, save for the agreement to arbitrate, could have been brought in a United States court under this section or section 1607, or •

• (D) paragraph (1) of this subsection is otherwise applicable; or

•(7) not otherwise covered by paragraph (2), in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources (as defined in section 2339A of title 18) for such an act if such act or provision of material support is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency, except that the court shall decline to hear a claim under this paragraph –

•(A) if the foreign state was not designated as a state sponsor of terrorism under section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. 2405(j)) or section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. 2371) at the time the act occurred, unless later so designated as a result of such act; and

•(B) even if the foreign state is or was so designated, if –

- (i) the act occurred in the foreign state against which the claim has been brought and the claimant has not afforded the foreign state a reasonable opportunity to arbitrate the claim in accordance with accepted international rules of arbitration; or
    - (ii) the claimant or victim was not a national of the United States (as that term is defined in section 101(a)(22) of the Immigration and Nationality Act) when the act upon which the claim is based occurred.

- (b) A foreign state shall not be immune from the jurisdiction of the courts of the United States in any case in which a suit in admiralty is brought to enforce a maritime lien against a vessel or cargo of the foreign state, which maritime lien is based upon a commercial activity of the foreign state: Provided, That –

    - (1) notice of the suit is given by delivery of a copy of the summons and of the complaint to the person, or his agent, having possession of the vessel or cargo against which the maritime lien is asserted; and if the vessel or cargo is arrested pursuant to process obtained on behalf of the party bringing the suit, the service of process of arrest shall be deemed to constitute valid delivery of such notice, but the party bringing the suit shall be liable for any damages sustained by the foreign state as a result of the arrest if the party bringing the suit had actual or constructive knowledge that the vessel or cargo of a foreign state was involved; and
    - (2) notice to the foreign state of the commencement of suit as provided in section 1608 of this title is initiated within ten days either of the delivery of notice as provided in paragraph (1) of this subsection or, in the case of a party who was unaware that the vessel or cargo of a foreign state was involved, of the date such party determined the existence of the foreign state's interest.

- (c) Whenever notice is delivered under subsection (b)(1), the suit to enforce a maritime lien shall thereafter proceed and shall be heard and determined according to the principles of law and rules of practice of suits in rem whenever it appears that, had the vessel been privately owned and possessed, a suit in rem might have been maintained. A decree against the foreign state may include costs of the suit and, if the decree is for a money judgment, interest as ordered by the court, except that the court may not award judgment against the foreign state in an amount greater than the value of the vessel or cargo upon which the maritime lien arose. Such value shall be determined as of the time notice is served under subsection (b)(1). Decrees shall be subject to appeal and revision as provided in other cases of admiralty and maritime jurisdiction. Nothing shall preclude the plaintiff in any proper case from seeking relief in personam in the same action brought to enforce a maritime lien as provided in this section.

- (d) A foreign state shall not be immune from the jurisdiction of the courts of the United States in any action brought to foreclose a preferred mortgage, as defined in the Ship Mortgage Act, 1920 (46 U.S.C. 911 and following). Such action shall be brought, heard, and determined in accordance with the provisions of that Act and in accordance with the principles of law and rules of practice of suits in rem, whenever it appears that had the vessel been privately owned and possessed a suit in rem might have been maintained.

- (e) For purposes of paragraph (7) of subsection (a) –

    - (1) the terms "torture" and "extrajudicial killing" have the meaning given those terms in section 3 of the Torture Victim Protection Act of 1991;

•(2) the term "hostage taking" has the meaning given that term in Article 1 of the International Convention Against the Taking of Hostages; and

•(3) the term "aircraft sabotage" has the meaning given that term in Article 1 of the Convention for the Suppression of Unlawful Acts Against the Safety of Civil Aviation.

•(f) No action shall be maintained under subsection (a)(7) unless the action is commenced not later than 10 years after the date on which the cause of action arose. All principles of equitable tolling, including the period during which the foreign state was immune from suit, shall apply in calculating this limitation period.

•(g) Limitation on Discovery. –

•(1) In general. –

• (A) Subject to paragraph (2), if an action is filed that would otherwise be barred by section 1604, but for subsection (a)(7), the court, upon request of the Attorney General, shall stay any request, demand, or order for discovery on the United States that the Attorney General certifies would significantly interfere with a criminal investigation or prosecution, or a national security operation, related to the incident that gave rise to the cause of action, until such time as the Attorney General advises the court that such request, demand, or order will no longer so interfere.

•(B) A stay under this paragraph shall be in effect during the 12-month period beginning on the date on which the court issues the order to stay discovery. The court shall renew the order to stay discovery for additional 12-month periods upon motion by the United States if the Attorney General certifies that discovery would significantly interfere with a criminal investigation or prosecution, or a national security operation, related to the incident that gave rise to the cause of action.

•(2) Sunset. –

• (A) Subject to subparagraph (B), no stay shall be granted or continued in effect under paragraph (1) after the date that is 10 years after the date on which the incident that gave rise to the cause of action occurred.

•(B) After the period referred to in subparagraph (A), the court, upon request of the Attorney General, may stay any request, demand, or order for discovery on the United States that the court finds a substantial likelihood would –

•(i) create a serious threat of death or serious bodily injury to any person;

•(ii) adversely affect the ability of the United States to work in cooperation with foreign and international law enforcement agencies in investigating violations of United States law; or

•(iii) obstruct the criminal case related to the incident that gave rise to the cause of action or undermine the potential for a conviction in such case.

•(3) Evaluation of evidence. - The court's evaluation of any request for a stay under this subsection filed by the Attorney General shall be conducted ex parte and in camera.

•(4) Bar on motions to dismiss. - A stay of discovery under this subsection shall constitute a bar to the granting of a motion to dismiss under rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure.

•(5) Construction. - Nothing in this subsection shall prevent the United States from seeking protective orders or asserting privileges ordinarily available to the United States.

**Section 1606.** Extent of liability

As to any claim for relief with respect to which a foreign state is not entitled to immunity under section 1605 or 1607 of this chapter, the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances; but a foreign state except for an agency or instrumentality thereof shall not be liable for punitive damages, except any action under section 1605(a)(7) or 1610(f); if, however, in any case wherein death was caused, the law of the place where the action or omission occurred provides, or has been construed to provide, for damages only punitive in nature, the foreign state shall be liable for actual or compensatory damages measured by the pecuniary injuries resulting from such death which were incurred by the persons for whose benefit the action was brought.

**Section 1607.** Counterclaims

In any action brought by a foreign state, or in which a foreign state intervenes, in a court of the United States or of a State, the foreign state shall not be accorded immunity with respect to any counterclaim
•(a) for which a foreign state would not be entitled to immunity under section 1605 of this chapter had such claim been brought in a separate action against the foreign state; or
•(b) arising out of the transaction or occurrence that is the subject matter of the claim of the foreign state; or  (c) to the extent that the counterclaim does not seek relief exceeding in amount or differing in kind from that sought by the foreign state.

**Sec. 1608.** Service; time to answer; default

•(a) Service in the courts of the United States and of the States shall be made upon a foreign state or political subdivision of a foreign state:
    •(1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or
    •(2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or
    •(3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, or
    •(4) if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services - and the Secretary shall transmit one copy of the papers through diplomatic

channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted. As used in this subsection, a "notice of suit" shall mean a notice addressed to a foreign state and in a form prescribed by the Secretary of State by regulation.

•(b) Service in the courts of the United States and of the States shall be made upon an agency or instrumentality of a foreign state:
  •(1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the agency or instrumentality; or
  •(2) if no special  arrangement exists, by delivery of a copy of the summons and complaint either to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States; or in accordance with an applicable international convention on service of judicial documents; or
  •(3) if service cannot be made under paragraphs (1) or (2), and if reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state -
    •(A) as directed by an authority of the foreign state or political subdivision in response to a letter rogatory or request or
    •(B) by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served, or
    •(C) as directed by order of the court consistent with the law of the place where service is to be made.

•(c) Service shall be deemed to have been made -
  •(1) in the case of service under subsection (a)(4), as of the date of transmittal indicated in the certified copy of the diplomatic note; and
  •(2) in any other case under this section, as of the date of receipt indicated in the certification, signed and returned postal receipt, or other proof of service applicable to the method of service employed.

•(d) In any action brought in a court of the United States or of a State, a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state shall serve an answer or other responsive pleading to the complaint within sixty days after service has been made under this section.

•(e) No judgment by default shall be entered by a court of the United States or of a State against a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state, unless the claimant establishes his claim or right to relief by evidence satisfactory to the court. A copy of any such default judgment shall be sent to the foreign state or political subdivision in the manner prescribed for service in this section.

**Section 1609.** Immunity from attachment and execution of property of a foreign state

Subject to existing international agreements to which the United States is a party at the time of enactment of this Act the property in the United States of a foreign state shall be

immune from attachment arrest and execution except as provided in sections 1610 and 1611 of this chapter.

**Section 1610.** Exceptions to the immunity from attachment or execution

•(a) The property in the United States of a foreign state, as defined in section 1603(a) of this chapter, used for a commercial activity in the United States, shall not be immune from attachment in aid of execution, or from execution, upon a judgment entered by a court of the United States or of a State after the effective date of this Act, if

  •(1) the foreign state has waived its immunity from attachment in aid of execution or from execution either explicitly or by implication, notwithstanding any withdrawal of the waiver the foreign state may purport to effect except in accordance with the terms of the waiver, or

  •(2) the property is or was used for the commercial activity upon which the claim is based, or

  •(3) the execution relates to a judgment establishing rights in property which has been taken in violation of international law or which has been exchanged for property taken in violation of international law, or

  •(4) the execution relates to a judgment establishing rights in property –

    •(A) which is acquired by succession or gift, or

    •(B) which is immovable and situated in the United States:  Provided, That such property is not used for purposes of  maintaining a diplomatic or consular mission or the residence  of the Chief of such mission, or

  •(5) the property consists of any contractual obligation or any proceeds from such a contractual obligation to indemnify or hold harmless the foreign state or its employees under a policy of automobile or other liability or casualty insurance covering the claim which merged into the judgment, or

  •(6) the judgment is based on an order confirming an arbitral award rendered against the foreign state, provided that attachment in aid of execution, or execution, would not be inconsistent with any provision in the arbitral agreement, or

  •(7) the judgment relates to a claim for which the foreign state is not immune under section 1605(a)(7), regardless of whether the property is or was involved with the act upon which the claim is based.

•(b) In addition to subsection (a), any property in the United States of an agency or instrumentality of a foreign state engaged in commercial activity in the United States shall not be immune from attachment in aid of execution, or from execution, upon a judgment entered by a court of the United States or of a State after the effective date of this Act, if

  •(1) the agency or instrumentality has waived its immunity from attachment in aid of execution or from execution either explicitly or implicitly, notwithstanding any withdrawal of the waiver the agency or instrumentality may purport to effect except in accordance with the terms of the waiver, or

  •(2) the judgment relates to a claim for which the agency or instrumentality is not immune by virtue of section 1605(a)(2), (3), (5), or (7), or 1605(b) of this chapter, regardless of whether the property is or was involved in the act upon which the claim is based.

•(c) No attachment or execution referred to in subsections (a) and (b) of this section shall be permitted until the court has ordered such attachment and execution after having determined that a reasonable period of time has elapsed following the entry of judgment and the giving of any notice required under section 1608(e) of this chapter.

•(d) The property of a foreign state, as defined in section 1603(a) of this chapter, used for a commercial activity in the United States, shall not be immune from attachment prior to the entry of judgment in any action brought in a court of the United States or of a State, or prior to the elapse of the period of time provided in subsection (c) of this section, if

   •(1) the foreign state has explicitly waived its immunity from attachment prior to judgment, notwithstanding any withdrawal of the waiver the foreign state may purport to effect except in accordance with the terms of the waiver, and

   •(2) the purpose of the attachment is to secure satisfaction of a judgment that has been or may ultimately be entered against the foreign state, and not to obtain jurisdiction.

•(e) The vessels of a foreign state shall not be immune from arrest in rem, interlocutory sale, and execution in actions brought to foreclose a preferred mortgage as provided in section 1605(d).

•(f)      •(1)      •(A) Notwithstanding any other provision of law, including but not limited to section 208(f) of the Foreign Missions Act (22 U.S.C. 4308(f)), and except as provided in subparagraph (B), any property with respect to which financial transactions are prohibited or regulated pursuant to section 5(b) of the Trading with the Enemy Act (50 U.S.C. App. 5(b)), section 620(a) of the Foreign Assistance Act of 1961 (22 U.S.C. 2370(a)), sections 202 and 203 of the International Emergency Economic Powers Act (50 U.S.C. 1701-1702), or any other proclamation, order, regulation, or license issued pursuant thereto, shall be subject to execution or attachment in aid of execution of any judgment relating to a claim for which a foreign state (including any agency or instrumentality or such state) claiming such property is not immune under section 1605(a)(7).

   •(B) Subparagraph (A) shall not apply if, at the time the property is expropriated or seized by the foreign state, the property has been held in title by a natural person or, if held in trust, has been held for the benefit of a natural person or persons.

   •(2)      •(A) At the request of any party in whose favor a judgment has been issued with respect to a claim for which the foreign state is not immune under section 1605(a)(7), the Secretary of the Treasury and the Secretary of State shall fully, promptly, and effectively assist any judgment creditor or any court that has issued any such judgment in identifying, locating, and executing against the property of that foreign state or any agency or instrumentality of such state.

   •(B) In providing such assistance, the Secretaries -  (i) may provide such information to the court under seal; and  (ii) shall provide the information in a manner sufficient to allow the court to direct the United States Marshall's office to promptly and effectively execute against that property.
.

## Section 1611. Certain types of property immune from execution

•(a) Notwithstanding the provisions of section 1610 of this chapter, the property of those organizations designated by the President as being entitled to enjoy the privileges, exemptions, and immunities provided by the International Organizations Immunities Act

shall not be subject to attachment or any other judicial process impeding the disbursement of funds to, or on the order of, a foreign state as the result of an action brought in the courts of the United States or of the States.

•(b) Notwithstanding the provisions of section 1610 of this chapter, the property of a foreign state shall be immune from attachment and from execution, if -  (1) the property is that of a foreign central bank or monetary authority held for its own account, unless such bank or authority, or its parent foreign government, has explicitly waived its immunity from attachment in aid of execution, or from execution, notwithstanding any withdrawal of the waiver which the bank, authority or government may purport to effect except in accordance with the terms of the waiver; or  (2) the property is, or is intended to be, used in connection with a military activity and (A) is of a military character, or (B) is under the control of a military authority or defense  agency.

•(c) Notwithstanding the provisions of section 1610 of this chapter, the property of a foreign state shall be immune from attachment and from execution in an action brought under section 302 of the Cuban Liberty and Democratic Solidarity (LIBERTAD) Act of 1996 to the extent that the property is a facility or installation used by an accredited diplomatic mission for official purposes.

------------------

## SHORT TITLE OF 1976 AMENDMENTS Pub. L. 94-583

**Section 1**, Oct. 21, 1976, 90 Stat. 2891, provided: "That this Act (enacting sections 1330 and 1602 to 1611 of this title, amending sections 1332, 1391, and 1441 of this title, and enacting provisions set out as notes under section 1602 of this title) may be cited as the 'Foreign Sovereign Immunities Act of 1976'." SOURCE Added Pub. L. 94-583, Sec. 4(a), Oct. 21, 1976, 90 Stat. 2892.

## SEPARABILITY

**Section 7** of Pub. L. 94-583 provided that: "If any provision of this Act (enacting this chapter and section 1330 of this title, amending sections 1332, 1391, and 1441 of this title, and enacting provisions set out as notes under this section and section 1 of this title) or the application thereof to any foreign state is held invalid, the invalidity does not affect other provisions or applications of the Act which can be given effect without the invalid provision or application, and to this end the provisions of this Act are severable."

