IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **Jeffrey Walter** | § | |
| **An individual,** | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **Civil Action No. 09-3939** |
| | § | |
| **Ville de Paris (The City of Paris),** | § | |
| **A Municipal Commune of France,** | § | |
| **Defendant** | § | |

## PLAINTIFF'S MEMORNADUM IN SUPPORT
## OF DEFAULT JUDGMENT AND PROPOSED ORDER

Plaintiff Jeffrey Walter ("Mr. Walter") files this Memorandum in Support of Default Judgment and Proposed Order.

### I. BACKGROUND

This case arises as but one prong of a campaign of harassment in which the Defendant Ville de Paris (The City of Paris) has engaged in an attempt to abuse a mandatory dispute policy (the Uniform Domain Dispute Resolution Policy or "UDRP") inherent in registering internet domain names to improperly assert extra-territorial sovereignty over United States citizens engaged in activities wholly conducted within the United States.

It is not the first time a foreign municipal authority has engaged in this behavior. Nor is it the first time a court of the United States has, upon admission to the court's jurisdiction by a foreign sovereign UDRP complainant, been called upon to reiterate that the Anti-Cybersquatting Consumer Protection Act (ACPA), 15 U.S.C § 1125(d), *et seq*., is the controlling authority in relation to claims of bad faith registration and use of internet domain names alleged to violate a trade or service mark right. While the basic circumstances here are not novel, and the

1

substantive outcome is clear, an additional factor present in this case is that the Defendant knew or should have known that its claim was wholly without merit, had admitted the same in correspondence directed to the Plaintiff prior to launching its UDRP action, has persisted in repeated threats against U.S. domain name registrants, and has launched similar UDRP proceedings against U.S. domain name registrants in which the Defendant's claims have been repeatedly denied.  The Plaintiff submits the Defendant is likely to continue to engage in such behavior unless this Court provides a clear deterrent.

## II.  SUMMARY OF RELIEF SOUGHT

By and through this default judgment, Mr. Walter is seeking the following:

**Declarations from this Court that Plaintiff**:

1.      has not violated 15 U.S.C. § 1125(d);

2.      has not violated 15 U.S.C. § 1114(1);

3.      has not violated 15 U.S.C. § 1125(a); and

4.      has not infringed on trade or service mark right of the Defendant in the PARVI mark.

**Damages**

Monetary damages and/or statutory damages for reverse domain name hijacking under 15 U.S.C. § 1114(2)(d)(iv) and tortious interference.

**Attorneys' Fees**

Attorney's fees for Mr. Walter's reverse domain name hijacking under 15 U.S.C. § 1114(2)(d)(iv).

**The Domain Name**

The domain name parvi.org is ordered transferred to Mr. Walter.

The taxable costs of court of Mr. Walter, as calculated by the clerk of court, be assessed against Defendant and any other relief to which Mr. Walter may be entitled.

### III.   PERSONAL JURISDICTION

Although default has already been established, the Plaintiff maintains the burden to establish personal jurisdiction.  *See System & Pipe Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001).  Therefore, a brief review of the already-established facts set for the in the Complaint [Doc. 1] is required.

Mr. Walter is the registrant and operator of the internet domain name parvi.com.   Mr. Walter operates a website corresponding to the domain name in order to provide a home for software utilized in a computer system which is no longer supported by its original manufacturer. The domain name was registered as a conjugated form of the Latin word *parvus*, meaning small.

Defendant brought a complaint under the UDRP claiming that the Mr. Walter was in violation of alleged French trade or service mark rights and obtained an order transferring the domain name to Defendant in a decision based, in part, upon a marked failure of literacy in Latin by the presiding panelist.