## EFFECTIVE DATE

**Section 8** of Pub. L. 94-583 provided that: "This Act (enacting this chapter and section 1330 of this title, amending sections 1332, 1391, and 1441 of this title, and enacting provisions set out as notes under this section and section 1 of this title) shall take effect ninety days after the date of its enactment (Oct. 21, 1976)."

## SHORT TITLE

For short title of Pub. L. 94-583 as the "Foreign Sovereign Immunities Act of 1976", see section 1 of Pub. L. 94-583, set out as a Short Title of 1976 Amendments note under section 1 of this title.

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the
### Southern District of Texas

| | | |
|---|---|---|
| Jeffrey Walter, an Individual | ) | |
| _Plaintiff_ | ) ) ) | |
| v. | ) | Civil Action No.  09-3939 |
| Ville de Paris (The City of Paris), a Municial Commune of France | ) ) ) | |
| _Defendant_ | ) | |

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_   Ville de Paris
4 Place de l'Hotel de Ville
75004 Paris
France

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

_CLERK OF COURT_    DAVID J. BRADLEY

Date:  FEB 0 2 2010    _____
_Signature of Clerk or Deputy Clerk_

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Jeffrey Walter<br>An individual,<br>Plaintiff | §<br>§<br>§<br>§ | |
| v. | §<br>§ | Civil Action No. 09-3939 |
| Ville de Paris (The City of Paris),<br>A Municipal Commune of France,<br>Defendant | §<br>§<br>§ | |

COMPLAINT UNDER 15 USC 1114(2)(d)(iv)-(v) AND FOR
DECLARATORY RELIEF UNDER THE LANHAM ACT, TORTIOUS
INTERFERENCE WITH CONTRACT AND ECONOMIC ADVANTAGE,
AND CONVERSION

Plaintiff Jeffrey Walter files this Original Complaint against Defendant Ville

de Paris (The City of Paris) and in support thereof would show the following:

## I.   NATURE OF THE CASE

1.     This case is brought pursuant to 15 U.S.C. § 1114(2)(D)(iv)-(v) and

for declaratory relief pursuant to 28 U.S.C. § 2201 to establish that Plaintiff's

registration and use of the internet domain name <parvi.org> (the "Domain

Name") is not unlawful under the Anticybersquatting Consumer Protection Act (15

U.S.C. § 1125(d)("ACPA") or otherwise under the Lanham Act (15 U.S.C. § 1051,

*et seq.*), (1) to prevent the transfer of the Domain Name to Defendant, which was

ordered in an administrative panel decision issued April 7, 2009, under the

Uniform Domain Name Dispute Policy ("UDRP") in a proceeding captioned: *Ville*

103120.1

*de Paris v. Jeff Walter*, WIPO Case No. D2009-1278. (Nov. 19, 2009), (2) to establish the UDRP process undertaken, and the resulting decision of the panel, in the above administrative proceeding was in violation of Plaintiff's contractual rights; (3) and to recover attorneys' fees, costs and damages as set forth herein.

## II.  JURISDICTION AND VENUE

2.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this cause arises under 15 U.S.C. § 1114 in that Plaintiff is the registrant of a domain name that has been suspended, disabled, or transferred under a policy provided by the registrar thereof relating to alleged conflict with a trade or service mark claimed by Defendant.

3.  This Court has personal jurisdiction over Defendant because Defendant expressly and voluntarily agreed to submit to the jurisdiction of this Court when it initiated an administrative proceeding pursuant to the UDRP concerning the Domain Name. Specifically, Defendant voluntarily and expressly agreed in its UDRP complaint (the "UDRP Complaint") to submit to the jurisdiction of the registrar in connection with any legal action in any way related to the UDRP proceeding.  The address listed for the registrar, GKG.Net Inc. is PO BOX 1450, Bryan, TX 77806.

4.  In preparing and filing the Complaint in the above UDRP Proceeding, Complainant specifically admitted:

103120.1

## VIII. Mutual Jurisdiction
(Rules, para. 3(b)(xiii))

[14.] In accordance with Paragraph 3(b)(xiii) of the Rules, the Complainant will submit, with respect to any challenges that may be made by the Respondent to a decision by the Administrative Panel to transfer the domain name that is the subject of this Complaint, to the jurisdiction of the courts at the location of the principal office of the concerned registrar.

5.     Defendant has directed activity into this judicial district with the intent to deprive Plaintiff of rights under a contract having a situs in this judicial district.

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2).

## III.   PARTIES

7.     Plaintiff Jeffrey Walter is an individual residing in Fremont California.

8.     At the time the UDRP Complaint was filed, the Domain Name was registered by Plaintiff with GKG.Net Inc., a domain name registrar having its principal offices in the State of Texas, County of Brazos.

9.     The terms of the registration agreement pursuant to which the Domain Name was registered specifies that the laws of the State of Texas apply as to the interpretation of the registration agreement and any dispute arising in connection therewith.

103120.1

10.    The terms of the registration agreement pursuant to which the Domain Name was registered a clause relative to jurisdiction and venue that specifies in Section 7 thereof that jurisdiction and venue over disputes relative to the Domain Name shall be "the United States District Court for the Southern District of Texas, or if there is no jurisdiction in such court, then in a state court in Brazos County, Texas."

11.    On information and belief, Defendant Ville de Paris (the City of Paris, France) is represented by government officials who maintain an office for business at 4 Place de l'Hotel de Ville, Paris, France.   Defendant will be asked to accept service of the Complaint so no issuance of a citation is requested at this time.

## IV.    FACTS

12.    Plaintiff is a computer network systems professional residing in California.   In his spare time, Plaintiff develops open source software and assists others in developing internet websites.   Plaintiff has registered and maintained internet domain names for his avocational interests such as SeanAndMaryCampbell.com and ClubBeyondAnsbach for a Christian youth ministry run by friends Sean and Mary Campbell in Ansbach, Germany; TheWalterFamily.com, to provide email services within his family; HELunch.com to provide a lunch ordering system at the workplace of his employer, Hurricane Electric; and for other hobbies and avocational interests.

103120.1

13.   In 2006, Plaintiff was considering building an online social networking website for use by Plaintiff and his acquaintances and set about selecting a name for it.

14.   To select a name, Plaintiff obtained a machine-generated Latin translation of an inspirational phrase of a science fiction character named "Oma de Sala" from the MGM "Stargate" franchise:

> The universe is vast and we are so small. There is only one thing we can ever truly control, whether we are good or evil.

15.   The translation received by the Respondent from an online service called the "Quintus' Latin Translation Service" read as follows:

> "Universum ingens est et nos tam parvi sumus. Est una sola res quam umquam vere regere possumus, utrum boni simus an mali."

16.   Investigating this translation further, Plaintiff formed the reasonable belief that the word "parvi" is the Latin masculine plural form of the word "small", which Plaintiff selected as encapsulating his inspirational quote in a single word.

17.   On or about June 1, 2006, Plaintiff entered into a registration contract with GoDaddy.com of Scottsdale, Arizona for the purpose of having the internet domain name PARVI.ORG entered into the .com registry and maintained by the registry for the benefit of Plaintiff.

18.   In September 2006, Defendant wrote to Plaintiff claiming it owned trademark registrations in France for goods or services allegedly provided within

103120.1

the municipality of Paris, France. The claimed French trademark registrations were for compound and figurative representations of "PARVI PARIS VILLE NUMERIQUE" and "PARVI". Upon information and belief, the French trademark registration for "PARVI" specifies the following goods and services: "*Communication par terminaux* d'ordinateurs (Internet)", and is believed to relate to alleged operation of a municipal internet access program in the city of Paris, France. Defendant demanded Plaintiff transfer the Domain Name to Defendant.

19. Prior to such correspondence, Plaintiff had never known of the Plaintiff's claims in its alleged French trademark registrations. Plaintiff has never been to France, conducts no business in France and does not speak French.

20. On information and belief, Defendant does not engage in commerce in the United States in connection with any goods or services under its claimed "PARVI VILLE NUMERIQUE" or "PARVI" marks.

21. On information and belief, Defendant's services, if any, under the claimed marks are entirely provided within the municipality of Paris, France.

22. In response to Defendant's communication, Plaintiff informed Defendant he does not conduct any activities in France and that he planned to provide a social networking service in the United States.

23. In November 2007, Defendant replied it "has understood the registration of you [sic] domain name 'parvi.org' was accomplished with no

intention of causing any confusion." Defendant proposed that Plaintiff should place a disclaimer on any website used with the Domain Name. Plaintiff proposed mutual disclaimers on respective websites, and the Defendant did not respond further.

24. Prior to registering the Domain Name, Plaintiff had obtained a Sun COBALT Server, which is a discontinued product of Sun Microsystems, Inc. As a hobby project, Plaintiff began developing open source system software for use in maintaining operation of Sun COBALT servers.

25. In mid-2007 Plaintiff determined that other online social networking services were duplicative of his planned use for the Domain Name, and rather than create his intended small-scale personal social networking site, Plaintiff decided to use the Domain Name for a website to publish his Sun COBALT server open source software, to provide instructions for its use, to provide a mechanism for commentary and improvement of the software, and to discuss and provide access to other hobby projects of the Plaintiff.

26. Plaintiff reasonably believed that the domain name "Parvi.org" was well suited for his open-source software project because it was intended to be limited (small) in scope and the .org domain name extension fit nicely with his desire to make his original software available without charge.

103120.1

27.    At all times in operating his website at Parvi.org, the site has remained small in size and limited in scope.

28.    At all times in operating his website at Parvi.org, the Plaintiff has made his software, instructions, and commentary available for free at the website corresponding to the Domain Name since mid-2007.

29.    In mid-2008, Plaintiff decided to transfer registration of the Domain Name from GoDaddy to the management of internet domain name registrar GKG.Net of Bryan, Texas.   Plaintiff arranged for the transfer of registration services and entered into a contract with GKG.Net for the continued registration of the Domain Name.   The Plaintiff transferred the domain name to registrar GKG.Net Inc. because the new registrar offered support for an advanced internet protocol Plaintiff desired to use.

30.    The domain registration contract ("Contract") between GKG.Net Inc. and Plaintiff for the registration of the Domain Name provides:

**6. Adjudication of Disputes**

In the event of adjudication of disputes concerning or arising from use of services contracted to you, you shall submit, without prejudice to other potentially applicable jurisdictions, to the jurisdiction of the courts (1) of the location of GKG, and (2) of the location of your domicile.

**7. Controlling Law and Venue**

Except as otherwise set forth in Section 6 above, or in the Dispute Policy with respect to disputes, this Agreement, your rights and

103120.1

obligations and all actions contemplated by this Agreement shall be governed by the laws of the United States of America and the State of Texas, as if the Agreement was a contract wholly entered into and wholly performed within the State of Texas. Except as otherwise set forth in Section 6 above, or in the Dispute Policy with respect to domain disputes, any action to enforce this Agreement or any matter relating to your use of the GKG site shall be brought exclusively in the United States District Court for the Southern District of Texas, or if there is no jurisdiction in such court, then in a state court in Brazos County, Texas."

31.   The Contract incorporates as a "Dispute Policy" the UDRP, under which a third party may request transfer of rights under said contract to such party on the basis of a claim of trade or service mark rights.

32.   As a result of the incorporation, the UDRP becomes a part of the registration agreement to which Plaintiff is a party.

33.   Plaintiff is without freedom to negotiate the registration agreement and/or to modify or eliminate any aspect of the UDRP as a part of the registration agreement.

34.   If plaintiff, or anyone else for that matter, desires a domain name, they must agree to the terms of the registration agreement which in all instances incorporate the UDRP.

35.   The UDRP is a mandatory administrative proceeding, which provides in pertinent part:

"k.   **Availability of Court Proceedings.** The mandatory administrative proceeding requirements set forth in Paragraph 4 shall not prevent either you or the complainant from submitting the dispute

103120.1

to a court of competent jurisdiction for independent resolution before such mandatory administrative proceeding is commenced or after such proceeding is concluded. If an Administrative Panel decides that your domain name registration should be canceled or transferred, we will wait ten (10) business days (as observed in the location of our principal office) after we are informed by the applicable Provider of the Administrative Panel's decision before implementing that decision. We will then implement the decision unless we have received from you during that ten (10) business day period official documentation (such as a copy of a complaint, file-stamped by the clerk of the court) that you have commenced a lawsuit against the complainant in a jurisdiction to which the complainant has submitted under Paragraph 3(b)(xiii) of the Rules of Procedure. (In general, that jurisdiction is either the location of our principal office or of your address as shown in our Whois database. See Paragraphs 1 and 3(b)(xiii) of the Rules of Procedure for details.) If we receive such documentation within the ten (10) business day period, we will not implement the Administrative Panel's decision, and we will take no further action, until we receive (i) evidence satisfactory to us of a resolution between the parties; (ii) evidence satisfactory to us that your lawsuit has been dismissed or withdrawn; or (iii) a copy of an order from such court dismissing your lawsuit or ordering that you do not have the right to continue to use your domain name."

36.    In July 2009, Defendant again wrote to Plaintiff in apparent ignorance of its prior correspondence again demanding transfer of the Domain Name. Plaintiff replied by stating again that the Domain Name was being used for open source software developed by the Plaintiff, and that Plaintiff was not conducting any activity in France, that Plaintiff was not violating French law, and that Defendant had no apparent rights in the United States.

103120.1

## V. THE UDRP PROCEEDING

37.    On  or  about  September  25,  2009,  Defendant  issued  a  UDRP

Complaint challenging Plaintiff's registration of the Domain Name.  In the UDRP

Complaint, Defendant admitted to the jurisdiction of this court as quoted above.

38.    Defendant did not present any evidence in the UDRP proceeding that

Plaintiff registered the Domain Name with any right of the Defendant in mind or

that  Plaintiff  had  a  bad  faith  intent  to  profit  from  Defendant's  claimed  rights  in

France.

39.    Defendant did not present any evidence in the UDRP proceeding that

Plaintiff  has  used  the  Domain  Name  in  a  manner  intended  to  profit  from

Defendant's trademark.

40.    Defendant did not present any evidence in the UDRP proceeding that

Plaintiff  had  ever  promoted  goods  and  services  related  to  Defendant  or  that

Plaintiff had ever intended to confuse consumers seeking Defendant.

41.    Defendant did not present any evidence in the UDRP proceeding of

actual consumer confusion.

42.    Defendant did not present any evidence in the UDRP proceeding that

Plaintiff had attempted to sell the Domain Name to Defendant.

43.    Despite  its  prior  admission  that  Plaintiff  had  not  registered  the

Domain  Name  with  the  intention  to  cause  confusion,  Defendant  falsely  alleged

103120.1

Plaintiff had registered and used the Domain Name in bad faith, premised on Defendant's alleged trade or service marks in France.

44.    Despite the figurative and compound marks appearing in Defendant's French trademark registrations, Defendant falsely alleged the Domain Name was identical or confusingly similar to such figurative and compound designations.

45.    On November 19, 2009, a UDRP Panelist appointed by the World Intellectual Property Organization issued a decision directing that the registration of the Domain Name be transferred to Defendant.

46.    In its decision, the UDRP Panelist disregarded evidence of Plaintiff's good faith registration and use of the Domain Name and, despite the absence of any evidence supporting a finding of bad faith on the part of Plaintiff.

47.    In its decision, the UDRP Panel disregarded the terms of the UDRP, incorporated into Plaintiff's domain registration contract, which required the Defendant to show the domain name was "registered **and** used in bad faith". Instead, at the Defendant's urging, the UDRP Panelist was induced to misinterpret the UDRP as requiring a showing the domain name to be "registered **or** used in bad faith."

48.    Prior to the UDRP decision the Panelist selected by WIPO had declared an intention to re-interpret the UDRP as not requiring a claimant to demonstrate that a domain name was "registered **and** used in bad faith" but to

103120.1

define such requirement as requiring a claimant to show that a domain name was "registered **or** used in bad faith".