The operative circumstances of the present case are nearly identical to those of *Barcelona.com Inc. v. Excelentisimo Ayuntamiento de Barcelona*, 330 F.3d 617 (4th Cir. 2003). The plaintiff in Barcelona was a U.S. corporation which had registered and used the internet domain name barcelona.com with a Virginia internet domain registrar, to provide information about travel in and to Barcelona.   Asserting rights under Spanish law, the municipal authority of the city of Barcelona, Spain (Excelentisimo Ayuntamiento de Barcelona) obtained an order under the UDRP transferring the domain name.  The domain registrant, in the same shoes as Mr. Walter, then proceeded under the ACPA to seek a determination of the lawfulness of its

registration and use of the domain name in the federal courts of Virginia. *Barcelona* fully sets forth the framework of interplay between the UDRP and the ACPA on which the present action is premised:

> The agreement that accompanies the registration of a domain name specifies terms and conditions of the registration and the policies governing the registrant's continued control over the domain name, including conditions for suspension or transfer of the domain name. It also provides a contractually mandated process, the UDRP, for resolution of disputes that might arise between domain name registrants and trademark owners. The UDRP is intended to provide a quick process for resolving domain name disputes by submitting them to authorized panels or panel members operating under rules of procedure established by ICANN and under "any rules and principles of law that [the panel] deems applicable." ICANN, Rules for Uniform Domain Name Dispute Resolution Policy, ¶ 15(a), at http://www.icann.org/dndr/udrp/uniform-rules.htm (Oct. 24, 1999).

> Because the administrative process prescribed by the UDRP is "adjudication lite" as a result of its streamlined nature and its loose rules regarding applicable law, the UDRP itself contemplates judicial intervention, which can occur before, during, or after the UDRP's dispute-resolution process is invoked. See ICANN, UDRP ¶ 3(b), at http://www.icann.org/dndr/udrp/policy.htm (Oct. 24, 1999) (stating that the registrar will cancel or transfer the domain name upon the registrant's "receipt of an order from a court or arbitral tribunal, in each case of competent jurisdiction, requiring such action"); id. at ¶ 4(k) ("The mandatory administrative proceeding requirements set forth in Para-graph 4 shall not prevent either you or the complainant from submit-ting the dispute to a court of competent jurisdiction for independent resolution before such mandatory administrative proceeding is commenced or after such proceeding is concluded"); id. (providing that the registrar will stay implementation of the administrative panel's decision if the registrant commences "a lawsuit against the complain-ant in a jurisdiction to which the complainant has submitted" under the applicable UDRP rule of procedure). As ICANN recognized in designing the UDRP, allowing recourse to full-blown adjudication under a particular nation's law is necessary to prevent abuse of the UDRP process. See id. at ¶ 1 (defining "reverse domain name hijacking" as use of the UDRP "in bad faith to attempt to deprive a registered domain-name holder of a domain name"). Thus, when a person obtains a domain name, the person

agrees, in the registration contract with the registrar, to follow the UDRP as established by ICANN.

[…]

Moreover, any decision made by a panel under the UDRP is no more than an agreed-upon administration that is not given any deference under the ACPA. To the contrary, because a UDRP decision is susceptible of being grounded on principles foreign or hostile to American law, the ACPA authorizes reversing a panel decision if such a result is called for by application of the Lanham Act.

Although the ACPA was enacted primarily to redress cyberpiracy or "cybersquatting," it also provides limited liability for trademark infringement by registrars who participate in the administration of the registration, transfer, and cancellation of domain names pursuant to a "reasonable policy" that is consistent with the purposes of the trademark laws. See 15 U.S.C. § 1114(2)(D)(i)-(iii). And to balance the rights given to trademark owners against cybersquatters, the ACPA also provides some protection to domain name registrants against "overreaching trademark owners." S. Rep. No. 106-140, at 11; see also 15 U.S.C. § 1114(2)(D)(iv)-(v). Thus, § 1114(2)(D)(v) authorizes a domain name registrant to sue trademark owners for "reverse domain name hijacking." Under that reverse domain name hijacking provision, a domain name registrant who is aggrieved by an overreaching trade-mark owner may commence an action to declare that the domain name registration or use by the registrant is not unlawful under the Lanham Act.

[…]

In sum, we conclude that we have jurisdiction over this dispute brought under the ACPA and the Lanham Act. Moreover, we give the decision of the WIPO panelist no deference in deciding this action under § 1114(2)(D)(v). *See Dluhos v. Strasberg*, 321 F.3d 365, 373-74 (3d Cir. 2003) (holding that 15 U.S.C. § 1114(2)(D)(v) requires the federal court to approach the issues raised in an action brought under that provision de novo rather than to apply the deferential review appropriate to actions governed by the Federal Arbitration Act)*; Sallen v. Corinthians Licenciamentos LTDA*, 273 F.3d 14, 28 (1st Cir. 2001) (explaining that "a federal court's interpretation of the ACPA supplants a WIPO panel's interpretation of the UDRP"). Thus, for our purposes, the WIPO panelist's decision is relevant only to serve as the reason for Bcom,

> Inc.'s bringing an action under§ 1114(2)(D)(v) to reverse the
> WIPO panelist's decision.