49.    Accordingly, despite the Defendant's prior admission that the Domain Name was not registered with an intent to confuse consumers, the Panelist ordered transfer of the domain name on the basis of alleged post-registration "bad faith" activity which was not in evidence, for the purpose of furthering the Panelist's proposed re-interpretation of the UDRP to embrace "bad faith registration **or** use."

## VI.    FIRST CAUSE OF ACTION
### REVERSE DOMAIN HI-JACKING UNDER
### 15 U.S.C. § 1114(2)(D)(IV)-(V)

50.    Plaintiff incorporates the allegations contained in paragraphs 1 through 49 herein.

51.    Plaintiff's Domain Name has been locked beyond Plaintiff's full enjoyment of the benefits of registration thereof in consequence of false statements made by Defendant under a dispute policy (the UDRP) followed by the domain registrar GKG.Net Inc.   The Domain Name has been ordered transferred, and would be transferred to Defendant but for this Action.

52.    Plaintiff has provided Defendant with notice of this Action.

53.    Plaintiff has incurred costs, including, without limitation, attorneys' fees and court costs, in seeking to prevent transfer of the Domain Name.

103120.1

## VII.   SECOND CAUSE OF ACTION
### DECLARATORY RELTEF
### 28 .S.C. § 2201 NON VIOLATION OF LANHAM ACT

54.   Plaintiff incorporates the allegations set forth in paragraphs 1 through 53 above.

55.   Plaintiff has not sought to profit in any manner from registration and use of the Domain Name, and has not intended to profit in bad faith from any trade or service mark.

56.   On information and belief, Defendant does not engage in interstate commerce in the United States of America in connection with the manufacture, sale, or transportation of any goods or services denominated as originating with "PARVI VILLE NUMERIQUE", "PARVI", or any colorable variation thereof.

57.   Defendant does not employ "PARVI" as a trade or service mark under the Lanham Act.

58.   Defendant does not own a registration of "PARVI" as a trade or service mark under the Lanham Act.

59.   Defendant's claimed marks are not famous under the Federal Anti-Dilution Act, 15 U.S.C. § 1125.

60.   Plaintiff has conducted no activities outside of the United States concerning the domain name.

103120.1

61.    Plaintiff reasonably believes its registration and use of the Domain Name was and is lawful under the Lanham Act.

62.    There is an actual controversy with respect to whether the Defendant is entitled to transfer of the Domain Name based on Defendant's rights under the Lanham Act.

63.    In the absence of a declaration from the Court, GKG.Net, Inc. will transfer the Domain Name to the control of Defendant, and Plaintiff will suffer immediate and irreparable harm.

64.    Plaintiff's registration and use of the Domain Name does not, and is not likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of Plaintiff with Defendant, or as to the origin, sponsorship, or approval of Plaintiff's goods, services, or commercial activities by Defendant.

65.    Plaintiff's registration and use of the Domain Name do not misrepresent the nature, characteristics, qualities, or geographic origin of Plaintiff's or Defendant's goods, services, or commercial activities.

## VIII. THIRD CAUSE OF ACTION
## TORTIOUS INTERFERENCE

66.    Plaintiff incorporates the allegations set forth in paragraphs 1 through 65 above.

103120.1

67. Having admitted Plaintiff's domain registration was made without intent to confuse, Defendant alleged otherwise in its UDRP Complaint for the purpose of depriving the Plaintiff of its rights under the domain registration contract.

68. Defendant's misrepresentations in the UDRP Complaint were made for the purpose of inducing a mis-application of the dispute policy of Plaintiff's domain registration contract, to cause breach thereof in that the UDRP was mis-interpreted and mis-applied in the course of the UDRP Proceeding thereby causing a breach of Plaintiff's domain registration contract.

69. When registering the Domain Name, Plaintiff was forced to agree to a specific registration agreement that incorporated by reference the UDRP as written.

70. Had Plaintiff sought the registration services of any other registrar, the registration agreement may differ but the UDRP would still be incorporated within the registration agreement forming a part of the contract.

71. The registration agreement, at least to the extent it incorporates by reference the UDRP is a contract of adhesion.

72. The UDRP was created and written in 1999. The language of the UDRP has not been modified.

73. The declared intention of the UDRP was to address those disputes involving a narrow class of disputes in which the domain name registration clearly

103120.1

constituted cyber squatting. The UDRP was created according to guidelines of the

"THE MANAGEMENT OF INTERNET NAMES AND ADDRESSES: INTELLECTUAL PROPERTY ISSUES", Final Report of the WIPO Internet Domain Name Process April 30, 1999, issued by the World Intellectual Property Organization ("WIPO Final Report").

74.   The WIPO Final Report included the following caveat regarding the intent and operation of the UDRP:

> 34. It is further recognized that the goal of this WIPO Process is not to create new rights of intellectual property, nor to accord greater protection to intellectual property in cyberspace than that which exists elsewhere. Rather, the goal is to give proper and adequate expression to the existing, multilaterally agreed standards of intellectual property protection in the context of the new, multijurisdictional and vitally important medium of the Internet and the DNS that is responsible for directing traffic on the Internet
>
> 25. The WIPO Process seeks to find procedures that will avoid the unwitting diminution or frustration of agreed policies and rules for intellectual property protection.
>
> 35. Conversely, it is not intended that the means of according proper and adequate protection to agreed standards of intellectual property should result in a diminution in, or otherwise adversely affect, the enjoyment of other agreed rights, such as the rights guaranteed in the Universal Declaration of Human Rights."

75.   Notwithstanding the original narrow intent of the UDRP, it has been the subject of expansion undertaken as a result of continued panel decisions in which panelists impose conflicting personal views of the UDRP.

103120.1

76.    As alleged above, to prevail in a UDRP involving a .org domain name, UDRP §4(a) specifies that the complainant must allege and prove the following:

(i) the domain name is identical or confusingly similar to a trademark or service mark in which the complainant has rights; and

(ii) the domain name registrant has no rights or legitimate interests in respect of the domain name; and

(iii) the domain name has been registered and is being used in bad faith.

77.    UDRP §4(c) provides the following explanation as to how a domain name registrant may establish that it has "rights or legitimate interests in respect of the domain name."  UDRP §4(c) states as follows:

"c. How to Demonstrate Your Rights to and Legitimate Interests in the Domain Name in Responding to a Complaint. When you receive a complaint, you should refer to Paragraph 5 of the Rules of Procedure in determining how your response should be prepared. Any of the following circumstances, in particular but without limitation, if found by the Panel to be proved based on its evaluation of all evidence presented, shall demonstrate your rights or legitimate interests to the domain name for purposes of Paragraph 4(a)(ii):

(i) before any notice to you of the dispute, your use of, or demonstrable preparations to use, the domain name or a name corresponding to the domain name in connection with a bona fide offering of goods or services; or

(ii) you (as an individual, business, or other organization) have been commonly known by the domain name, even if you have acquired no trademark or service mark rights; or

(iii) you are making a legitimate noncommercial or fair use of the domain name, without intent for commercial gain to misleadingly divert consumers or to tarnish the trademark or service mark at issue.

UDRP §4(b) states as follows:

b. Evidence of Registration and Use in Bad Faith. For the purposes of Paragraph 4(a)(iii), the following circumstances, in particular but without limitation, if found by the Panel to be present, shall be evidence of the registration and use of a domain name in bad faith:

(i) circumstances indicating that you have registered or you have acquired the domain name primarily for the purpose of selling, renting, or otherwise transferring the domain name registration to the complainant who is the owner of the trademark or service mark or to a competitor of that complainant, for valuable consideration in excess of your
documented out-of-pocket costs directly related to the domain name; or

(ii) you have registered the domain name in order to prevent the owner of the trademark or service mark from reflecting the mark in a corresponding domain name, provided that you have engaged in a pattern of such conduct; or

(iii) you have registered the domain name primarily for the purpose of disrupting the business of a competitor; or

(iv) by using the domain name, you have intentionally attempted to attract, for commercial gain, Internet users to your web site or other on-line location, by creating a likelihood of confusion with the complainant's mark as to the source, sponsorship, affiliation, or endorsement of your web site or location or of a product or service on your web site or location.

103120.1

78.    In the UDRP proceeding at issue, at Defendant's, the panelist disregarded UDRP §4(b) so as to deny that Plaintiff held a "right or legitimate interest" in the Domain Name as a result of Plaintiff's use.

79.    In the UDRP proceeding at issue, the panelist stated the following:

The fundamental question that arises for determination can be stated simply: does the absence of bad faith intent by the respondent at the time of acquisition of the disputed domain name inevitably preclude the complainant from succeeding under the Policy, even though the respondent has subsequently used the domain name in bad faith? In this Panel's view, the answer to that question is provided by the express terms of the Policy itself, and that answer is "no".

The panelist further stated:

the Policy expressly recognizes that the Paragraph 4(a)(iii) requirement of bad faith can, in certain circumstances, be satisfied where the respondent has used the domain name in bad faith, even though the respondent may not have been acting in bad faith at the time of acquisition of the domain name.

The Panelist further stated:

The Policy itself expressly recognizes that, where the disputed domain name is identical or confusingly similar to the complainant's trademark and the respondent has no rights or legitimate interests in the domain name, in certain circumstances bad faith use of a domain name *alone* is sufficient to entitle the complainant to a remedy. The Policy describes, in Paragraph 4(b)(iv), one instance of such circumstances. Other instances of such circumstances may be found by a panel, on consideration of all the facts before it.

80.    A plain reading of the UDRP does not support such findings or conclusions as stated by the panelist in the UDRP proceeding involving the Domain Name.

103120.1

81.    Improper application of the UDRP, as precipitated by the Defendant, to provide for remedies in factual situations not provided for in the UDRP exposes the Plaintiff, and indeed any domain name registration to which the UDRP applies, to a continuing uncertainty as to its contractual rights and obligations under the relevant registration agreement.

82.    Improper application of the UDRP to provide for remedies in factual situations not provided for in the UDRP subjects the Plaintiff, and indeed any domain name registration to which the UDRP applies, to a continuing unilateral amendment of the provisions of the relevant registration agreement by a person/entity who is not a party to such registration agreement.

83.    Contracts are to be interpreted according to the plain meaning of the terms thereof.  Absent legally recognized exceptions, contracts are to be interpreted using the language contained therein.

84.    Defendant's representations in the UDRP were made for the purpose of inducing a mis-application of the terms of Plaintiff's registration contract, resulting in breach of the contract.

## IX.    FOURTH CAUSE OF ACTION
## CONVERSION

85.    Plaintiff incorporates the allegations set forth in paragraphs 1 through 84 above.

103120.1

86.    Plaintiff owns a valuable property right in possession of the Domain Name.

87.    By invoking the UDRP, Defendant has assertion of dominion over the Domain Name and has impaired Plaintiff's possession and control of the Domain Name.

88.    Defendant continues to willfully exert dominion over the Domain Name.

89.    Absent a declaration of this court, Defendant will continue to exert dominion over the Domain Name and wrest all rights in the Domain Name from Plaintiff for Defendant's use thereof.

WHEREFORE, plaintiff respectfully requests judgment against defendant as follows:

A.    Declaration by the Court, that Defendant has no trademark rights that are subject to protection in the United States.

B.    Declaration by the Court that, pursuant to 15 U.S.C. § 1114(2)(D)(iv)-(v), plaintiff is entitled to registration, ownership and use of the domain name PARVI.ORG.

C.    Declaration by the Court that, pursuant to 28 U.S.C. § 2201, Plaintiff's registration of the Domain Name is lawful and does not infringe on any trade or service mark right the Defendant may claim in the United States;

103120.1

D.   A Judgment that Defendant has attempted unlawfully to interfere with Plaintiff's rights and expectations under its domain name registration contract and has induced a breach thereof by making false statements resulting in mis-application of the dispute policy embodied therein;

E.   Declaration by the Court that the UDRP decision was an improper interpretation of the contractual rights of Plaintiff under its registration agreement;

F.   Declaration by the Court that as a matter of contract between the domain name registrant and the domain name registrar, the UDRP requires that a complainant therein prove that the registrant both registered the domain name in bad faith and subsequently used the domain name in bad faith;

G.   Declaration by the Court that the UDRP does not recognize that, where the disputed domain name is identical or confusingly similar to the complainant's trademark and the respondent has no rights or legitimate interests in the domain name, in certain circumstances bad faith use of a domain name *alone* is sufficient to entitle the complainant to a remedy under the UDRP;

H.   Damages according to proof at trial but in an amount not less than $100,000.00;

I.   Punitive damages according to proof at trial;

103120.1

J.     Cost and expenses, including costs under 15 U.S.C. § 1114(2)(D)(iv)-(v)

and reasonable attorneys fees; and

K.     For such other and further relief as this Court deems just and proper.

Respectfully submitted on this 8th day of December 2009:

By:     /s/   Travis S. Crabtree
Travis S. Crabtree
State Bar No. 24015192
Federal I.D. No. 28105
1300 Post Oak Boulevard
Suite 2000
Houston, Texas 77056
(713) 986-7000
(713) 986-7100 (Fax)
tcrabtree@lrmlaw.com

ATTORNEY-IN-CHARGE FOR
PLAINTIFF JEFFREY WALTER

Of Counsel:

John Berryhill, Ph.d.
John Berryhill LLC
4 West Front St.
Media, PA  19063
(610) 565-5601
john@johnberryhill.com
Pennsylvania Bar ID No. 83,911
*Pro Hac Vice Status Pending*

Paul R. Keating
173 Balmes 2/2
08006 Barcelona, Spain
Tel. +34 93 368 0247
paul@law.es
California Bar ID No. 111661
*Pro Hac Vice Status Pending*

103120.1

DANS LE TRIBUNAL FÉDÉRAL D'INSTANCE DES ÉTATS-UNIS
POUR LE DISTRICT EST DE VIRGINIE
(Division d'Alexandria)

Jeffrey Walter,                )
                             )
      Partie demanderesse,    )
                             )
contre                     )     Affaire N° 09-3939
                             )
Ville de Paris,            )
                             )
      Partie défenderesse.    )

## NOTIFICATION DE PROCÈS

ENTITÉ D'ÉTAT ÉTRANGER
DEVANT RECEVOIR SIGNIFICATION :      Ville de Paris
                                        Aux bons soins de : Ministère des Affaires
                                        Étrangères
                                        37, Quai d'Orsay
                                        F - 75351 PARIS
                                        Tél. : 33 1 43 17 53 53

DOCUMENTS À SIGNIFIER :              Citation à comparaître, Plainte, Plainte modifiée et Page de
                                        couverture civile dans l'affaire mentionnée ci-dessus, avec
                                          des traductions en français de ces documents

NATURE DU PROCÈS :                 Les allégations de la partie demanderesse incluent ce qui
suit, sans limitation : réclamations selon lesquelles la partie
défenderesse a allégué que la partie demanderesse avait
violé les droits de la partie défenderesse au nom de PARVI
dans le nom de domaine PARVI.ORG de la partie
demanderesse et que la partie défenderesse a entrepris
des actions sur le territoire des USA dans l'intention de
priver la partie demanderesse de ses droits dans le cadre
du contrat d'enregistrement de nom de domaine de la partie
demanderesse. La partie demanderesse souhaite une
décision incluant, mais sans limitation, une déclaration du
tribunal selon laquelle l'enregistrement, le titre de propriété
et l'utilisation du nom de domaine PARVI.ORG de la partie
demanderesse sont légitimes et appropriés et ne violent
pas toute marque commerciale éventuelle de la partie
défenderesse, des dommages-intérêts d'un montant
supérieur à 75 000 dollars, la somme exacte devant être
déterminée lors du procès, les frais de justice et les
honoraires concernant ces poursuites, et tout autre
dédommagement supplémentaire que le tribunal jugera
équitable et approprié.