*Id.* at 624-26.

Accordingly, this action for an independent determination under the ACPA of whether the Mr. Walter's registration and use of the domain name, is the only avenue by which Mr. Walter may prevent the loss of his internet domain name premised upon a claim of foreign trademarks rights which Defendant does not possess in the jurisdiction in which the domain name has been registered, and to which the Defendant admitted as a condition of filing the UDRP complaint itself.

In regard to whether the Court may recognize the foreign trademark right asserted by the Defendant in the UDRP proceeding, Barcelona is further clear that: (a) the ACPA is the proper route of recourse for a defendant so situated; and (b) the ACPA solely recognizes trademark rights arising under the laws of the United States:

> The text of the ACPA explicitly requires application of the Lanham Act, not foreign law, to resolve an action brought under 15 U.S.C. § 1114(2)(D)(v). Specifically, it authorizes an aggrieved domain name registrant to "file a civil action to establish that the registration or use of the domain name by such registrant is not unlawful under this chapter." 15 U.S.C. § 1114(2)(D)(v). It is thus readily apparent that the cause of action created by Congress in this portion of the ACPA requires the court adjudicating such an action to determine whether the registration or use of the domain name violates the Lanham Act. Because the statutory language has a plain and unambiguous meaning that is consistent with the statutory context and application of this language in accordance with its plain meaning provides a component of a coherent statutory scheme, our statutory analysis need proceed no further. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) ("Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. Our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent" (quotation marks omitted)). By requiring

application of United States trademark law to this action brought in a United States court by a United States corporation involving a domain name administered by a United States registrar, 15 U.S.C. § 1114(2)(D)(v) is consistent with the fundamental doctrine of territoriality upon which our trademark law is presently based.

*Id.* at 627-28.  Hence, in this action, Mr. Walter has similarly sought adjudication the lawfulness under the ACPA of the U.S. citizen Plaintiff's registration and use of the domain name with a Texas internet domain name registrar, in relation to the Defendant's assertion in the UDRP proceeding, of rights solely alleged to exist in France.   This Court properly has jurisdiction over the parties, the domain registrar, and the subject matter; and the application of the facts to the law in accordance with the discussion above necessitates a judgment that the Mr. Walter's registration and use of the domain name has not violated and does not violate any cognizable right of the Defendant in the United States, as the Defendant has no rights under the Lanham Act in the term "PARVI" here at issue.

## IV.  <u>MERITS OF THE CLAIM IN SUPPORT OF DAMAGES</u>

Because default has already been entered [Doc. 25], the well-pleaded facts in the complaint related to liability are taken as true.  *See Nishimatsu Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).   Courts may determine the amount of damages by considering the existing record.  *See Pope v. U.S.*, 323 U.S. 1, 12 (1944).  The Court may also rely upon affidavits and the submissions of the parties.  *See Leedo Cabinetry v. James Sales & Distrib.*, 157 F.3d 410, 414 (5th Cir. 1998).  In support of damages, Mr. Walter relies upon:

1.    The facts established by default in the Original Complaint [Doc. 1]

2.    The previously submitted Declaration of Jeffrey Walter [Doc. 23-1 at pps. 38-47]

3.    The Declaration of Travis Crabtree

4.    The Declaration of John Berryhill

The merits here of the Defendant's trade or service mark claim are trivially determined in Mr. Walter's favor.   The triviality of such a determination is doubtless the reason why the properly-served and noticed Defendant has not appeared in this action.   Mr. Walter further has reason to believe Defendant has actual notice of this action.   Defendant is currently pursuing an application with ICANN to obtain a .paris top-level domain.   At an ICANN meeting held in Brussels, Belgium, the Mr. Stephane Van Gelder, the General Manager of INDOM, the Defendant's contractor in applying and operating the .paris top-level domain, requested a meeting held with the Mr. Walter's counsel, John Berryhill, to discuss why this action was being pursued and to request that Mr. Walter discontinue this action.  Mr. Walter's counsel explained that Mr. Walter had no choice, as a dismissal of the action without judgment would, according the UDRP rules, result in the registrar transferring the domain name to Defendant.