JURIDICTION :

En vertu du protocole de la LOI SUR LES IMMUNITÉS DES SOUVERAINS ÉTRANGERS DE 1976 (Titre 28, Code des États-Unis)[1], la France n'est pas exemptée de la juridiction de ce tribunal, telle que définie par la Sec. 1605(a)(2) du Titre 28, Code des États-Unis.

EXIGENCES DE RÉPONSE :

Conformément à la Sec. 1608(d) du Titre 28, Code des États-Unis, la partie défenderesse Ville de Paris est requise de déposer une réponse auprès du tribunal et de signifier une copie de sa réponse à l'avocat de la partie demanderesse, dans un délai de 60 jours après réception de la Citation à comparaître, ci-jointe, et des autres documents indiqués ci-dessus. Si vous ne répondez pas dans un délai de 60 jours, un jugement par défaut pour le dédommagement demandé et une demande d'exécution pour satisfaire la décision peuvent être promulgués.

---

[1] Copie de la Loi sur les immunités des souverains étrangers (Pub. L. 94-583, 90 Stat. 2891, 28 U.S.C. Sec. 1330, 1332(a), 1391(f) et 1601-1611) jointe

# LOI SUR LES IMMUNITÉS DES SOUVERAINS ÉTRANGERS
## TITRE 28 CODE DES ÉTATS-UNIS
### Sec. 1330, 1332(a), 1391(f) et 1601-1611
### et
### TITRE COURT DES MODIFICATIONS DE 1976 Pub. L. 94-583,

## TITRE 28

**Sec. 1330**. Poursuites contre les états étrangers

• (a) Les tribunaux fédéraux d'instance seront originalement compétents, quelle que soit la somme en dispute de toute action civile sans jury contre un état étranger tel que défini dans la section 1603(a) de ce titre en ce qui concerne toute réclamation de dédommagement en personne pour laquelle l'état étranger n'a pas droit à l'immunité en vertu des sections 1605-1607 de ce titre ou de tout accord international applicable.
• (b) La juridiction personnelle concernant un état étranger existera en ce qui concerne toute réclamation de dédommagement pour laquelle les tribunaux fédéraux d'instance sont compétents en vertu de la sous-section (a) lorsque la signification a été faite en vertu de la section 1608 de ce titre.
• (c) Aux fins de la sous-section (b), la comparution d'un état étranger n'accorde pas une juridiction personnelle en ce qui concerne toute réclamation de dédommagement ne provenant pas de toute transaction ou événement énuméré dans les sections 1605-1607 de ce titre.  -SOURCE-  (Pub. ajoutée L. 94-583, Sec. 2(a), 21 oct. 1976, 90 Stat. 2891). DATE D'ENTRÉE EN VIGUEUR  La section entrera en vigueur 90 jours après le 21 oct. 1976, consulter la section 8 de la Pub. L. 94-583, indiquée comme remarque dans la section 1602 de ce titre.

**Sec. 1332.** - Diversité de nationalité ; montant en dispute ; coûts

• (a) Les tribunaux fédéraux d'instance seront originalement compétents pour toutes les actions civiles où l'objet de la dispute dépasse la somme ou la valeur de 75 000 dollars, intérêts et frais de justice non compris, et la dispute est entre -
    • (1) des ressortissants de différents États ;
    • (2) des ressortissants d'un État et des ressortissants ou des sujets d'un état étranger ;
    • (3) des ressortissants de différents États, et dans laquelle des ressortissants ou des sujets d'un état étranger sont des parties supplémentaires ; et
    • (4) un état étranger, défini dans la section 1603(a) de ce titre, en tant que partie demanderesse, et des ressortissants d'un État ou de différents États.

Aux fins de cette section, de la section 1335 et de la section 1441, un étranger admis aux États-Unis en tant que permanent résident sera censé être ressortissant de l'État de résidence dudit étranger.
• (b) Sauf si une disposition explicite concernant ce qui suit existe dans un statut des États-Unis, lorsque la partie demanderesse qui intente les poursuites initiales auprès des tribunaux fédéraux est finalement jugée avoir droit à recouvrir moins que la somme ou la valeur de 75 000 dollars, calculée sans tenir compte de toute compensation ou demande reconventionnelle à laquelle la partie défenderesse peut être jugée avoir droit, et avec les intérêts et frais de justice non compris, le tribunal fédéral d'instance peut refuser l'octroi des frais de justice à la partie demanderesse et, en outre, peut imposer les frais de justice à la partie demanderesse.

• (c) Aux fins de cette section et de la section <u>1441</u> de ce titre -
   • (1) une société sera censée être ressortissante de tout État selon les lois duquel elle a été constituée et de l'État où est situé son lieu principal d'affaires, sauf que dans toute action directe contre l'assureur d'une police ou d'un contrat d'assurance responsabilité civile, qu'il soit constitué ou non constitué, action dans laquelle l'assuré n'est pas associé en tant que partie défenderesse, ledit assureur sera censé être ressortissant de l'État pour lequel l'assuré est un ressortissant, ainsi que de tout État selon les lois duquel l'assureur a été constitué, et de l'État où est situé son lieu principal d'affaires ; et
   • (2) le représentant légal de la succession d'une personne décédée sera seulement censé être ressortissant du même État que la personne décédée, et le représentant légal d'une personne mineure ou incompétente sera seulement censé être ressortissant du même État que la personne mineure ou incompétente.
• (d) Le mot « États », tel qu'utilisé dans cette section, inclut les Territoires, le District de Columbia et le Commonwealth de Porto Rico

**Sec. 1391**. Lieu général

• (f) Des poursuites civiles contre un état étranger tel que défini dans la section 1603(a) de ce titre peuvent être intentées –
   • (1) dans tout district juridique dans lequel une partie importante des événements ou des omissions ayant conduit à la réclamation s'est produite, ou une partie importante des biens qui sont l'objet de ces poursuites est située ;
   • (2) dans tout district juridique dans lequel le navire ou le cargo d'un état étranger est situé, si la réclamation est revendiquée en vertu de la section 1605(b) de ce titre ;
   • (3) dans tout district juridique dans lequel l'agence ou l'instrumentalité est autorisée à faire des affaires ou fait des affaires, si les poursuites sont intentées contre une agence ou une instrumentalité d'un état étranger tel que défini dans la section 1603(b) de ce titre ; ou
   • (4) dans le Tribunal fédéral d'instance des États-Unis pour le District de Columbia si les poursuites sont intentées contre un état étranger ou une subdivision politique de ce dernier.

**Section 1602.** Décisions et déclarations d'intention

Le Congrès décide que la détermination par les tribunaux des États-Unis concernant les revendications d'immunité des états étrangers contre la juridiction desdits tribunaux servirait l'intérêt de la justice et protègerait les droits des états étrangers et des parties plaidantes comparant auprès des tribunaux des États-Unis. Selon les lois internationales, les états ne sont pas exemptés de la juridiction des tribunaux étrangers dans la mesure où leurs activités commerciales sont concernées, et leurs biens commerciaux peuvent être saisis pour satisfaire aux jugements formulés contre eux et concernant leurs activités commerciales. Les revendications d'immunité des états étrangers devraient désormais être décidées par les tribunaux des États-Unis et des États conformément aux principes présentés dans ce chapitre.

**Sec. 1603.** Définitions

Aux fins de ce chapitre -

• (a) Un « état étranger », sauf tel qu'utilisé dans la section 1608 de ce titre, inclut une subdivision politique d'un état étranger ou une agence ou une instrumentalité d'un état étranger telles que définies dans la sous-section (b).

• (b) Une « agence ou instrumentalité d'un état étranger » signifie toute entité -
  • (1) qui est une personne morale séparée, constituée en société ou autre, et
  • (2) qui est un organe d'un état étranger ou d'une subdivision politique de ce dernier, ou dont la majorité des actions ou autre intérêt de participation est détenu par un état étranger ou une subdivision politique de ce dernier, et
  • (3) qui n'est pas ressortissante d'un État des États-Unis telle que définie dans les sections 1332 (c) et (d) de ce titre, ou qui n'est pas créée selon les lois de tout pays tiers.

• (c) Les « États-Unis » incluent tous les territoires et les eaux continentales ou insulaires sujets à la juridiction des États-Unis.

• (d) Une « activité commerciale » signifie une conduite commerciale régulière ou une transaction ou un acte commercial particulier. Le caractère commercial d'une activité sera déterminé par référence à la nature de la conduite ou de la transaction ou de l'acte particulier, plutôt que par référence à son objet.

• (e) Une « activité commerciale entreprise aux États-Unis par un état étranger » signifie une activité commerciale entreprise par ledit état et ayant un contact important aux États-Unis.

**Section 1604.** Immunité d'un état étranger contre la juridiction

Sous réserve des accords internationaux existants que les États-Unis ont signés au moment de la promulgation de cette Loi, un état étranger sera exempté de la juridiction des tribunaux des États-Unis et des États, sauf selon les dispositions des sections 1605 à 1607 de ce chapitre.

**Sec. 1605.** Exceptions générales à l'immunité juridictionnelle d'un état étranger

• (a) Un état étranger ne sera pas exempté de la juridiction des tribunaux des États-Unis ou des États dans toute affaire -
  • (1) dans laquelle l'état étranger a renoncé à son immunité explicitement ou par implication, nonobstant tout retrait de la renonciation que l'état étranger peut prétendre effectuer, sauf conformément aux conditions de la renonciation ;
  • (2) dans laquelle les poursuites sont basées sur une activité commerciale entreprise aux États-Unis par l'état étranger ; ou sur un acte entrepris aux États-Unis et associé à une activité commerciale de l'état étranger ailleurs ; ou sur un acte hors du territoire des États-Unis et associé à une activité commerciale de l'état étranger ailleurs si cet acte a un direct effet aux États-Unis ;

• (3) dans laquelle des droits de propriétés prises en violation des lois internationales sont contestés et ces propriétés ou toute propriété échangée contre lesdites propriétés sont présentes aux États-Unis, de concert avec une activité commerciale entreprise aux États-Unis par l'état étranger ; ou ces propriétés ou toute propriété échangée contre lesdites propriétés sont détenues ou exploitées par une agence ou instrumentalité de l'état étranger et cette agence ou instrumentalité est engagée dans une activité commerciale aux États-Unis ;

• (4) dans laquelle des droits de propriétés aux États-Unis acquises par héritage ou don ou des droits de propriétés immeubles situées aux États-Unis sont contestés ;

• (5) non incluse d'une autre façon dans le paragraphe (2) ci-dessus, dans laquelle des dédommagements monétaires sont demandés contre un état étranger pour blessure ou mort, ou dommage ou perte de biens, s'étant produit aux États-Unis et causé par l'action ou l'omission délictueuse de cet état étranger ou de tout officiel ou employé de cet état étranger agissant dans les limites de son office ou de son emploi ; sauf que ce paragraphe ne s'appliquera pas à –

• (A) toute réclamation basée sur l'exercice ou la mise en œuvre ou le manque d'exercer ou de mettre en œuvre une fonction discrétionnaire, que la discrétion ait été abusée ou non, ou

• (B) toute réclamation due à des poursuites malveillantes, un abus du processus, une diffamation, une calomnie, une déformation des faits, une fraude ou une interférence avec les droits contractuels ;

• (6) dans laquelle les poursuites sont intentées pour mettre en application un accord conclu entre l'état étranger et, ou pour le bénéfice de, une partie privée pour soumettre à un arbitrage toutes ou l'une quelconque des disputes qui ont eu lieu ou qui peuvent avoir lieu entre les parties et concernant une relation légale définie, contractuelle ou non, sur un sujet capable d'être réglé par arbitrage selon les lois des États-Unis, ou pour confirmer une sentence dans le cadre d'un tel accord d'arbitrage, si

• (A) l'arbitrage a lieu ou est conçu pour avoir lieu aux États-Unis,

• (B) l'accord ou la sentence est ou peut être régi par un traité ou autre accord international en vigueur aux États-Unis et exigeant la reconnaissance et la mise en application des sentences arbitrales,

• (C) la réclamation sous-jacente, sauf l'accord de soumettre à l'arbitrage, aurait pu être déposée auprès d'un tribunal des États-Unis en vertu de cette section ou de la section 1607, ou

• (D) le paragraphe (1) de cette sous-section est sinon applicable ; ou

•(7) pas autrement couverte par le paragraphe (2), dans laquelle des dédommagements monétaires sont demandés contre un état étranger pour blessure ou mort qui avait été causée par un acte de torture, un assassinat extrajudiciaire, un sabotage d'avion, une prise d'otage ou la fourniture d'un soutien ou de ressources matérielles (telle que définie dans la section 2339A du titre 18) pour un tel acte, si ledit acte ou ladite fourniture de soutien matériel est entrepris par un officiel, un employé ou un agent dudit état étranger, agissant dans les limites de son office, emploi ou agence, sauf que le tribunal se récusera pour les réclamations de ce paragraphe –

• (A) si l'état étranger n'était pas désigné comme état sponsor de terrorisme en vertu de la section 6(j) de la Loi sur l'administration des exportations de 1979 (50 U.S.C. App. 2405(j)) ou la section 620A de la Loi sur l'assistance étrangère de 1961 (22 U.S.C. 2371) au moment où l'acte s'est produit, sauf s'il est plus tard désigné comme tel du fait dudit acte ; et

• (B) même si l'état étranger est ou était désigné comme tel, si –

    • (i) l'acte s'est produit dans l'état étranger contre lequel la réclamation a été
    déposée et le réclamant n'a pas accordé à l'état étranger une opportunité raisonnable
    d'arbitrer la réclamation conformément aux règlements internationaux d'arbitrage
    reconnus ; ou
    • (ii) le réclamant ou la victime n'était pas un ressortissant des États-Unis
    (selon la définition dans la section 101(a)(22) de la Loi sur l'immigration et la
    nationalité) lorsque l'acte sur lequel la réclamation est basée s'est produit.
• (b) Un état étranger ne sera pas exempté de la juridiction des tribunaux des États-Unis dans toute
affaire où des poursuites en amirauté sont intentées pour mettre à exécution un privilège maritime
contre un navire ou un cargo de l'état étranger, lorsque ledit privilège maritime est basé sur une
activité commerciale de l'état étranger, sous réserve que –
    • (1) la notification du procès soit donnée par livraison d'une copie de la citation à
    comparaître et de la plainte à la personne, ou l'agent de la personne, détenant le navire ou le cargo
    contre lequel le privilège maritime est revendiqué ; et si le navire ou le cargo est immobilisé en
    vertu du processus obtenu au nom de la partie intentant les poursuites, la signification du processus
    d'immobilisation sera censée constituer une livraison valide de ladite notification, mais la partie
    intentant les poursuites sera tenue responsable pour tout dommage subi par l'état étranger du fait
    de l'immobilisation si la partie intentant les poursuites savait ou aurait dû savoir que le navire ou
    cargo d'un état étranger était impliqué ; et
    • (2) la notification à l'état étranger du commencement du procès telle que stipulée dans la
    section 1608 de ce titre soit engagée dans un délai de dix jours de la livraison de la notification
    stipulée au paragraphe (1) de cette sous-section ou, dans le cas d'une partie qui ne savait pas que
    le navire ou le cargo d'un état étranger était impliqué, de la date à laquelle ladite partie a déterminé
    l'existence de l'intérêt de l'état étranger.
• (c) Lorsque la notification est livrée selon la sous-section (b)(1), le procès pour mettre à exécution
un privilège maritime commencera par la suite et sera entendu et décidé conformément aux
principes juridiques et aux règles de pratique des procès in rem, lorsqu'il semble qu'un procès in
rem aurait pu être conduit si le navire avait été un bien privé. Un décret contre l'état étranger peut
inclure les frais de justice et, si le décret concerne un jugement monétaire, les intérêts tels
qu'ordonnés par le tribunal, sauf que le tribunal ne pourra pas prononcer une décision contre l'état
étranger d'une somme supérieure à la valeur du navire ou du cargo sur lequel le privilège maritime
a été demandé. Ladite valeur sera déterminée au moment où la notification est signifiée selon la
sous-section (b)(1). Les décrets seront sujets à des appels et des révisions tels que prévus dans les
autres affaires d'amirauté et de juridiction maritime. Rien n'empêchera la partie demanderesse de
demander un dédommagement in personam dans le cadre des mêmes poursuites intentées pour
mettre à exécution un privilège maritime tel que stipulé dans cette section.
• (d) Un état étranger ne sera pas exempté de la juridiction des tribunaux des États-Unis dans tout
procès intenté pour saisir un bien hypothéqué préférentiel, tel que défini dans la Loi sur les
hypothèques des navires, 1920 (46 U.S.C. 911 et suivants). Un tel procès sera intenté, entendu et
décidé conformément aux dispositions de cette Loi et conformément aux principes juridiques et aux
règles de pratique des procès in rem, lorsqu'il semble qu'un procès in rem aurait pu être conduit si
le navire avait été un bien privé.
• (e) Aux fins du paragraphe (7) de la sous-section (a) –
    • (1) les expressions « torture » et « assassinat extrajudiciaire » ont les significations
données à ces expressions dans la section 3 de la Loi sur la protection des victimes de la torture de
1991 ;

• (2) l'expression « prise d'otage » a la signification donnée à cette expression dans l'Article 1 de la Convention internationale contre la prise d'otage ; et

• (3) l'expression « sabotage d'avion » a la signification donnée à cette expression dans l'Article 1 de la Convention pour la répression des actes illicites contre la sécurité de l'aviation civile.