Defendant is not without the demonstrated ability to appear in domain name related litigation in the United States, and does so when it chooses.  In *NJ Domains LLC v. Ville De Paris*, 1:06-cv-06465 (S.D.N.Y.), Defendant was subject to a declaratory judgment action premised on a threat letter Defendant had issued to a New Jersey corporation having registered the domain name paris.com via a New York registrar.   Defendant in that instance appeared, successfully argued sovereign immunity against relief, but withdrew its threat against the plaintiff, who retained the domain name.  Likewise, in *Polemitis v. Ville de Paris*, 1:07-cv-00067 (E.D.V.A), Defendant had sent an identical threat letter to the registrant of the domain name paris.tv, the principal of Paris.tv LLC in Virginia, which the court dismissed under the doctrine of sovereign immunity *sua sponte*.

Defendant then proceeded to assert a trademark claim in the geographic term "PARIS" in three UDRP Proceedings.   In the first two, U.S. operators of wifi information services were

utilizing the word "paris" in combination with "wifi" in internet domain names.  In *Ville De Paris v. Whois Privacy Services/Comar Ltd.*, WIPO Case No. D2009-1255, (WIPO, December 1, 2009), the panel found, "[T]he Complainant has not registered a trademark in the word "Paris" simpliciter and it is in this Panel's view doubtful that it could do so, or claim an exclusive right to use that geographic term."  In *Ville de Paris v. Salient Properties LLC*, WIPO Case No. D2009-1279, (WIPO, December 3, 2009), the panel again rejected Defendant's trademark claim, stating in regard to the prior litigation in the United States:

> The Panel does not derive much assistance from the United States litigation referred to by the Respondent. **Certainly it would be a matter of concern if there were proof that the Complainant had been engaging in a pattern of harassing domain name owners by making unsupportable transfer demands, but that has not been established on the evidence produced by the Respondent in this case.** On the face of it, the Complainant has done no more than adopt procedural tactics which appear to have been effective in having two separate court claims against it dismissed, and the Panel is in no position to say that the Complainant was not justified in using whatever tactical weapons were legally available to it to bring those proceedings to an early end. The plaintiffs wanted to fight on American soil in those cases, but the Complainant apparently did not - the Panel really cannot take much more than that from the evidence which has been produced.

(Emphasis Added).  The proof of such harassment arrived in short order.

Completely undeterred by these decisions, Defendant, having previously demurred to appear in the *Polemitis* action relating to paris.tv, proceeded against the domain name by filing a UDRP, V*ille de Paris v. Paris.TV LLC,* WIPO Case No. DTV2009-0010 (WIPO, February 17, 2010), in which the panel found, in relation to the two prior complaints which had been denied under the UDRP:

> We find the reasoning in these decisions to be relevant and persuasive in the present situation. Complainant sought to distinguish these decisions but ultimately it is faced with the reality

that no WIPO UDRP panel has to date found that Complainant's composite mark gives it exclusive rights in the word "Paris" and that the use of the word "Paris" in and of itself is likely to lead to confusion.

Accordingly, having prevailed in the UDRP, there was no need for Mr. Polemitis to re-visit the Eastern District of Virginia's previous dismissal of the action relating to paris.tv.

It is within the context of this meritless campaign, against four other U.S. domain registrants and including one proceeding in which the Defendant first succeeded on the basis of sovereign immunity, but then proceeded to a forum requiring it submit to U.S. jurisdiction, that the Defendant launched its UDRP proceeding against the Plaintiff here. The UDRP does not provide a mechanism for award of monetary damages of any kind, and hence while the UDRP panel in *Salient Properties* opined it "would be a matter of concern" had the full extent of the Defendant's campaign been available to them, a UDRP panel would be powerless to compensate the Defendant's victims or levy a penalty.