• (f) Aucune poursuite ne sera intentée selon la sous-section (a)(7) si la poursuite ne commence pas dans un délai de 10 ans après la date à laquelle la cause de la poursuite s'est produite. Tous les principes d'interruption équitable, y compris la période pendant laquelle l'état étranger était exempté de procès, seront applicables pour calculer cette période de limitation.

• (g) Limitation concernant la divulgation. –

• (1) De façon générale. –

• (A) Sous réserve du paragraphe (2), si des poursuites sont intentées en vertu de la sous-section (a)(7) alors qu'elles seraient sinon interdites par la section 1604, le tribunal, sur demande du Ministère de la justice, surseoira à toute demande, exigence ou ordre de divulgation imposé aux États-Unis, qui est certifié par le Ministre de la justice comme interférant de façon importante avec une investigation ou des poursuites criminelles, ou une opération concernant la sécurité nationale, associées à l'incident qui a donné lieu à la cause des poursuites, jusqu'à ce que le Ministre de la justice notifie le tribunal que ladite demande, ladite exigence ou ledit ordre n'interfère plus.

• (B) Une ordonnance à surseoir, selon ce paragraphe, sera en vigueur pendant la période de 12 mois commençant à la date à laquelle le tribunal lance l'ordre de surseoir à la divulgation. Le tribunal renouvellera l'ordre de surseoir à la divulgation pour des périodes supplémentaires de 12 mois sur requête des États-Unis si le Ministre de la justice certifie que cette divulgation interférerait de façon importante avec une investigation ou des poursuites criminelles, ou une opération concernant la sécurité nationale, associées à l'incident qui a donné lieu à la cause des poursuites.

• (2) Réévaluation régulière. –

• (A) Sous réserve du sous-paragraphe (B), aucune ordonnance à surseoir ne sera accordée ou maintenue en vigueur selon le paragraphe (1) après la date de 10 ans suivant la date à laquelle s'est produit l'incident qui a donné lieu à la cause des poursuites.

• (B) Après la période mentionnée dans le sous-paragraphe (A), le tribunal, sur demande du Ministre de la justice, peut surseoir à toute demande, exigence ou ordre de divulgation imposé aux États-Unis qui, selon le jugement du tribunal, pourrait très probablement –

• (i) créer une menace de mort ou de blessure grave pour une personne quelconque ;

• (ii) affecter négativement la capacité des États-Unis de travailler en collaboration avec les agences étrangères et internationales de mise en application des lois pour enquêter sur des violations des lois des États-Unis ; ou

• (iii) entraver l'affaire criminelle associée à l'incident qui avait donné lieu à la cause des poursuites ou réduire la possibilité d'obtenir une conviction dans une telle affaire.

• (3) Évaluation des preuves. - L'évaluation par le tribunal de toute demande à surseoir selon cette sous-section, déposée par le Ministère de la justice, sera conduite à la demande d'une partie seulement et à huis clos.

• (4) Interdiction des requêtes de classement. - Une ordonnance à surseoir la divulgation selon cette sous-section constituera une interdiction d'octroi de requête de classement selon les règles 12(b)(6) et 56 des Règles fédérales de procédure civile.

• (5) Interprétation. - Rien dans cette sous-section n'empêchera les États-Unis de demander des ordonnances de protection ou de revendiquer des privilèges ordinairement à la disposition des États-Unis.

**Section 1606.** Étendue de la responsabilité

En ce qui concerne toute demande de dédommagement dans laquelle un état étranger n'a pas droit à l'immunité selon la section 1605 ou 1607 de ce chapitre, l'état étranger sera responsable de la même façon et dans la même mesure que le serait une personne physique dans des circonstances similaires ; mais un état étranger, sauf une agence ou une instrumentalité de ce dernier, ne sera pas responsable pour des dommages punitifs, sauf en ce qui concerne toute poursuite intentée selon la section 1605(a)(7) ou 1610(f) ; toutefois, dans toute affaire où la mort a été causée, si les lois du lieu où l'action ou l'omission s'est produite stipulent, ou ont été interprétées comme stipulant, des dommages d'une nature uniquement punitive, l'état étranger sera responsable pour un dédommagement réel ou compensatoire déterminé par les dommages monétaires résultant de ladite mort et subis par les personnes au nom desquelles les poursuites ont été intentées.

**Section 1607.** Demandes reconventionnelles

Dans toute poursuite intentée par un état étranger, ou dans laquelle un état étranger intervient, auprès d'un tribunal des États-Unis ou d'un État, l'état étranger n'obtiendra pas immunité en ce qui concerne toute demande reconventionnelle
• (a) pour laquelle un état étranger n'aurait pas droit à l'immunité selon la section 1605 de ce chapitre si ladite demande avait été faite dans des poursuites séparées intentées contre l'état étranger ; ou
• (b) provoquée par la transaction ou l'événement qui est l'objet de la réclamation de l'état étranger ; ou
• (c) dans la mesure où la demande reconventionnelle ne concerne pas un dédommagement pour un montant dépassant, ou d'une nature différente de, celui demandé par l'état étranger.

**Sec. 1608.** Signification ; temps de réponse ; défaut

• (a) La signification dans les tribunaux des États-Unis et des États sera donnée à un état étranger ou une subdivision politique d'un état étranger :
    • (1) par livraison d'une copie de la citation à comparaître et de la plainte conformément à tout arrangement spécial de signification entre la partie demanderesse et l'état étranger ou la subdivision politique ; ou
    • (2) si aucun arrangement spécial n'existe, par livraison d'une copie de la citation à comparaître et de la plainte conformément à une convention internationale applicable concernant la signification des documents juridiques ; ou
    • (3) si la signification ne peut pas être faite selon les paragraphes (1) ou (2), en envoyant une copie de la citation à comparaître et de la plainte et une notification de procès, avec une traduction de chaque document dans la langue officielle de l'état étranger, par toute forme de courrier nécessitant un récépissé signé, adressé et envoyé par le greffe du tribunal au chef du ministère des affaires étrangères de l'état étranger concerné, ou
    • (4) si la signification ne peut pas être faite dans un délai de 30 jours selon le paragraphe (3), en envoyant deux copies de la citation à comparaître et de la plainte et une notification de procès, avec une traduction de chaque document dans la langue officielle de l'état étranger, par toute forme de courrier nécessitant un récépissé signé, adressé et envoyé par le greffe du tribunal au Ministre des affaires étrangères à Washington, District de Columbia, à l'attention du Directeur des services consulaires spéciaux - et le Secrétaire transmettra une copie des documents par voie diplomatique à l'état étranger et enverra au greffe du tribunal une copie certifiée conforme de la note diplomatique indiquant que les documents ont été transmis. Dans le sens de cette sous-

section, une « notification de procès » signifie une notification adressée à un état étranger dans un format prescrit par le Ministre des affaires étrangères par réglementation.

• (b) La signification dans les tribunaux des États-Unis et des États sera donnée à une agence ou une instrumentalité d'un état étranger :
        • (1) par livraison d'une copie de la citation à comparaître et de la plainte conformément à tout arrangement spécial de signification entre la partie demanderesse et l'agence ou l'instrumentalité ; ou
        • (2) si aucun arrangement spécial n'existe, par livraison d'une copie de la citation à comparaître et de la plainte à un officiel, un agent directeur ou général, ou tout autre agent autorisé par désignation ou par la loi à recevoir les significations juridiques aux États-Unis ; ou conformément à une convention internationale applicable concernant la signification des documents juridiques ; ou
        • (3) si la signification ne peut pas être faite selon les paragraphes (1) ou (2), et si cela est raisonnablement calculé pour fournir une notification réelle, par livraison d'une copie de la citation à comparaître et de la plainte, avec une traduction de chaque document dans la langue officielle de l'état étranger -
                • (A) de la façon indiquée par une autorité de l'état étranger ou de la subdivision politique en réponse à une lettre rogatoire ou une demande ou
                • (B) par toute forme de courrier nécessitant un récépissé signé, adressé et envoyé par le greffe du tribunal à l'agence ou à l'instrumentalité recevant signification, ou
                • (C) de la façon indiquée par un ordre du tribunal ne contrevenant pas aux lois du lieu où la signification doit être faite.

• (c) La signification sera censée avoir été faite -
        •(1) dans le cas d'une signification selon la sous-section (a)(4), à la date de transmission indiquée dans la copie certifiée conforme de la note diplomatique ; et
        • (2) dans tous les autres cas selon cette section, à la date du récépissé indiqué dans la certification, du récépissé postal signé et renvoyé, ou d'une autre preuve de signification applicable à la méthode de signification utilisée.

• (d) Dans toute poursuite intentée dans un tribunal des États-Unis ou d'un État, un état étranger, une subdivision politique de ce dernier, ou une agence ou instrumentalité d'un état étranger fournira signification d'une réponse ou autre plaidoyer de réponse à la plainte dans un délai de soixante jours après la date à laquelle la signification a été faite selon cette section.

• (e) Aucun jugement par défaut ne sera promulgué par un tribunal des États-Unis ou d'un État contre un état étranger, une subdivision politique de ce dernier, ou une agence ou instrumentalité d'un état étranger, si le réclamant n'a pas établi sa réclamation ou son droit de dédommagement par des preuves qui satisfont le tribunal. Une copie de tout jugement par défaut sera envoyée à l'état étranger ou la subdivision politique de la façon prescrite pour les significations selon cette section.

**Section 1609.** Immunité concernant la saisie et la saisie-exécution des biens d'un état étranger

Sous réserve des accords internationaux existants que les États-Unis avaient signés au moment de la promulgation de cette Loi, les biens aux États-Unis d'un état étranger seront exemptés d'arrêt de

saisie et de saisie-exécution, sauf comme stipulé dans les sections 1610 et 1611 de ce chapitre.

**Section 1610.** Exceptions de l'immunité de saisie ou de saisie-exécution

• (a) Les biens aux États-Unis d'un état étranger, tel que défini dans la section 1603(a) de ce chapitre, utilisés pour une activité commerciale aux États-Unis, ne seront pas exemptés de saisie pour aider à effectuer une saisie-exécution, ou de saisie-exécution, sur décision promulguée par un tribunal des États-Unis ou d'un État après la date d'entrée en vigueur de cette Loi, si

    • (1) l'état étranger a renoncé à son immunité contre la saisie pour aider à effectuer une saisie-exécution, ou contre la saisie-exécution, explicitement ou par implication, nonobstant tout retrait de la renonciation que l'état étranger peut prétendre effectuer, sauf conformément aux conditions de la renonciation, ou

    • (2) les biens sont ou étaient utilisés pour une activité commerciale sur laquelle la réclamation est basée, ou

    • (3) la saisie-exécution est associée à une décision établissant des droits de propriété qui avaient été exercés en violation des lois internationales, ou

    • (4) la saisie-exécution est associée à une décision établissant des droits dans une propriété –

        • (A) qui est acquise par héritage ou par don, ou

        • (B) qui est immeuble et située aux États-Unis : À condition que ladite propriété ne soit pas utilisée aux fins de maintenir une mission diplomatique ou consulaire ou la résidence du Chef de cette mission, ou

    • (5) la propriété se compose de toute obligation contractuelle ou tout bénéfice de ladite obligation contractuelle pour indemniser ou dégager de toute responsabilité l'état étranger ou ses employés dans le cadre d'une police d'assurance automobile ou autre assurance responsabilité civile ou assurance contre les accidents couvrant la réclamation qui a été intégrée à la décision, ou

    • (6) la décision est basée sur une ordonnance confirmant une sentence arbitrale contre l'état étranger, à condition que la saisie pour aider à effectuer la saisie-exécution, ou la saisie-exécution, ne soit pas contraire à toute disposition de la sentence arbitrale, ou

    • (7) la décision concerne une réclamation pour laquelle l'état étranger n'est pas exempté selon la section 1605(a)(7), que la propriété ait été ou non concernée par l'action sur laquelle la réclamation est basée.

• (b) En plus de la sous-section (a), tout bien aux États-Unis d'une agence ou instrumentalité d'un état étranger engagé dans une activité commerciale aux États-Unis ne sera pas exempté de saisie pour aider à effectuer une saisie-exécution, ou de saisie-exécution, sur décision promulguée par un tribunal des États-Unis ou d'un État après la date d'entrée en vigueur de cette Loi, si

    • (1) l'agence ou instrumentalité a renoncé à son immunité de saisie pour aider à effectuer la saisie-exécution, ou de saisie-exécution, explicitement ou implicitement, nonobstant tout retrait de la renonciation que l'agence ou l'instrumentalité peut prétendre effectuer, sauf conformément aux conditions de la renonciation, ou

    • (2) la décision concerne une réclamation pour laquelle l'agence ou instrumentalité n'est pas exemptée en vertu de la section 1605(a)(2), (3), (5) ou (7) ou 1605(b) de ce chapitre, que la propriété ait été ou non impliquée dans l'action sur laquelle la réclamation est basée.

• (c) Aucune saisie ou saisie-exécution mentionnée dans les sous-sections (a) et (b) de cette section ne sera autorisée tant que le tribunal n'ordonne pas une telle saisie ou saisie-exécution après avoir déterminé qu'une période de temps raisonnable s'est écoulée depuis l'enregistrement de la décision et la notification requise selon la section 1608(e) de ce chapitre.

• (d) Les biens d'un état étranger, tel que défini dans la section 1603(a) de ce chapitre, utilisés pour une activité commerciale aux États-Unis, ne seront pas exemptés de saisie avant l'enregistrement d'une décision dans toute poursuite intentée dans un tribunal des États-Unis ou d'un État, ou avant la fin de la période de temps stipulée dans la sous-section (c) de cette section, si

> • (1) l'état étranger a explicitement renoncé à son immunité contre la saisie avant la décision, nonobstant tout retrait de la renonciation que l'état étranger peut prétendre effectuer, sauf conformément aux conditions de la renonciation, et

> • (2) l'objet de la saisie est d'assurer la satisfaction d'une décision qui a été ou qui peut être finalement enregistrée contre l'état étranger, et n'est pas d'obtenir juridiction.