The Lanham Act, in contrast to the UDRP, does provide compensatory mechanisms and further provides special damages in exceptional cases, in addition to discretionary damages under the ACPA. First, under the Reverse Domain Hi-Jacking provisions of the UDRP, 15 U.S.C. § 1114(2)(d)(II)(iv):

> (iv) If a registrar, registry, or other registration authority takes an action described under clause (ii) based on a knowing and material misrepresentation by any other person that a domain name is identical to, confusingly similar to, or dilutive of a mark, the person making the knowing and material misrepresentation shall be liable for any damages, including costs and attorney's fees, incurred by the domain name registrant as a result of such action. The court may also grant injunctive relief to the domain name registrant, including the reactivation of the domain name or the transfer of the domain name to the domain name registrant.

The "action described under clause (ii)" is the transfer or requisite locking and disabling of certain functions appurtenant to domain names which a registrar must undertake to prevent alteration of the domain name registration data upon filing of a UDRP, and pursuant to a UDRP. Clause (ii) refers to such action in the context of a "reasonable policy" designed to address domain disputes, which is uniformly recognized as a reference to the UDRP.  The purpose of these clauses are to provide a domain registrant such as the Plaintiff here with recourse against "over-reaching" or "over zealous" claimants.     As set forth in. *Sallen v. Corinthians Licenciamentos Ltda.*, 2002 U.S. Dist. LEXIS 19976 (D. Mass. Dec. 19, 2000), *rev'd*, 273 F.3d 14, 60 U.S.P.Q.2d (BNA) 1941 (1st Cir. 2001):

> Subsection (D)(iv) then provides that if a registrar suspends or transfers a registrant's domain name based on a knowing misrepresentation by another person that "a domain name is identical to, confusingly similar to, or dilutive of a mark," then the person making the misrepresentation is liable to the registrant. This provision states that "[t]he court may also grant injunctive relief to the domain name registrant, including the reactivation of the domain name or transfer of the domain name to the domain name registrant." **This subsection, in contrast to subsections (D)(i)(ii), "protects the rights of domain name registrants against overreaching trademark owners." H.R. Conf. Rep. No. 106-464, at 117.** Although subsections (D)(i)(ii) encourage enforcement of policies against cybersquatting by facilitating cooperation between registrars and trademark owners, subsection (D)(iv) provides a counterweight to ensure that this cooperation does not result in reverse domain name hijacking, whereby trademark holders abuse anti-cybersquatting provisions to take domain names from rightful, non infringing registrants.
>
> **Subsection (D)(v), similar to subsection (D)(iv), also acts as a counterweight to offset potential overreaching by trademark holders. Subsection (D)(v) was viewed as an "additional protection[]" to subsection (D)(iv), designed to aid registrants who lose their domain names to overzealous trademark holders.** Id. The similarity of subsections (D)(iv) and (v) is reinforced by their parallel structure. They use the exact same language, stating that "[t]he court may grant injunctive relief to the domain name registrant, including the reactivation of the domain

name or transfer of the domain name to the domain name
registrant." Viewed in context, and with the structure of the statute
in mind, subsection (D)(v) is best understood to provide domain
name holders with a cause of action to rectify reverse domain
name hijacking by trademark holders using the UDRP process to
require registrants to transfer domain names originally held by
rightful users under U.S. law.

*Id.* at 28-29 (emphasis added).

Hence, while the UDRP panel in *Salient Properties* observed, "The plaintiffs wanted to

fight on American soil in those cases, but the Complainant apparently did not," the panel failed

to recognize that filing the UDRP action itself requires admission to the relevant jurisdiction, in

this instance the jurisdiction of the Texas registrar.   Of course, Defendant did not want to have

its claims adjudicated in the United States, because it has no cognizable trade or service mark in

the United States.   Defendant further knows that having gained the advantage of a favorable

UDRP decision, the entire burden to retain the domain name after such a decision is on the Mr.

Walter's shoulders.  The purpose of the reverse domain name hi-jacking provisions of the ACPA

is precisely to address the circumstances here.   As the only registrant against which the

Defendant was successful in its campaign of UDRP complaints, Mr. Walter is entitled to invoke

the intended "counterweight" against "over-reaching" and "over zealous" UDRP claimants.