• (e) Les navires d'un état étranger ne seront pas exemptés d'un arrêt in rem, d'une vente préjudicielle et d'une saisie-exécution dans des poursuites intentées pour saisir un bien hypothéqué préférentiel comme stipulé dans la section 1605(d).

• (f)    • (1)    • (A) Nonobstant toute autre disposition de la loi, y compris, mais sans limitation, la section 208(f) de la Loi sur les missions étrangères (22 U.S.C. 4308(f)), et sauf comme stipulé dans le sous-paragraphe (B), tout bien pour lequel les transactions financières sont interdites ou réglementées en vertu de la section 5(b) de la Loi sur le commerce avec l'ennemi (50 U.S.C. App. 5(b)), la section 620(a) de la Loi sur l'assistance étrangère de 1961 (22 U.S.C. 2370(a)), les sections 202 et 203 de la Loi sur les pouvoirs économiques internationaux d'urgence (50 U.S.C. 1701-1702), ou toute autre proclamation, ordonnance, réglementation ou autorisation fournie en vertu de celles-ci, sera sujet à la saisie-exécution ou la saisie pour aider à effectuer la saisie-exécution de toute décision concernant une réclamation pour laquelle un état étranger (y compris toute agence ou instrumentalité d'un tel état) revendiquant ledit bien n'est pas exempté selon la section 1605(a)(7).

> • (B) Le sous-paragraphe (A) ne sera pas applicable si, au moment où la propriété est expropriée ou saisie par l'état étranger, le droit de la propriété est détenu par une personne physique ou, s'il est détenu en fidéicommis, est détenu pour le bénéfice d'une ou plusieurs personnes physiques.

> • (2)    • (A) Sur demande de toute partie en faveur de laquelle une décision a été promulguée en ce qui concerne une réclamation pour laquelle l'état étranger n'est pas exempté selon la section 1605(a)(7), le Ministère du trésor et le Ministère des affaires étrangères assisteront complètement, promptement et efficacement tout créditeur par décision ou tout tribunal qui a promulgué toute décision de ce type pour identifier, localiser et saisir les biens de cet état étranger ou de toute agence ou instrumentalité dudit état.

> • (B) En fournissant une telle assistance, les Ministres - (i) peuvent fournir ces informations au tribunal sous scellé ; et (ii) fourniront les informations d'une façon adéquate pour permettre au tribunal d'ordonner au bureau du Commissaire de la police fédérale des États-Unis de saisir promptement et efficacement lesdits biens.

.

## Section 1611. Certains types de propriété exemptés de saisie-exécution

• (a) Nonobstant les dispositions de la section 1610 de ce chapitre, les biens des organismes désignés par le Président comme ayant droit à bénéficier des privilèges, exemptions et immunités stipulées par la Loi sur les immunités des organismes internationaux ne seront pas sujets à la saisie ou à toute autre procédure juridique faisant obstacle à la distribution des fonds à, ou à l'ordre de, un état étranger à cause de poursuites intentées dans les tribunaux des États-Unis ou des États.

• (b) Nonobstant les dispositions de la section 1610 de ce chapitre, les biens d'un état étranger seront exemptés de saisie et de saisie-exécution si - (1) les biens appartiennent à une banque

centrale ou une autorité monétaire étrangère et sont détenus pour son propre compte, à moins que ladite banque ou autorité, ou son gouvernement étranger de tutelle, ait renoncé explicitement à son immunité contre la saisie pour aider à effectuer la saisie-exécution, ou contre la saisie-exécution, nonobstant tout retrait de la renonciation que la banque, l'autorité ou le gouvernement peut prétendre effectuer, sauf conformément aux conditions de la renonciation ; ou (2) les biens sont, ou sont prévus pour être, utilisés en rapport avec une activité militaire et (A) sont d'une nature militaire, ou (B) sont sous le contrôle d'une autorité militaire ou une agence de défense.
• (c) Nonobstant les dispositions de la section 1610 de ce chapitre, les biens d'un état étranger seront exemptés de saisie et de saisie-exécution dans des poursuites intentées selon la section 302 de la Loi LIBERTAD (liberté cubaine et solidarité démocratique) de 1996 dans la mesure où les biens sont des installations ou des immeubles utilisés par une mission diplomatique accréditée dans un but officiel.

------------------

## TITRE COURT DES MODIFICATIONS DE 1976 Pub. L. 94-583
La **Section 1**, 21 oct. 1976, 90 Stat. 2891, stipulait : « Que cette Loi (promulguant les sections 1330 et 1602 à 1611 de ce titre, modifiant les sections 1332, 1391 et 1441 de ce titre, et promulguant les dispositions présentées en tant que notes selon la section 1602 de ce titre) peut être mentionnée comme la « Loi sur les immunités des souverains étrangers de 1976 ». SOURCE ajoutée Pub. L. 94-583, Sec. 4(a), 21 oct. 1976, 90 Stat. 2892.

## SÉPARABILITÉ
La **Section 7** of Pub. L. 94-583 stipulait que : « Si une disposition quelconque de cette Loi (promulguant ce chapitre et la section 1330 de ce titre, modifiant les sections 1332, 1391, et 1441 de ce titre, et promulguant les dispositions présentées en tant que notes selon cette section et la section 1 de ce titre) ou son application à tout état étranger est considérée non valide, la non-validité n'affecte pas les autres dispositions ou applications de la Loi qui peuvent être exécutées sans la disposition ou l'application non valide, et à cette fin les dispositions de cette Loi sont séparables ».

## DATE D'ENTRÉE EN VIGUEUR
La **Section 8** of Pub. L. 94-583 stipulait que : « Cette Loi (promulguant ce chapitre et la section 1330 de ce titre, modifiant les sections 1332, 1391, et 1441 de ce titre, et promulguant les dispositions présentées en tant que notes selon cette section et la section 1 de ce titre) entrera en vigueur quatre-vingt dix jours après la date de sa promulgation (21 oct. 1976) ».

## TITRE COURT
Pour le titre court de la Pub. L. 94-583 en tant que « Loi sur les immunités des souverains étrangers de 1976 », consulter la section 1 de Pub. L. 94-583, présentée comme note de titre court des modifications de 1976 selon la section 1 de ce titre.

AO 440 (Rév. 12/09) Citation à comparaître dans une action civile

# TRIBUNAL D'INSTANCE DES ÉTATS-UNIS
pour le
District Sud du Texas

Jeffrey Walter, une personne physique  )
————————————————————  )
*Le plaignant*  )
 )
c/  )
La Ville de Paris, une commune  )
municipale de France  )
 )
————————————————————  )
*Le défendeur*

Action civile n° 09-3939

## CITATION À COMPARAÎTRE DANS UNE ACTION CIVILE

À l'attention de : *(Nom et adresse du défendeur)*     Ville de Paris
4, Place de l'Hôtel de Ville
75004 Paris
France

Une action en justice est intentée contre vous.

Dans un délai de 21 jours suivant la signification de la présente citation à comparaître (le jour de signification non inclus) – ou 60 jours si vous êtes les États-Unis ou une agence des États-Unis, ou un fonctionnaire ou un employé des États-Unis décrit en Règle fédérale de procédure civile 12 (a) (2) ou (3) - vous êtes tenu de signifier au plaignant une réponse à la plainte en annexe ou une requête en vertu de la Règle 12 des Règles fédérales de procédure civile. La réponse ou la requête doit être signifiée au plaignant ou à l'avocat du plaignant dont le nom et l'adresse figurent ci-dessous :

Si vous négligez de vous y conformer, un jugement par défaut sera rendu à votre encontre pour les mesures réparatoires demandées dans la plainte. Vous êtes également tenu de déposer votre réponse ou votre requête auprès du tribunal.

Date : 02 février 2010

Greffier du tribunal    DAVID J. BRADLEY
*/s/ [Signature manuscrite illisible]*
Signature du greffier ou du greffier adjoint

LE TRIBUNAL FÉDÉRAL D'INSTANCE DES ÉTATS-UNIS
POUR LE DISTRICT SUD DU TEXAS
DIVISION DE HOUSTON

| | | |
|---|---|---|
| Jeffrey Walter | § | |
| Une personne physique | § | |
| Le plaignant | § | |
| | § | Affaire civile n° 09-3939 |
| c/ | § | |
| | § | |
| Ville de Paris | § | |
| Une commune municipal de France, | § | |
| Le défendeur | § | |

## PLAINTE EN VERTU DU CODE DES ÉTATS-UNIS (USC) TITRE 15, SECTION 1142(2)(d)(iv)-(v) ET POUR JUGEMENT DÉCLARATOIRE EN VERTU DU LANDHAM ACT, INGÉRENCE DÉLICTUELLE SUR CONTRAT ET AVANTAGE ÉCONOMIQUE, ET CONVERSION

Le plaignant Jeffrey Walter dépose la présente plainte originale à l'encontre du défendeur, la Ville de Paris et à l'appui de ladite plainte avance ce qui suit :

## I. NATURE DE L'AFFAIRE

1. Ce tribunal est saisi en vertu du titre 15 U.S.C. § 1114(2)(D)(iv)-(v) et pour jugement déclaratoire en vertu du Titre 28 U.S.C. § 2201 afin de démontrer que l'enregistrement du plaignant et son utilisation du nom de domaine Internet <parvi.org> (le « Nom de Domaine ») est illégal en vertu de l'Anticybersquatting Consumer Protection Act[1] (Titre 15 U.S.C. § 1125(d) (« ACPA ») ou autrement en vertu du Lanham Act[2] (Titre 15 U.S.C. § 1051, et suivants), (1) pour empêcher le transfert du Nom de Domaine au défendeur, qui a été ordonné par décision d'une commission administrative émise le 7 avril 2009, en vertu de la charte de résolution de conflits relatifs aux noms de domaine, *Uniform Domain Name Dispute Policy* (« UDRP ») dans une instance intitulée : *Ville de Paris c/ Jeff Walter,* Affaire OMPI n° D2009-1278 (19 novembre

---

[1] Note du traducteur : Loi américaine créant un recours civil contre les enregistrements et les utilisations abusives de noms de domaine identiques ou prêtant à confusion.
[2] Note du traducteur : Loi américaine relative aux droits des marques aux États-Unis.

2009), (2) pour démontrer que la procédure de l'UDRP entreprise, et la décision de la commission qui en a résulté, dans l'instance administrative ci-dessus, enfreignaient les droits contractuels du plaignant ; (3) et pour obtenir les honoraires d'avocats, les coûts et les dommages-intérêts énoncés dans les présentes.

## II. JURIDICTION ET LIEU DU PROCÈS

2.   Ce tribunal dispose d'un pouvoir de juridiction judiciaire dans l'affaire en cause en vertu du Titre 28 U.S.C. § 1331 car cette cause survient en vertu du Titre 15 U.S.C. § 1114 du fait que le plaignant est le registrant d'un nom de domaine qui a été retiré, mis hors service ou transféré en vertu d'une politique fournie par le registraire de noms de domaine dudit nom de domaine par suite d'un conflit allégué avec une marque de service ou de commerce revendiquée par le défendeur.

3.   Ce tribunal dispose d'un pouvoir de juridiction personnelle sur le défendeur car le défendeur a expressément et volontairement consenti à se soumettre à la juridiction de ce tribunal lorsqu'il a initié une instance administrative en vertu de l'UDRP concernant le Nom de Domaine. Plus précisément, le défendeur a volontairement et expressément consenti dans sa plainte de l'UDRP (la « Plainte de l'UDRP ») à se soumettre à la juridiction du registraire par rapport à toute action légale qui se rapporterait d'une quelconque façon à la procédure de l'UDRP. L'adresse du registraire GKG.Net Inc. est énoncée comme étant PO Box 1450, Bryan, TX 77806.

4.   En préparant et en déposant la plainte dans le cadre de la procédure de l'UDRP ci-dessus, le plaignant a spécifiquement admis :

103120.1

VIII.       Juridiction mutuelle
(Règle, paragraphe 3(b) (xiii))

[14.] Conformément au Paragraphe 3(b)(xiii) des Règles, le plaignant se soumettra, en ce qui concerne toute contestation qui pourrait être initiée par le défendeur sur une décision de la commission administrative de transférer le nom de domaine qui est l'objet de la présente plainte, à la juridiction des tribunaux du lieu du siège du registraire concerné.

5.   Le défendeur a dirigé les activités vers ce district judiciaire avec l'intention de priver le plaignant de droits en vertu d'un contrat dont le situs se trouve dans ce district judiciaire.

6.   Le lieu du procès est approprié dans ce tribunal en vertu du Titre 28 U.S.C. § 1391(b)(1) et (2).

## III. PARTIES

7.   Le plaignant Jeffrey Walter est une personne physique résidant à Fremont, en Californie.

8.   Au moment où la Plainte de l'UDRP a été déposée, le Nom de Domaine était enregistré par le plaignant auprès de GKG.Net Inc., registraire de noms de domaine dont le siège se trouve en l'État du Texas, dans le Comté de Brazos.

9.   Les termes de l'accord d'enregistrement en vertu duquel le Nom de Domaine a été enregistré spécifient que l'interprétation de l'accord d'enregistrement et tout conflit survenant de celui-ci seront régis par les lois de l'État du Texas.

103120.1

10. Les termes de l'accord d'enregistrement en vertu duquel le Nom de Domaine a été enregistré comportent une clause relative à la juridiction et au lieu du procès qui spécifie en Section 7 que la juridiction et le lieu du procès relatifs à un conflit portant sur le Nom de Domaine relèveront de la compétence du « Tribunal Fédéral d'Instance des États-Unis pour le District Sud du Texas, ou s'il n'existe pas de juridiction dans ledit tribunal, un tribunal d'État du Comté de Brazos, au Texas, en sera alors saisi. »

11. Selon des renseignements tenus pour véridiques, le défendeur Ville de Paris est représenté par des fonctionnaires du gouvernement qui occupent un bureau d'affaires sis 4 Place de l'Hôtel de Ville, Paris, France. Il sera demandé au défendeur d'accepter la signification de la plainte, en conséquence aucune citation actuellement n'est exigée.

## IV. LES FAITS

12.    Le défendeur est un professionnel des systèmes de réseaux informatiques résidant en Californie. Durant ses moments de loisirs, le plaignant développe des logiciels libres et assiste d'autres personnes dans le développement de sites Internet. Le plaignant a enregistré des noms de domaines qu'il maintient à titre d'amateur, tels que SeanAndMaryCampbell.com et ClubBeyondAnsbach pour une mission chrétienne à l'attention de la jeunesse gérée par des amis, Sean et Mary Campbell de Ansbach, en Allemagne ; TheWalterFamily.com, pour offrir des services d'emails au sein de leur famille ; HELunch.com pour offrir un système de commande de déjeuners au lieu de travail de son employeur, Hurricane Electric ; et pour d'autres hobbies et activités à titre d'amateur.

103120.1

13.  En 2006, le plaignant songeait à créer un site Internet de réseau social en ligne pour son usage personnel ainsi que celui de certaines relations et se mit à chercher un nom pour ledit site.

14.  Dans le cadre du processus de sélection du nom, le plaignant a obtenu une traduction latine générée par ordinateur d'une phrase-source d'inspiration émanant d'un personnage de science fiction nommé « Omar de Sala » de la franchise « Stargate » de MGM :

> L'univers est vaste et nous sommes si petits. La seule chose que nous pouvons vraiment toujours contrôler : être bons ou mauvais.

15.  La traduction reçue par le défendeur d'un service en ligne appelé le « Service de traduction latine de Quintus » s'énonce comme suit :

> « Universum ingens est et nos tam parvi sumus. Est una sola res quam umquam vere regere possumus, utrum boni simus an mali. »

16.  En approfondissant cette traduction, le plaignant a raisonnablement été poussé à penser que le mot « parvi » était le masculin pluriel en latin du mot « petit » que le plaignant a choisi comme saisissant sa citation-source d'inspiration en un seul mot.