Aggravating Defendant's attempts to avoid adjudication of its claims against a string of

U.S. domain registrants, is the behavior of the Defendant in its pursuit of Mr. Walter.  As set

forth in the Mr. Walter's Declaration, Defendant had previously contacted Mr. Walter in relation

to the domain name and had admitted in correspondence to Mr. Walter conducted in 2006,

"Regarding to your explanations, the Ville de PARIS has understood the registration of you

domain name 'parvi.org' was accomplished with no intention of causing any confusion."

Accordingly, Defendant had admitted, several years prior to bringing the UDRP, its

understanding that the domain name was not registered with a bad faith intent to cause confusion in relation to its alleged French trademark.

Accordingly, Mr. Walter is entitled to recover its costs and attorney's fees incurred as a consequence of the Defendant's UDRP action which has necessitated the instant action in order to preserve the Defendant's lawful right to have registered and used, and to maintain such registration and use, of the domain name.

Furthermore, in view of Defendant's demonstrated persistence with baseless claims, its wide-ranging campaign to assert extra-territorial effect of its alleged French trademarks against U.S. domain registrants, the concerns noted by the UDRP panels in relation to that campaign, Defendant has manifested willful and intentional behavior knowing that its claim has no merit in the jurisdiction to which Defendant admitted for further proceedings upon filing the UDRP complaint.

Finally, Mr. Walter's rights in the domain name arise under a registration contract between the Plaintiff and the registrar, GKG.net of Bryan, Texas, under which Mr. Walter was made subject to the UDRP claim and Defendant's admission to the jurisdiction of this court. Defendant's behavior discussed above constitutes, for the same reasons as set forth above, intentional interference with the Plaintiff's rights under the registration contract.   In *GOFORIT Entertainment, LLC v. Digimedia.com L.P.*, 750 F.Supp.2d 712, 2010 WL 4602549 (N.D. Tex. Oct. 25, 2010), the Northern District of Texas was confronted with an ACPA claim in which the plaintiff had similarly arranged to notify the registrar of a dispute and to consequently lock the affected domains beyond defendant Digimedia's full control under the domain registration contract.    Addressing the tortious interference claim arising thereby on cross motions for summary judgment, the court held:

> A trademark owner has the right to protect its mark, but the law imposes consequences when an owner overreaches and affects others' rights. *See, e.g.*, 15 U.S.C. § 1114(2)(D)(iv) (permitting recovery of damages where trademark owner makes knowing and material misrepresentation of how far its rights extend over another's domain name). As already discussed above, GEL's ACPA claims were without basis.

> A reasonable jury could find that GEL did not believe that its trademark rights extended this far and that the request to suspend the entirety of Tucows' services was made in bad faith. Such a finding would eliminate the "legal justification or excuse" affirmative defense, and the jury could reasonably find that GEL's interference was "willful" and "intentional."

Here, the circumstances are clearer, in that Defendant's French trademark claim advanced in the UDRP proceeding is void under the Lanham Act as a matter of law, and hence a jury would not reach the question of whether the Defendant "believe[d] its trademark rights extended" into Texas. Defendant here has consistently sought to assert French trademark rights against the Plaintiff, and others in the United States, while assiduously and purposefully seeking to avoid adjudication of these claims in the United States for the transparently obvious reason that it knows its trademark rights do not extend to reach the Plaintiff and the Plaintiff's activities.

Mr. Walter, therefore, is directly qualified to at least two forms of equitable relief. The posture of this action is that under the relevant provisions of the UDRP Par. 4(k) relating to judicial determinations, then the domain name will be transferred to the Defendant by the registrar absent a determination that the Plaintiff's registration and use of the domain name was lawful. Hence, absent some form of declaratory or injunctive relief the Plaintiff will lose the domain name, and it will be transferred to the Defendant. *See, e.g. MailPlanet.com, Inc. v. Lo Monaco Hogar, S.L.*, Case No. 08-11402-G U.S., 291 Fed. Appx. 229 (11th Cir. 2008) (per curiam).