17.  Aux environs du 1er juin 2006, le plaignant a conclu un contrat d'enregistrement avec GoDaddy.com de Scottsdale, en Arizona, afin de faire inscrire le nom de domaine Internet PARVI.ORG au registre.com et de le faire maintenir par le celui-ci au profit du plaignant.

18.  En septembre 2006, le défendeur a écrit au plaignant en revendiquant qu'il détenait en France des enregistrements de marques de commerce pour des marchandises et des services présumés fournis au sein de la municipalité de Paris, en France. Les enregistrements de

marques de commerce françaises revendiquées consistaient en des représentations composées et

figurées de « PARVI PARIS VILLE NUMERIQUE » et « PARVI ». Selon des renseignements

tenus pour véridiques, l'enregistrement de la marque de commerce française pour « PARVI »

spécifie les marchandises et les services suivants : « *Communication par terminaux* d'ordinateurs

(Internet) », et l'on croît qu'ils se rapportent à des activités présumées d'un programme

municipal d'accès à l'Internet dans la ville de Paris, en France. Le défendeur a exigé du plaignant

qu'il transfère le Nom de Domaine au défendeur.

19.    Préalablement à ladite correspondance, le plaignant n'avait jamais eu

connaissance des revendications du défendeur quant aux enregistrements présumés de marques

de commerce françaises. Le Plaignant n'était jamais allé en France, n'exerçait aucune activité

commerciale en France et ne parle pas français.

20.    Selon des renseignements tenus pour véridiques, le défendeur n'exerce aucune

activité commerciale aux États-Unis qui aurait un rapport avec toute marchandise ou service en

vertu des marques revendiquées « PARVI VILLE NUMERIQUE » ou « PARVI ».

21.    Selon des renseignements tenus pour véridiques, les services du défendeur, le

cas échéant, en vertu des marques revendiquées, sont entièrement fournis au sein de la

municipalité de Paris, en France.

22.    En réponse à la communication du défendeur, le plaignant a informé le

défendeur qu'il n'exerçait aucune activité en France et qu'il projetait de fournir un service de

réseau social aux États-Unis.

23.    En novembre 2007, le défendeur a répondu qu'il « avait compris que

l'enregistrement de vous [sic] nom de domaine « parvi.org » avait été fait

sans intention de causer une quelconque confusion. » Le défendeur a proposé au plaignant de

placé un dégagement de responsabilité sur tout site Internet utilisant le Nom de Domaine. Le

plaignant a proposé des dégagements de responsabilité mutuels sur les sites Internet respectifs et

le défendeur n'a plus répondu.

      24.    Préalablement à l'enregistrement du Nom de Domaine, le plaignant avait obtenu

un Serveur Sun COBALT, produit épuisé de Sun Microsystems, Inc. Dans le cadre de ses loisirs,

le plaignant a commencé de développer des logiciels libres destinés à être utilisés dans le cadre

d'opérations de maintien des serveurs de Sun COBALT.

      25.    Au milieu de l'année 2007, le plaignant a déterminé que d'autres services de

réseau social en ligne étaient duplicatifs de son utilisation prévue du Nom de Domaine et que,

plutôt que de créer son site personnel prévu de réseau social à petite échelle, le plaignant a décidé

d'utiliser le Nom de Domaine pour un site Internet afin de publier son logiciel libre de serveurs

Sun COBALT, de fournir des instructions d'utilisation, de fournir un  mécanisme pour

commentaires et améliorations du logiciel et pour offrir des discussions et l'accès à d'autres

projets de loisirs du plaignant.

      26.    Le plaignant avait des raisons de croire que le nom de domaine « Parvi.org »

était bien adapté à son projet de logiciels libres car il était supposé être limité (petit) en étendu et

l'extension du nom de domaine « .org » était appropriée à son désir d'offrir gratuitement son

logiciel original.

27.   À tous moments de l'exploitation de son site Internet à Parvi.org, le site est demeuré de petite taille et d'étendue limitée.

28.   À tous moments de l'exploitation de son site Internet à Parvi.org, le plaignant a offert gratuitement son logiciel, ses instructions et ses commentaires sur le site Internet correspondant au Nom de Domaine, à partir du milieu de l'année 2007.

29.   En milieu d'année 2008, le plaignant a décidé de transférer l'enregistrement du Nom de Domaine de GoDaddy à la direction du registraire de noms de domaine Internet GKG.Net de Bryan, Texas. Le plaignant a organisé le transfert des services d'enregistrement et a conclu un contrat avec GKG.Net pour le maintien de l'enregistrement du Nom de Domaine. Le plaignant a transféré le nom de domaine au registraire GKG.Net Inc. car le nouveau registraire offrait un support pour un protocole Internet avancé que le plaignant désirait utiliser.

30.   Le contrat d'enregistrement du domaine (le « Contrat ») entre GKG.Net Inc. et le plaignant pour l'enregistrement du Nom de Domaine stipule :

### 6.   Arbitrage des conflits

Dans l'éventualité d'un arbitrage de conflits concernant ou survenant de l'utilisation des services pour lesquels vous avez conclu une entente, vous soumettrez, sous réserve d'autres   éventuelles juridictions applicables, à la juridiction des tribunaux (1) du lieu de GKG, et (2) du lieu de votre domicile.

### 7.   Loi et lieu du procès applicables

À moins d'une disposition contraire énoncée en Section 6 ci-dessus ou dans la politique des conflits, en ce qui concerne les conflits, le présent accord, vos droits et

obligations et toutes actions considérées par le présent accord seront régis par les lois des États-Unis d'Amérique et l'État du Texas, comme si l'accord était un contrat entièrement conclu et entièrement rempli dans l'État du Texas. À moins d'une disposition contraire énoncée en Section 6 ci-dessus ou dans la politique des conflits, en ce qui concerne des conflits concernant les domaines, toute action visant à mettre en application le présent accord ou toute affaire relative à votre utilisation du site de GKG sera exclusivement traduite devant Tribunal Fédéral d'Instance des États-Unis pour le District Sud du Texas, ou s'il n'existe pas de juridiction dans ledit tribunal, un tribunal d'État du Comté de Brazos, au Texas, en sera alors saisi. »

31.    Le contrat incorpore l'UDRP à titre de « Politique de conflits », par lequel un tiers peut demander le transfert des droits en vertu dudit contrat audit tiers sur la base d'une revendication de droits de marque de commerce ou de service.

32.    Par suite de l'incorporation, l'UDRP est intégrée à l'accord d'enregistrement dont le plaignant est une partie.

33.    Le plaignant n'est pas libre de négocier le contrat d'enregistrement et/ou de modifier ou d'éliminer un quelconque aspect de l'UDRP en tant que partie de l'accord d'enregistrement.

34.    Si le plaignant, ou d'ailleurs une quelconque autre personne, souhaite un nom de domaine, il doit consentir aux conditions de l'accord d'enregistrement qui, dans tous les cas, incorpore l'UDRP.

35.    L'UDRP est une instance administrative obligatoire qui stipule, dans la partie concernée :

« k. **Possibilité d'engager des poursuites judiciaires.** Les prescriptions en matière de procédure administrative obligatoire édictées au paragraphe 4 ne vous empêcheront pas, vous ou le plaignant, de soumettre le litige à un tribunal d'une

103120.1

juridiction compétente pour règlement indépendant avant que ladite procédure administrative obligatoire ne soit lancée ou après sa conclusion. Si une commission administrative décide que l'enregistrement de votre nom de domaine doit être annulé ou transféré, nous attendrons dix (10) jours ouvrables (selon la politique observée sur le lieu de votre siège social) après avoir été informés par le prestataire concerné de la décision de la commission administrative avant d'appliquer cette décision. Nous appliquerons alors la décision, sauf si nous avons reçu de votre part au cours de cette période de dix (10) jours ouvrables des documents officiels (tels qu'une copie d'une plainte portant le cachet d'enregistrement du greffier) attestant que vous avez entamé une action en justice à l'encontre du plaignant dans une juridiction à laquelle le plaignant s'est soumis aux termes du paragraphe 3(b)(xiii) des règles de procédure. (En général, cette juridiction est soit le lieu de notre siège social ou le lieu correspondant à votre adresse telle qu'elle apparaît dans la base de données Whois. Voir les paragraphes 1 et 3(b)(xiii) des règles de procédure pour plus de détails.) Si nous recevons ces documents dans les limites de la période de dix (10) jours ouvrables, nous n'appliquerons pas la décision de la commission administrative et nous ne prendrons aucune autre mesure jusqu'à ce que nous ayons reçu (i) une preuve satisfaisante à nos yeux d'un règlement entre les parties ; (ii) une preuve satisfaisante à nos yeux que vous avez été débouté de votre action en justice ; ou (iii) une copie d'une ordonnance de ce tribunal vous déboutant de votre action en justice ou stipulant que vous n'avez plus le droit d'utiliser votre nom de domaine.»»

36.    En juillet 2009, le défendeur a de nouveau écrit au plaignant semblant ignorer sa correspondance précédente et demandant encore le transfert du Nom de Domaine. Le plaignant répondit en déclarant à nouveau que le Nom de Domaine était utilisé pour des logiciels libres développés par le plaignant et que le plaignant n'exerçait aucune activité en France, que le plaignant n'enfreignait pas la loi française et que le défendeur n'avait aucun droit apparent aux États-Unis.

# V. LA PROCÉDURE DE L'UDRP

37.   Aux environs du 25 septembre 2009, le défendeur a déposé une Plainte de l'UDRP remettant en cause l'enregistrement du Nom de Domaine du plaignant. Dans la plainte de l'UDRP, le défendeur s'en remettait à la compétence de ce tribunal, comme cité précédemment.

38.   Dans la procédure de l'UDRP, le défendeur n'a présenté aucune preuve démontrant que le plaignant avait enregistré le Nom de Domaine avec un souci pour le droit du défendeur ou que le plaignant avait une intention de mauvaise foi de profiter des droits revendiqués par le défendeur en France.

39.   Dans la procédure de l'UDRP, le défendeur n'a présenté aucune preuve démontrant que le plaignant avait utilisé le Nom de Domaine avec l'intention de profiter de la marque de commerce du défendeur.

40.   Dans la procédure de l'UDRP, le défendeur n'a présenté aucune preuve démontrant que le plaignant avait fait la promotion de marchandises et de services ayant une relation avec le défendeur ou que le plaignant avait eu l'intention de semer la confusion chez les consommateurs qui cherchaient le défendeur.

41.   Dans la procédure de l'UDRP, le défendeur n'a présenté aucune preuve démontrant que des consommateurs avaient effectivement subi une confusion.

42.   Dans la procédure de l'UDRP, le défendeur n'a présenté aucune preuve démontrant que le plaignant avait tenté de vendre le Nom de Domaine au défendeur.

43.   Bien que le plaignant ait préalablement admis qu'il n'avait pas enregistré le Nom de Domaine avec l'intention de semer la confusion, le défendeur a injustement prétendu

103120.1

que le plaignant avait enregistré et utilisé le Nom de Domaine en faisant preuve de mauvaise foi,

en se fondant sur les marques de commerce et les marques de service présumées du défendeur en

France.

44.   Malgré les marques figuratives et complexes apparaissant sur les

enregistrements des marques françaises du défendeur, le défendeur a injustement prétendu que le

Nom de Domaine était identique ou similaire à s'y méprendre auxdites désignations figuratives

et complexes.

45.   Le 19 novembre 2009, un membre de la commission de l'UDRP nommé par

l'Organisation mondiale de la propriété intellectuelle (OMPI) a émis une décision ordonnant le

transfert de l'enregistrement du Nom de Domaine au défendeur.

46.   En sa décision, le membre de la commission de l'UDRP n'a pas tenu compte

des preuves d'enregistrement et d'utilisation du Nom de Domaine de bonne foi du plaignant et,

malgré l'absence d'un quelconque élément de preuve soutenant une conclusion de la mauvaise

foi du plaignant.

47.   En sa décision, le membre de la commission de l'UDRP n'a pas tenu compte

des conditions de l'UDRP, incorporée au contrat d'enregistrement du nom de domaine du

plaignant, lesquelles exigent du défendeur qu'il montre que le nom de domaine a été « enregistré

**et** utilisé de mauvaise foi. » Au lieu de cela, sur la demande du défendeur, le membre de la

commission de l'UDRP a été entraîné à mal interpréter  l'UDRP comme exigeant que le nom de

domaine ait été « enregistré **ou** utilisé de mauvaise foi. »

48.   Préalablement à la décision de l'UDRP, le membre de la commission nommé

par l'OMPI avait déclaré une intention de ré-interpréter l'UDRP comme n'exigeant pas qu'un

plaignant prouve qu'un nom de domaine était « enregistré **et** utilisé de mauvaise foi » mais de

définir ladite condition comme exigeant qu'un plaignant prouve qu'un nom de domaine était « enregistré **ou** utilisé de mauvaise foi. »

49. En conséquence, malgré l'admission préalable par le défendeur du fait que le Nom de Domaine n'avait pas été enregistré dans l'intention de semer la confusion parmi les consommateurs, le membre de la commission a ordonné le transfert du nom de domaine sur la base de l'activité présumée « de mauvaise foi » postérieure à l'enregistrement qui n'a pas été prouvée, dans le but de favoriser la réinterprétation prévue de l'UDRP par le membre de la commission aux fins d'inclure « enregistrement **ou** utilisation de mauvaise foi. »

### VI. PREMIÈRE CAUSE D'ACTION
### REVERSE DOMAIN HI-JACKING[3] EN VERTU
### DU TITRE 15 U.S.C. § 1114(2)(D)(IV)-(V)

50. Le plaignant incorpore les allégations contenues en paragraphes 1 à 49 des présentes.

51. Le Nom de Domaine du plaignant a été verrouillé et ne donne pas la possibilité au plaignant de profiter des avantages dudit enregistrement par suite de fausses déclarations faites par le défendeur en vertu de la politique des conflits (l'UDRP) suivie par le registraire de domaine GKG.Net Inc. Il a été demandé que le Nom de Domaine soit transféré au défendeur et il serait transféré au défendeur sans la présente action.

52. Le plaignant a fourni au défendeur un avis de l'introduction de la présente action.

53. Le plaignant a encouru des coûts, y compris, mais à titre non limitatif, des honoraires d'avocats et des frais juridiques, en tentant d'empêcher le transfert du Nom de Domaine.

---

[3] Note du traducteur : Tentative abusive de retirer un nom de domaine à son titulaire légitime.

103120.1

## VII. DEUXIÈME CAUSE D'ACTION
## JUGEMENT DÉCLARATOIRE
### TITRE 28 U.S.C. § 2201 NON INFRACTION DU LANHAM ACT

54.    Le plaignant incorpore les allégations énoncées en paragraphes 1 à 53 ci-dessus.

55.    Le plaignant n'a pas cherché à tirer profit d'une quelconque manière de l'enregistrement et de l'utilisation du Nom de Domaine et n'a pas eu l'intention de tirer profit de mauvaise foi de toute marque de commerce ou marque de service.

56.    Selon des informations tenues pour véridiques, le défendeur n'exerce pas d'activités commerciales entre États aux États-Unis d'Amérique par rapport à la fabrication, la vente ou le transport de toute marchandise ou de tout service dénommé comme ayant leur origine à « PARVI VILLE NUMÉRIQUE », « PARVI », ou toute autre variation cachée de ceux-ci.

57.    Le Défendeur n'emploie pas « PARVI » comme marque de commerce ou marque de service en vertu du Lanham Act.

59.    Les marques revendiquées par le défendeur ne sont pas renommées en vertu de la Loi sur la protection des marques renommées (Federal Anti-Dilution Act), Titre 15 U.S.C. § 1125.