First, the reverse domain hi-jacking provisions of the ACPA found at 15 U.S.C. § 1114(2)(d)(ii)(iv) directly authorizes "injunctive relief to the domain name registrant, including the reactivation of the domain name or the transfer of the domain name to the domain name registrant". Such an order, when communicated by Mr. Walter to the registrar, will release the registrar's obligation under the UDRP to maintain the domain name in a locked condition beyond Mr. Walter's full control. Secondly, the Declaratory Judgment Act authorizes a declaration that the Plaintiff has not violated the consonant provisions of the ACPA and the UDRP, that the registration "was lawful" under the UDRP, and will establish *res judicata* should the Defendant attempt an action in yet another forum, as the Defendant has been known to do in similar circumstances.

In addition to the equitable relief, the reverse domain hi-jacking provisions of the ACPA provide direct and mandatory monetary relief, and the Defendant "**shall** be liable for **any** damages, including costs and attorney's fees, incurred by the domain name registrant" (emphasis added) as a consequence of a domain name having been impaired in situations of over-reach against a lawful domain registrant by means of the UDRP. These damages are not limited to costs and attorney's fees, which are specifically enumerated, as discussed below. However, the specific recitation of costs and attorney's fees renders them in specific to be mandatory.

Secondly, given that Mr. Walter is one of a serial number of others known and yet-unknown, the Plaintiff submits that the "any damages" language of the reverse domain hi-jacking clause includes punitive relief to deter future conduct constituting the Defendant's established pattern of such conduct. The Defendant has repeatedly and may well yet, in dependence on the judgment here, continue to engage in a pattern of willfully pursuing U.S. domain registrants utilizing U.S. domain registrars, with such claims. As cited above, one UDRP panel has

admonished the Defendant that it had failed to "face[] the reality that no WIPO UDRP panel has to date found" its claims in similar over-reaching situations to have merit, and another panel to state "it would be a matter of concern if there were proof that the Complainant had been engaging in a pattern of harassing domain name owners by making unsupportable transfer demands."

As demonstrated, Defendant fails to learn from repeated assertion of faulty claims, and has been engaged in a pattern of harassing domain name owners by making unsupportable demands.   To admonish and lament are the only deterrent mechanisms available under the UDRP, which is entirely equitable.   Hence, a punitive award is appropriate in the Court's discretion.   By way of reference, 15 U.S.C. § 1117(d) authorizes, in cases "involving a violation of section 1125," an election of damages in the courts discretion of "not less than $1,000 and not more than $100,000 per domain name, as the court considers just."  This is a case "involving" a violation of 1125(d)(1) in that Mr. Walter is seeking a determination that it was not violated. Hence, Mr. Walter is entitled to statutory damages in an amount between $1,000 and $100,000 within the discretion of this Court.

In the alternative, the statutory damage guidelines provide a symmetric guideline for the court to consider in relation to an appropriate range of damages under the ACPA generally which is believed to be of deterrent and precatory effect to cybersquatters.   While Defendant has considerable assets, namely the entire physical plant and public improvements of the City of Paris such as the Eiffel Tower, Defendant has a reputation of being honorable or image conscious to the extent that a just amount, within the humble guidelines of the ACPA, would provide a suitable and reasonable range of punitive damages within the discretion of the court.

## V. <u>PRAYER</u>

Plaintiff Jeffrey Walter requests that this court grant Plaintiff a default judgment as requested herein and any other relief to which he may be equitably entitled.

By: _/s/ Travis Crabtree_____
 Travis Crabtree
 State Bar No. 24015192
 Federal I.D. No. 28105
 1300 Post Oak Boulevard
 Suite 2000
 Houston, Texas 77056
 (713) 986-7000
 (713) 986-7100 (Fax)
 tcrabtree@lrmlaw.com

 ATTORNEY-IN-CHARGE FOR
 PLAINTIFF JEFFREY WALTER

Of Counsel:

John Berryhill, Ph.d.
John Berryhill LLC
4 West Front St.
Media, PA  19063
(610) 565-5601
john@johnberryhill.com
Pennsylvania Bar ID No. 83,911
*Pro Hac Vice*

Paul R. Keating
173 Balmes 2/2
08006 Barcelona, Spain
Tel. +34 93 368 0247
paul@law.es
California Bar ID No. 111661
*Pro Hac Vice*

1224798.1                                    17