60.    Le plaignant n'a exercé aucune activité hors des États-Unis concernant le nom de domaine.

103120.1

61.   Le plaignant a des raisons de croire que son enregistrement et son utilisation du Nom de Domaine étaient et son légaux en vertu du Lanham Act.

62.   Il existe une réelle controverse quant à savoir si le défendeur a le droit de transférer le Nom de Domaine sur la base des droits du défendeur en vertu du Lanham Act.

63.   À moins d'une déclaration du tribunal, GKG.Net, Inc. transférera le Nom de Domaine au défendeur et le plaignant subira des dommages immédiats irréparables.

64.   L'enregistrement et l'utilisation par le plaignant du Nom de Domaine ne causent pas de confusion ou n'induisent pas en erreur ou ne trompent pas et il est peu probable qu'elles causent une confusion, qu'elles induisent en erreur ou qu'elles trompent quant à l'affiliation, la relation ou l'association du plaignant avec le défendeur, ou quant à l'origine, au parrainage ou à l'approbation des marchandises, des services ou des activités commerciales du plaignant par le défendeur.

65.   L'enregistrement et l'utilisation par le plaignant du Nom de Domaine ne présentent pas de manière incorrecte la nature, les caractéristiques, les qualités ou l'origine géographique des marchandises, des services ou des activités commerciales du plaignant ou du défendeur.

## VIII. TROISIÈME CAUSE D'ACTION
### INGÉRENCE DÉLICTUEUSE

66.   Le plaignant incorpore les allégations énoncées en paragraphes 1 à 65 ci-dessus.

103120.1

67.   Ayant admis que l'enregistrement du domaine du plaignant avait été effectué sans intention de causer de confusion, le défendeur a prétendu le contraire dans sa plainte de l'UDRP aux fins de priver le plaignant de ses droits en vertu du contrat d'enregistrement de domaine.

68.   Les assertions inexactes du défendeur dans la plainte de l'UDRP ont été faites aux fins de provoquer une mauvaise application de la politique de conflits du contrat d'enregistrement de domaine du plaignant afin de provoquer la rupture dudit contrat en ce que l'UDRP a été mal interprétée et mal appliquée pendant la procédure de l'UDRP causant ainsi une rupture du contrat d'enregistrement de domaine du plaignant.

69.   Lors de l'enregistrement du Nom de Domaine, le plaignant a été forcé de consentir à un accord d'enregistrement spécifique qui incorporait par renvoi l'UDRP tel qu'il est rédigé.

70.   Si le plaignant avait demandé les services d'enregistrement d'un quelconque autre registraire, l'accord d'enregistrement aurait pu être différent mais l'UDRP aurait toujours été incorporée dans l'accord d'enregistrement, formant une partie du contrat.

71.   L'accord d'enregistrement, pour autant au moins qu'il incorpore par renvoi l'UDRP, est un contrat d'adhésion.

72.   L'UDRP a été créé et rédigée en 1999. Le langage de l'UDRP n'a pas été modifié.

73.   L'intention déclarée de l'UDRP était d'aborder les conflits concernant une catégorie réduite de conflits dans lesquels l'enregistrement du nom de domaine constitue

clairement du cybersquatting. L'UDRP a été créée conformément aux directives de « LA GESTION DES NOMS SUR INTERNET ET ABORDE DES QUESTIONS DE PROPRIÉTÉ INTELLECTUELLE », Rapport final du processus de consultations relatif aux noms de domaine d'Internet de l'OMPI du 30 avril 1999, émis par l'Organisation mondiale de la propriété intellectuelle (le « Rapport final de l'OMPI »).

74.   Le Rapport final de l'OMPI inclut les avertissements suivants concernant l'intention et le fonctionnement de l'UDRP :

34. On s'accorde aussi à reconnaître que l'objectif du processus de consultations de l'OMPI n'est pas de créer de nouveaux droits de propriété intellectuelle, ni d'accorder une plus grande protection à la propriété intellectuelle dans le cyberespace qu'ailleurs. En revanche, l'objectif consiste à mettre en application, de manière adéquate, les normes existantes de protection de la propriété intellectuelle reconnues multilatéralement, dans le contexte de l'Internet – ce nouveau moyen de communication qui transcende les frontières et qui s'avère d'une importance vitale – et du DNS, qui est chargé de contrôler le trafic sur l'Internet.

25. Le processus de consultations de l'OMPI est destiné à trouver des procédures qui permettront d'éviter l'affaiblissement ou la remise en cause involontaire des politiques et des règles reconnues en matière de protection de la propriété intellectuelle.

35. À l'inverse, il ne faudrait pas que la volonté d'accorder une protection adéquate aux normes reconnues de propriété intellectuelle aboutisse à une remise en cause d'autres droits reconnus, tels que les droits garantis par la Déclaration universelle des droits de l'homme, ou ait des conséquences négatives sur ces droits. »

75.   Nonobstant l'intention limitée originale de l'UDRP, cette dernière fut soumise à une expansion entreprise par suite des décisions continues de la commission dans lesquelles les membres de la commission imposent des vues personnelles contradictoires de l'UDRP.

103120.1

76.      Comme allégué ci-dessus, pour prévaloir dans une UDRP impliquant un nom de domaine .org, l'UDRP § 4(a) spécifie que le plaignant doit alléguer et prouver ce qui suit :

(i) le nom de domaine est identique ou similaire à s'y méprendre à une marque de commerce ou à une marque de service sur laquelle le plaignant a des droits ;et

(ii) le registrant du nom de domaine n'a aucun droit ou intérêt légitime quant au nom de domaine ; et

(iii) le nom de domaine a été enregistré et est utilisé de mauvaise foi.

77.      L'UDRP § (c) stipule l'explication suivante sur la manière avec laquelle un registrant de noms de domaine peut démontrer qu'il a « des droits ou des intérêts légitimes quant au nom de domaine. » UDRP § 4 (c) déclare comme suit :

« c. Comment démontrer vos droits et vos intérêts légitimes dans le nom de domaine en  réponse à une plainte. Lorsque vous recevez une plainte, il convient de vous reporter au paragraphe 5 des règles de procédure pour déterminer comment préparer votre réponse. L'une ou l'autre des circonstances suivantes, si elles sont considérées comme avérées par la commission sur la base de son évaluation des éléments de preuve présentés, attesteront notamment de vos droits ou intérêts légitimes dans le nom de domaine aux fins du paragraphe 4(a)(ii) :

(i) avant réception par vous de toute notification relative au litige, votre utilisation, ou vos travaux de préparation pouvant être démontrés en vue de l'utilisation du nom de domaine ou d'un nom correspondant au nom de domaine dans le cadre d'une offre de biens ou de services de bonne foi ; ou

(ii) vous (en tant que personne, entreprise ou autre organisation) êtes généralement connu sous le nom de domaine, même si vous n'avez acquis aucun droit de propriété industrielle et commerciale ; ou

(iii) vous faites une utilisation non commerciale légitime ou loyale du nom de domaine, sans intention d'en tirer des profits commerciaux en détournant de façon trompeuse les utilisateurs ou en ternissant l'image de la marque commerciale ou de la marque de service en question.

L'UDRP § 4(b) déclare comme suit :

b. Preuve d'enregistrement et d'utilisation de mauvaise foi. Aux fins du paragraphe 4(a)(iii), les circonstances suivantes, mais à titre non limitatif, si elles sont considérées comme avérées par la commission, constitueront une preuve d'enregistrement et d'utilisation d'un nom de domaine de mauvaise foi :

(i) circonstances indiquant que vous avez enregistré ou que vous avez acquis un nom de domaine essentiellement dans le but de vendre, louer ou céder de toute autre manière l'enregistrement du nom de domaine au plaignant qui est le propriétaire de la marque commerciale ou de la marque de service, ou à un concurrent de ce plaignant, à titre onéreux pour une contrepartie dépassant vos débours documentés liés directement au nom de domaine ; ou

(ii) que vous avez enregistré le nom de domaine dans le but d'empêcher le propriétaire de la marque commerciale ou de la marque de service de refléter la marque dans un nom de domaine correspondant, dans la mesure où vous avez adopté un comportement de ce type ; ou

(iii) que vous avez enregistré le nom de domaine essentiellement pour interrompre l'activité d'un concurrent ; ou

(iv) qu'en utilisant le nom de domaine, vous avez essayé intentionnellement d'attirer, à des fins commerciales, des utilisateurs d'Internet sur votre site web ou toute autre destination en ligne en créant un risque de confusion avec la marque du plaignant quant à la source, au parrainage, à l'affiliation ou à l'approbation de votre site web ou destination en ligne ou d'un produit ou d'un service offert sur celui-ci.

103120.1

78.     Dans la procédure de l'UDRP en question, au défendeur, le membre de la commission n'a pas tenu compte de l'UDRP §4 (b) afin de nier le fait que le plaignant avait un « droit ou un intérêt légitime » dans le Nom de Domaine par suite de l'utilisation du plaignant.

79.     Dans la procédure de l'UDRP en question, le membre de la commission a déclaré ce qui suit :

> La question fondamentale qui est à déterminer peut s'énoncer simplement : l'absence d'intention de mauvaise foi par le défendeur au moment de l'acquisition du nom de domaine en question empêche-t-elle inévitablement le plaignant de réussir en vertu de la politique, même si le plaignant a utilisé par la suite le nom de domaine de mauvaise foi ? À l'opinion de cette commission, la réponse à cette question est fournie par les conditions expresses de la politique elle-même, et cette réponse est « non ».

Le membre de la commission a déclaré également :

> La politique reconnaît expressément que la condition de mauvaise foi du paragraphe 4(a)(iii) peut, dans certaines circonstances, être remplie lorsque le défendeur a utilisé le nom de domaine de mauvaise foi, même si le défendeur peut ne pas avoir agi de mauvaise foi au moment de l'acquisition du nom de domaine.

Le membre de la commission a déclaré également :

> La politique elle-même reconnaît expressément que, lorsque le nom de domaine en question est identique ou similaire à s'y méprendre à la marque de commerce du plaignant et le défendeur n'a aucun droit ou intérêt légitime dans le nom de domaine, dans certaines circonstances la *seule* utilisation de mauvaise foi d'un nom de domaine est suffisante pour que le plaignant ait droit à des mesures réparatoires. La police décrit, en Paragraphe 4(b)(iv), un exemple de telles circonstances. Une commission peut trouver d'autres exemples desdites circonstances après considération de tous les   faits qui lui sont présentés.

80.    Une simple lecture de l'UDRP ne soutient pas lesdites conclusions, comme déclaré par le membre de la commission dans le cadre de la procédure de l'UDRP concernant le Nom de Domaine.

103120.1

81.    L'application inappropriée de l'UDRP, comme le fit à la hâte le défendeur, pour offrir un recours dans des situations de fait non prévues dans l'UDRP expose le plaignant, et en fait tout enregistrement de nom de domaine auquel s'applique l'UDRP, à une incertitude continue quant à ses droits et obligations contractuels en vertu de l'accord d'enregistrement approprié.

82.    L'application inappropriée de l'UDRP pour offrir des recours dans des situations de fait non prévues dans l'UDRP expose le plaignant, et en fait tout enregistrement de nom de domaine auquel s'applique l'UDRP, à un amendement unilatéral continu des dispositions de l'accord d'enregistrement approprié par une personne/entité qui n'est pas une partie audit accord d'enregistrement approprié.

83.    Les contrats doivent être interprétés conformément au sens clair des termes dudit contrat. Sauf exceptions légalement reconnues, les contrats doivent être interprétés en utilisant le langage qu'ils contiennent.

84.    Les assertions du défendeur quant à l'UDRP ont été faites aux fins d'entraîner une mauvaise application des termes du contrat d'enregistrement du plaignant, ce qui a provoqué la rupture du contrat.

## IX. QUATRIÈME CAUSE D'ACTION
## CONVERSION

85.    Le plaignant incorpore les allégations énoncées en paragraphes 1 à 84 ci-dessus.

103120.1

86.    Le plaignant détient un précieux droit de propriété en la possession du Nom de Domaine.

87.    En invoquant l'UDRP, le défendeur fait une assertion de domination sur le Nom de Domaine et a diminué la possession et le contrôle du plaignant sur le Nom de Domaine.

88.    Le défendeur continue d'exercer délibérément une domination sur le Nom de Domaine.

89.    Sans une déclaration de ce tribunal, le défendeur continuera d'exercer une domination sur le Nom de Domaine et de ravir tous les droits du plaignant au Nom de Domaine aux fins de les utiliser.

PAR CES MOTIFS, le plaignant sollicite respectueusement un jugement à l'encontre du défendeur comme suit :

A.    Une déclaration du tribunal établissant que le défendeur ne possède aucun droit de marque faisant l'objet de protection aux États-Unis.

B.    Une déclaration du tribunal établissant que, conformément au Titre 15 U.S.C. § 1114(2)(D)(iv)-(v), le plaignant a le droit d'enregistrer, de posséder et d'utiliser le nom de domaine PARVI.ORG.

C.    Une déclaration du tribunal établissant que, conformément au Titre 28 U.S.C. § 2201, l'enregistrement du Nom de Domaine par le plaignant est légal et n'enfreint aucun droit de marque de commerce ou de marque de service que pourrait revendiquer le défendeur aux États-Unis ;

103120.1

D. Un jugement établissant que le défendeur a tenté illégalement de porter atteinte aux droits et aux attentes du plaignant en vertu de son contrat d'enregistrement de nom de domaine et a incité à une rupture dudit contrat en faisant de fausses déclarations résultant en la mauvaise application de la politique de conflits qui est intégrée audit contrat ;

E. Une déclaration par le tribunal établissant que la décision de l'UDRP était une interprétation inappropriée des droits contractuels du plaignant en vertu de son accord d'enregistrement ;

F. Une déclaration par le tribunal établissant qu'à titre de contrat entre le registrant du nom de domaine et le registraire du nom de domaine, l'UDRP exige qu'un plaignant prouve que le registrant a enregistré le nom de domaine de mauvaise foi et également, par la suite, utilisé le nom de domaine de mauvaise foi ;

G. Une déclaration par le tribunal établissant que l'UDRP ne reconnaît pas que, lorsque le nom de domaine en question est identique ou similaire à s'y méprendre à la marque de commerce du plaignant et le défendeur n'a aucun droit ou intérêt légitime dans le nom de domaine, dans certaines circonstances la *seule* utilisation de mauvaise foi d'un nom de domaine est suffisante pour que le plaignant ait droit à des mesures réparatoires en vertu de l'UDRP ;

H. Des dommages-intérêts qui seront prouvés au procès mais d'un montant au moins égal à 100 000.00 $ ;

I. Des dommages-intérêts punitifs qui seront présentés au procès ;

103120.1

J.   Des coûts et dépenses, y compris les coûts en vertu du Titre 15 U.S.C. §

1114(2)(D)(iv)-(v) et des honoraires d'avocats raisonnables ; et

K.   Toute autre réparation que ce tribunal jugera juste et appropriée.

Soumis avec respect le 8 décembre 2009 :


Par :   _____ /s/ Travis S. Crabtree
Travis S. Crabtree
Membre du barreau de l'État N° 24015192
N° d'identité fédérale 28105
1300 Post Oak Boulevard
Suite 2000
Houston, Texas 77056
(713) 986-7000
(713) 986-7100 (Fax)
tcrabtree@lrmlaw.com

AVOCAT REPRÉSENTANT
LE PLAIGNANT JEFFREY WALTER

Of Counsel :
John Berryhill, Ph.d.
John Berryhill LLC
4 West Front St.
Media, PA 19063
(610) 565-5601
john@johnberryhill.com
Membre du Barreau de Pennsylvanie N° 83,911
*Pro Hac Vice Status Pending*

Paul R. Keating
173 Balmes 2/2
08006 Barcelone, Espagne
Tél. +34 93 368 0247
paul@law.es
Membre du Barreau de Californie n° 111661
*Pro Hac Vice Status Pending*


103120.1